The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>NEVIN SHETTY,<br><br>                Defendant. | NO. CR23-084 TL<br><br>**UNITED STATES' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY**<br><br>Note on Motion Calendar: July 12, 2024 |

      The defendant, Nevin Shetty, has disclosed to the United States that he intends to elicit expert testimony from six witnesses at trial. In his disclosures, which are attached to this motion as Exhibits A through F, he describes a wide variety of subjects and opinions that his proposed experts would testify about, ranging from their personal experiences investing in cryptocurrency, to investor sentiment about stablecoins, to their opinions about why the defendant acted as he did and how this matter should have been resolved.

      The United States moves to exclude much of Shetty's proposed expert testimony. Shetty has not established that this testimony would be reliable, relevant, or helpful to the jury, and it is therefore inadmissible under the Federal Rules of Evidence. In some cases, the expert testimony that Shetty wishes to elicit—more than being unreliable, unhelpful, and irrelevant—would prejudice the government's case, such as by encouraging jury

Motion to Exclude Expert Testimony - 1
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

nullification, or would invade the province of the Court to instruct the jury on the law. For all these reasons and more, the Court should exclude this testimony.

## APPLICABLE LAW

Federal Rule of Evidence 702 states, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion or other testimony if the offering party demonstrates it is "more likely than not" that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts and data," (c) "the testimony is the product of reliable principles and methods," and (d) the expert has reliably applied those principles to the facts of the case. The court plays an imperative "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597–80 (1993).

Notably, this gatekeeping role "applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2020). "[R]eliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). Therefore, if a purported expert witness is relying "solely or primarily" on their experience as the basis of their opinions "then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Comm.'s Note to 2000 Amendment. This rule requires more than simply "taking the expert's word for it." *Id.*; *see Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

Motion to Exclude Expert Testimony - 2
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Reliable expert testimony may still be excluded if it is irrelevant. *See* Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see* Fed. R. Evid. 702(a); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.").

Even if expert testimony passes muster as both reliable and relevant, it may nonetheless be excluded if its probative value is "substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

Much of Shetty's proposed expert testimony is improper. This testimony is irrelevant and unreliable, among other obstacles to its admissibility. In the following sections, the United States describes the proposed testimony from each of the defendant's experts that the Court should exclude.[1] Additionally, as the discussion below will make clear, much of the defense's proposed expert testimony is overlapping and redundant. A defendant cannot call a parade of experts only to have them all agree with one another. This is a yet another reason why much of the proposed testimony should be excluded. *See* Fed. R. Evid. 403; Local Crim. R. 26(c) ("Except as otherwise ordered by the court, a party shall not be permitted to call more than one expert witness on any subject.").

**I.     EXPERT TESTIMONY REGARDING CRYPTOCURRENCY AND RELATED MATTERS**

Shetty proposes to call three witnesses who would testify about cryptocurrency and related matters. Their names are Michael Perklin, Jonathan Joseph, and Omid Malekan.

---

[1] To be clear, the government only highlights examples of the types of testimony that the Court should exclude. The government is not implying that any purported expert statements that are not cited herein are unobjectionable.

Motion to Exclude Expert Testimony - 3
*United States v. Shetty* / CR23-084 TL

While much of their proposed testimony is unobjectionable at this stage, portions of it are beyond the pale. Generally, the problems with their proposed testimony fall into four buckets. First, Shetty's proposed witnesses would make certain sweeping statements that lack any apparent foundation. The Court should exclude this overly broad, unreliable, and irrelevant testimony. Second, Shetty's proposed witnesses would testify extensively about their personal experiences. The Court should exclude such statements as improper expert testimony. Third, Shetty's proposed witnesses would testify to highly disputed conclusory statements without sufficient support. The Court should exclude these statements for their lack of reliability and prejudice. Fourth, Shetty's proposed witnesses would testify about events that came after the period at issue in this case. The Court should exclude such statements as irrelevant and prejudicial.

### A. Michael Perklin

In his report, Mr. Perklin makes several broad-sweeping conclusions without any sufficient basis for them. (Perklin's Disclosure, attached hereto as "Exhibit A"). For instance, Mr. Perklin opines that:

- "Humans are naturally fearful of new things."
- "all technology is inherently neutral, and it is the person that uses the technology who chooses to use it honorably or criminally";
- "cryptocurrencies are completely neutral";
- "cryptocurrency is the most traceable form of money that has ever been invented in mankind's history";
- the Government has inflated monetary supply with "reckless abandon during recent years";
- "cryptography is so strong that every computer on the planet working together to break the encryption of a single account would not succeed before our Sun dies, taking all of humanity with it."

(*Id.* at 3–7.)

Motion to Exclude Expert Testimony - 4
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Mr. Perklin's proposed testimony is unreliable. The disclosure does not explain how the witness arrived at such blanket opinions in a manner countenanced by Rule 702. Neither Mr. Perklin nor defense points to anything in his experience—the only basis for his purported expert opinions—that would reasonably support these conclusions. For instance, statements about the totality of "mankind's history," "all of humanity," and inherent qualities of "all technology" need at least some particularized support so that the Court can analyze their trustworthiness. Being a "blockchain security consultant for over 10 years" does not form a sufficiently reliable basis for any of these opinions. (*Id.* at 1.)

Furthermore, these statements are irrelevant as none of them speak to any fact in issue. For example, the alleged neutrality of cryptocurrency is not a pertinent inquiry in this case. The question for the jury is not whether cryptocurrency is good or whether UST appeared to be a good investment before it crashed. The question for the jury is whether Shetty took Company A's money and lied about his actions and intentions. (*See generally* Dkt. 1, hereinafter the "Indictment"); *United States v. Spangler*, 810 F.3d 702, 707 (9th Cir. 2016) ("The government's case did not depend on whether investing in private equities was an advisable investment strategy but on whether [the defendant] diverted his clients' funds without their knowledge or consent."). Simply put, the fact that Shetty's acts involved cryptocurrency does not make any and all opinions about cryptocurrency relevant.

Even if these overly broad opinions were somehow relevant, their probative value is substantially outweighed by their prejudice. The neutrality of technology, the United States' monetary policy, and the human psychology of fear are all distractions in this case that will only result in a confused jury and an unnecessarily prolonged trial.

Contrasting with his sweeping opinions on human psychology and other matters, Mr. Perklin also outlines several apparent personal experiences in his report. This proposed testimony is equally irrelevant. For instance:

- Mr. Perklin would testify about his "personal[]" views on the "benefits in cryptocurrency," and offer personal anecdotes explaining his view that

Motion to Exclude Expert Testimony - 5
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

- cryptocurrency is preferable to U.S. dollars, such as that he once had his "PayPal account frozen temporarily," had his "bank tell" him he could not "withdraw [his] own funds to cash," and had his "bank refuse to send a wire transfer on [his] behalf despite it being [his] money to send to whomever [he] wish[es]."

- Mr. Perklin would also testify that wire transfers are "often held for up to 15 days making them useless," "wire transfers still inexplicably cost $70 to send," and "[w]hen you are a merchant . . . it can be very costly to have that credit card payment reversed a month later because the cardholder decided to commit a chargeback."

(*Id.* at 3–4.) These opinions are neither reliable nor relevant. As outlined above, Mr. Perklin's opinions are not supported by his professional experience in any way and the defense fails to provide any additional supporting basis. Additionally, these statements are not proper expert testimony because a witness's personal views, anecdotes, and experiences are not reflective of any "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a); *see White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002) ("A layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion.")

Even if Mr. Perklin had pointed to some reliable basis to support these statements, they would still be entirely irrelevant to the issues in this case. Cryptocurrency's purported advantages over U.S. dollars do not matter. Whether wire transfers cost $70 is inconsequential. What matters is whether Shetty defrauded Company A as alleged in the Indictment.

Mr. Perklin also reaches definitive conclusions on contested topics without identifying any supporting basis other than his general career and without Shetty explaining

Motion to Exclude Expert Testimony - 6
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

how these statements, even if accurate, have any bearing on the charges against him. Mr. Perklin states:

- "It is impossible to launder funds on a fully-transparent public blockchain since everyone can see when proceeds of crime move from one account to another";
- "cryptocurrencies are superior to legacy financial assets";
- cryptocurrencies' "transparency makes it very difficult for bad actors to siphon funds";
- "[a] decentralized payment network allows all users to be sovereign in their financial affairs in a way that cannot be overridden by others";
- "the legacy financial system is opaque, meaning money paid to public goods (such as taxes, political donations, etc.) can be used improperly with little oversight";
- cryptocurrency is heading to "general adoption;"
- "Bitcoin has held its purchasing power significantly better than the USD."

(*Id.*, at 5–10.) Mr. Perklin's resume does not give the Court adequate information to ensure these opinions are reliable or otherwise explain how Mr. Perklin reached them. Mr. Perklin makes strongly disputed statements in a conclusory fashion, and while disagreement alone is not a basis for exclusion, it does bolster the need for a more specific basis to ensure trustworthiness. Here, Mr. Perklin offers only his professional qualifications and his conclusions, but this is not enough. *See Daubert*, 443 F.3d at 1319. The reliability standard demands more. Arguably, it may be impossible to establish legally sufficient reliability for some of these opinions, such as the "superiority" of crypto compared to all "legal financial assets." Just because Mr. Perklin opines to these conclusions does not make them so. More importantly, just because Mr. Perklin opines to these conclusions does not make them suitable for a jury to hear, especially with the unique weight of expert testimony. Regardless, these conclusions are irrelevant to the charges in the Indictment.

Motion to Exclude Expert Testimony - 7
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, Shetty proposes that Mr. Perklin would testify about irrelevant events that came after the period at issue in the Indictment. The Court should exclude such statements as irrelevant and prejudicial given the likelihood they will confuse the jury. Mr. Perklin points to "case studies and real-world examples" that appear to address Mr. Perklin's belief that the financial world is "changing rapidly" "to a blockchain-based economy based on tokens." (*Id.* at 5–6.) To support this broad-sweeping conclusion, Mr. Perklin points to two examples of financial institutions offering crypto-related offerings, both of which took place within the last six months. These examples are irrelevant for a multitude of reasons, not least of which being they took place two years *after* the conduct alleged in the Indictment.

Mr. Perklin also discusses the "Regulatory Framework" of cryptocurrency, and states "[a]t this point in 2024, it would be difficult to find any developed country that has not issued some kind of laws, regulations, bills, acts, or guidance for their citizens who use cryptocurrencies." (*Id.* at 8.)[2] Mr. Perklin then points to a bill passed by the U.S. House of Representatives on May 22, 2024—over two years after the conduct alleged in the Indictment took place. This testimony is untimely and irrelevant.

Similarly, Mr. Perklin's purports that "at this point in 2024 it may be easier to collate a list of major institutions that have NOT invested in cryptocurrencies or blockchains in one manner or another." (*Id.* at 9.) Again, even if that statement were true (which is, at best, debatable), institutional actions taken in 2024 are irrelevant to Shetty's actions taken in 2022. And even if Mr. Perklin's testimony was timelier, it would still be irrelevant. Tesla's intentional and knowing investment into cryptocurrency has no bearing on Company A's position on cryptocurrency or whether Shetty defrauded Company A. (*Id.*)

---

[2] Mr. Perklin also addresses Wyoming's regulatory framework for Decentralized Autonomous Organizations and El Salvador's adoption of bitcoin as legal tender. (*Id.*) While these topics occurred prior to 2024, they are nonetheless irrelevant as neither Wyoming nor El Salvador have any relevancy to this case.

Motion to Exclude Expert Testimony - 8
*United States v. Shetty* / CR23-084 TL

Regardless of relevancy, these opinions should be excluded under Rule 403 because any possible probative value of discussing other companies' investment portfolios is outweighed by confusing the issues, misleading the jurors, and wasting time.

### B. Jonathan Joseph

For similar reasons, much of Mr. Joseph's proposed expert testimony, as detailed in his disclosure, should be excluded. (Joseph's Disclosure, attached hereto as "Exhibit B"). Mr. Joseph also asserts broad sweeping conclusions without any reliable basis other than his generalized career. For instance, Mr. Joseph would testify that in 2022, "UST adoption and LUNA had reached a scale that would have led *any* passive observer to believe they were going to be successful."[3] (*Id.* at 6 (emphasis added).) In this and other similar statements, Mr. Joseph would make sweeping generalizations about *all* investors without any particularized basis or support for the assertion. Even assuming Shetty could point to some reliable basis for this assertion, it is nonetheless irrelevant. Irrelevant because whether any "passive observer," including Shetty, believed UST/LUNA to be a successful endeavor has no bearing on what Company A and its board believed and instructed.

Mr. Joseph also plans to testify about events that came after the period at issue in the Indictment. Specifically, Mr. Joseph purports to describe the history of UST, and the "TerraLuna market crash" in May 2022, in a way that includes reference to facts that only came to light much later. (*Id.* at 2.) His report says, for example, that he would testify about how "market actors came in and covered over the [2021] depeg" of UST, which "provided false confidence to the market." (*Id.* at 4.) As detailed above, this type of testimony is irrelevant and likely to confuse the jury and should be excluded as such.

The potential for confusion is particularly acute with Mr. Joseph's proposed testimony about "false confidence to the market" for UST. (*Id.*) This will be the subject of

---

[3] UST and LUNA are cryptocurrencies that Shetty is accused of buying with Company A's money. (*See* Dkt. 1 ¶ 17).

Motion to Exclude Expert Testimony - 9
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

a forthcoming motion *in limine* by the government, and the Court could reserve decision on this aspect of the proposed expert testimony until deciding that motion *in limine*, but the issue, briefly, is as follows. After UST crashed, it came to light that the organization behind UST and LUNA, Terraform Labs, and at least one of its founders, Do Kwon, apparently deceived investors about several aspects of their platform. The Securities and Exchange Commission recently prevailed in a civil fraud trial against Terraform Labs and Kwon, and Kwon stands accused both in the United States and Korea of several crimes. The facts already publicly known from these cases, as well as the accusations that remain outstanding, are far-reaching and serious, but they have nothing to do with Shetty's case. Shetty is charged here with secretly taking Company A's money and using it to acquire cryptocurrency, which Company A did not want to invest in. Part of the story, to be sure, is the fact that Company A's money was lost in the UST crash, but the reasons for that crash are not relevant. Indeed, it would only cause confusion for the jury to hear about the accusations against Kwon and others, let alone the evidence that supports those accusations. The jury would inevitably think it needs to pass judgment on those matters, when, in reality, they are matters for other juries in other cases. The core facts of this case will be complex enough; needlessly adding additional complexity surrounding the causes of the UST crash is unwarranted. Mr. Joseph's proposed testimony touching on these topics should therefore be excluded.

### C. Omid Malekan

Shetty proposes that Mr. Malekan would testify to similarly unreliable, irrelevant, and prejudicial conclusions, as identified in his disclosure. (Malekan's Disclosure, attached hereto as "Exhibit C"). As to the first bucket of proposed testimony—the unsupported and broad sweeping conclusions—Mr. Malekan is expected to testify that:

- Putting UST into Anchor was "to some people" "closer to an enhanced saving account than risky crypto investment."

Motion to Exclude Expert Testimony - 10
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

- "UST's perceived risk-return profile compared to other available investment opportunities: Those who didn't question the stability mechanism perceived it to be a dollar-linked investment with limited downside."
- "belief that TerraLuna was a stablecoin project led to many people considering UST a safe investment, at least as far as cryptocurrencies were concerned."

(*Id.* at 4–5, 9.) As discussed at length above, these types of broad-sweeping and unsubstantiated claims are not reliable when solely supported by a general career as a "blockchain security consultant." (*Id.* at 1.) The Court needs more than the expert's say so to find reliability. *See Daubert*, 43 F.3d at 1319. Further, as discussed throughout, the general attractiveness of UST as an investment is irrelevant to this case.

Second, as discussed above, the personal experiences and anecdotes of Mr. Malekan are improper expert testimony. Mr. Malekan plans to testify about his personal experience with UST, saying:

- He "was surprised by the number of intelligent people who believed in Terra and the viability of UST, people who were knowledgeable about the nuances of my industry. Some were friends and/or people whose judgment [he] respected."
- His "friends encouraged [him] to actually try" UST and he was "impressed" by it.
- His "associates" started "the hedge fund (where [he is] an investor and advisor) and it has done well."

(*Id.* at 4–5.) As stated above, personal anecdotes are improper expert testimony and are irrelevant to whether Shetty defrauded Company A. Furthermore, this proposed testimony would be prejudicial. Whether Mr. Malekan's friends liked UST will only confuse the issues and waste time.

Motion to Exclude Expert Testimony - 11
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D. Redundancy

These three witnesses' testimony should be limited to the extent that they offer unjustifiably redundant opinions. Federal Rule of Evidence 403 states that "needlessly cumulative testimony," even when relevant, can be excluded. Indeed, in spite of Local Criminal Rule 26(c), which requires Shetty to seek this Court's leave to call more than one expert on a given subject, he has offered no explanation for why, for example, he needs two experts to offer their expertise about cryptocurrency regulations—a topic that is not even at issue in this case. (*Compare* Ex. A, at 8, *with* Ex. C, at 8). Not only is the redundant testimony needlessly cumulative, but it will also lead to "undue delay" and wasting time," both of which are proper bases to exclude even relevant evidence under Rule 403.

## II. EXPERT TESTIMONY REGARDING CORPORATE LAW AND RELATED MATTERS

Shetty proposes to call three other expert witnesses who would testify about corporate law, financial markets, and related matters. Their names are Stuart Weichsel, Richard Painter, and James Angel. While nearly all their proposed testimony is of questionable relevance, the problems with Mr. Weichsel's and Mr. Painter's testimony run far deeper. Generally, the United States objects to their testimony on three bases. First, Shetty proposes that these experts would offer case-specific facts and opinions that, to the limited extent they are relevant, should be left to lay witnesses. Second, Shetty proposes that these experts would offer their views on core disputed questions in the case, including, perhaps most incredibly, an opinion that it is "difficult to argue" that Shetty lied to Company A's board. Allowing these opinions would invade the province of the jury. Third, Shetty proposes that these experts would testify that this case should be civil rather than criminal. The Court should exclude such statements as unreliable, irrelevant, and likely to confuse the jury or encourage nullification.

Motion to Exclude Expert Testimony - 12
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

### A. Stuart Weichsel

Shetty proposes that Mr. Weichsel, a law firm attorney who practices tax, corporate, and trusts and estates law, will testify about a wide variety of background matters, then go on to offer his opinions on several core factual questions in the case, including Shetty's state of mind. (*See* Weichsel Declaration, attached hereto as "Exhibit D").

The initial problem with Mr. Weichsel's proposed testimony concerns his description of Company A and Shetty's role as CFO. Mr. Weichsel can appropriately describe the general structure of corporations, the role of boards of directors, the functions of corporate officers, and other background matters that could help the jury understand the evidence in this case. But Shetty proposes that Mr. Weichsel will go further by specifically testifying about the entities and individuals involved here. Shetty says, for example, that Mr. Weichsel "will describe [Company A's] corporate structure, including its officers and board of directors," and "Shetty's duties and responsibilities as CFO and [Company A]'s board's duties and responsibilities." (*Id.* at 1–2.) None of this is appropriate or necessary for the jury to understand the case. To the extent that these sorts of case-specific facts are relevant, they can and should be supplied by lay witnesses with firsthand experience. *United States v. Brooks*, No. 06-CR-550, 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) (explaining that experts in this area "are restricted to explaining general corporate governance concepts," and collecting cases). Mr. Weichsel points to nothing in his career that would give him a sufficient and reliable basis to testify about the intricacies of Company A.

Remarkably, Mr. Weichsel, in Shetty's telling, would go even further. Shetty proposes that Mr. Weichsel will offer the following opinions:

- Mr. Weichsel will offer his views on Company A's investment policy, including that it is "poorly drafted." He will state his opinion that "Shetty may have reasonably concluded that the account created with Hightower Treasury met th[e] definition" of a "treasury account" under the investment

Motion to Exclude Expert Testimony - 13
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

- policy. He will also say "[i]t is reasonable to interpret the investment policy as permitting the corporation to invest in Hightower if an investment manager presented the investment and Shetty or the COO provided a written waiver."[4] And he will say that "it cannot be clearly determined that Shetty violated the Investment Policy as stated."

- Mr. Weichsel also will testify that "liability" for a corporate officer's breach of a fiduciary duty is "almost exclusively civil and rarely criminal." He asserts, "[i]t is practically unheard of for a corporate officer to face criminal charges that may violate corporate board policies." He will go on to describe the few instances where this liability is criminal, and why Shetty's conduct falls outside the scope of criminal liability. He will even tell the jury that Shetty was "[f]oolish," but "not criminal," and "[f]or Federal prosecutors to bring charges on the facts in this case is highly unusual and probably represents a change in criminal legal standards." And that "there is no sign of direct or indirect embezzlement or conversion of assets for personal use or other crimes."

(*Id.* at 2, 7–8.) All this testimony is utterly improper.

The proposed testimony about Company A's investment policy, including on the question whether Shetty violated it, goes to core issues that the jury, not Mr. Weichsel, must decide. The Ninth Circuit has held that generally experts should not testify about the interpretation of contracts. *See Nationwide Transport Fin. v. Case Info. Sys.*, 523 F.3d 1051, 1058–60 (9th Cir. 2008); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). The jury can deduct what the investment policy means based upon the plain

---

[4] Interestingly, this particular opinion is contrary to Shetty's position in his pending motion to suppress, where he calls this interpretation of the relevant section of the policy "unreasonable." Dkt. 49 at 5. In any case, Mr. Weichsel's opinion on this matter is irrelevant for the jury.

Motion to Exclude Expert Testimony - 14
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

language of the document, no expert is needed for this. *See Anderson News, L.L.C. v. American Medic, Inc.*, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015) ("Moreover, experts who 'merely recit[e] what is on the face of a document produced during discovery' do 'no more than that which the finder of fact could him or herself do,' and such experts' reports 'may be precluded on this basis alone.'"). After determining what the policy means, the jury will then be perfectly capable of reaching its own conclusion about whether Shetty violated said policy. Furthermore, Mr. Weichsel's opinion about what Shetty "may have reasonably" thought about the policy is an attempt to end-run Federal Rule of Evidence 704(b). Even if this were proper expert witness testimony, which it is not, Mr. Weichsel's testimony is unreliable. Mr. Weichsel does not point to a single case-specific fact or document that he reviewed in reaching these conclusions and, instead, solely relies upon his career experience as a sufficient basis for his conclusions. Mr. Weichsel's experience as a tax lawyer, in and of itself, does not make him qualified to testify about Company A policies or Shetty's interpretation of those policies. His opinions are unreliable and of no value to the jury.

Even more unreliable is Mr. Weichsel's opinion that this prosecution is "highly unusual," and his suggestion that this case would be more appropriately handled as a civil matter. Mr. Weichsel does not explain how, as a tax attorney with no apparent criminal experience, he arrived at these extraordinary opinions. As support for them, he offers only a non-sequitur about how, in his view, "[t]here were practically no criminal prosecutions arising out of the 2008 financial crisis." (*Id.* at 8.) Even if it were true (it is not) that cases like Shetty's are "almost exclusively civil," telling this to the jury would be nothing more an invitation for nullification. *See United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (affirming denial of jury instruction describing civil alternatives to criminal prosecution because "the availability of a civil remedy is irrelevant to the issue of criminal liability"); *United States v. DeMuro*, 677 F.3d 550, 565 (3rd Cir. 2012) (affirming exclusion of evidence about possibility of civil resolution in tax case because it would

Motion to Exclude Expert Testimony - 15
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

encourage jury nullification). If the government proves the alleged crimes against Shetty, then the jury will convict, and if not, then it will acquit. The jury—not Shetty's expert— gets to decide if this is a criminal case.

Finally, it bears noting that Shetty's proposed testimony would have Mr. Weichsel extensively discuss legal concepts. Some of this sort of testimony may be proper, but it could easily cross over an important line depending on how it comes in. For example, Shetty says that he will have Mr. Weichsel discuss the concept of a fiduciary duty, which is something that the Court will undoubtedly address with the jury given the nature of this case. (*See id.* at 4.) Indeed, the model instructions, assuming the Court uses them, lay out what facts the jury must find to convict Shetty based on omissions of material facts. *See* Ninth Circuit Manual of Model Criminal Jury Instructions § 15.35 (describing the "formal fiduciary relationship" or other facts that the jury can conclude created a "relationship of trust"). Mr. Weichsel's testimony on this same topic could easily confuse the jury, and worse, displace the role of the Court. As the Ninth Circuit has explained:

> It is well settled that the judge instructs the jury on the law. Experts interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations.

*United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999). To the extent that Mr. Weichsel is permitted to testify about corporate law or other legal matters, the government urges the Court to carefully police his testimony to avoid these potential improprieties.

### B. Richard Painter

Shetty proposes that Mr. Painter's testimony will largely mirror that of Mr. Weichsel. (*See* Painter Declaration, attached hereto as "Exhibit E"). It is therefore objectionable on all the same bases. Thus, for example, Shetty says that Mr. Painter, who is also a lawyer and a law professor, will testify extensively about corporate law and other legal concepts. This will include a discussion of the "prudent person rule," which Mr.

Motion to Exclude Expert Testimony - 16
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Painter acknowledges is a matter of "civil liability." (*Id.* at 5.) As above, the government
2  does not object to Shetty offering an expert to describe basic background concepts
3  concerning corporations, but the version of testimony that he is proposing goes over the
4  line and will only confuse the jury as they evaluate the criminal charges against Shetty.

5  Similarly, as with Mr. Weichsel, Shetty proposes that Mr. Painter would offer
6  improper and irrelevant opinions about what he sees as "flaws" in Company A's investment
7  policy. Mr. Painter goes so far as to say in his report that some of the purported flaws "very
8  likely" represent a breach of fiduciary duty by the board, which approved the policy. (*Id.*
9  at 7–9.) But it is Shetty, not the board, whose conduct will be on trial. Mr. Painter's
10 disclosure also describes his interpretation of the investment policy, which in many
11 respects is totally unmoored from the facts. He is of the opinion, for example, that "a
12 transaction that deviated only slightly from the guidelines in the Policy" would be
13 consistent with "both the intent and the express language of the Policy." (*Id.* at 8). It is
14 unclear how Mr. Painter divined the policy's "intent" without, say, speaking to members
15 of Company A's board. Even if he had, this would still be improper witness testimony. *See*
16 *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320–21 (S.D.
17 Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021) ("Moreover, 'the opinions of [expert]
18 witnesses on the intent, motives, or states of mind of corporations . . . have no basis in any
19 relevant body of knowledge or expertise.'"). Furthermore, there is simply no "express
20 language" in the policy that allows "slight[]" deviations. This all calls into question how
21 closely Mr. Painter has studied the facts here. In any event, regardless of the testimony's
22 reliability, the Court should not permit Mr. Painter to testify about these matters, just as it
23 should not permit Mr. Weichsel's testimony in the same area. The jury does not need expert
24 testimony to understand the investment policy and its role in the broader case. The jury can
25 read the investment policy and determine its effect on their own.

26 In still another parallel with Mr. Weichsel's proposed testimony, Shetty says that
27 Mr. Painter will offer opinions about key factual disputes in the case, including his view

Motion to Exclude Expert Testimony - 17
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

that "it is difficult to argue that Shetty lied to the Board," and that "criminal charges are . . . extremely rare" and are "almost never . . . imposed" in cases involving corporate officers "absent . . . kickbacks [or] misrepresentation." (*Id.* at 9.) This latter testimony, in addition to being irrelevant and improper, is self-defeating, because Shetty is charged here with "misrepresentation."[5] Likewise, Mr. Painter's statement that a "[c]onflict of interest is not itself criminal," is irrelevant because Shetty is not charged with a conflict of interest. (*Id.* at 10.) Moreso, if Mr. Painter has somehow concluded that Shetty did not mislead the board as charged, despite being unaware of the government's evidence, his opinion is wholly unreliable.[6] The question whether Shetty "lied" or intentionally misled the board is a central question of this case, and it is one that must be entrusted to the jury alone. *See Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's . . . .")

Finally, as to Mr. Painter and the other two witnesses in this area, Shetty states that they may testify about "any irregularities in the investigation or manner of enforcement of this case as they relate to corporate law." (*Id.* at 3; *see also* Ex. D, at 3.) What Shetty means by this statement is unclear, and the Court should either require him to spell out the supposed "irregularities" so that the government may make informed objections or reject

---

[5] In similar proposed testimony, Mr. Painter would say that "a corporate officer's breach of duty to the corporation only rises to the level of criminality if he embezzles money or other property from the corporation, engages in securities fraud, commodities fraud, or wire fraud." (*Id.* at 10.) By Mr. Painter's own terms, because wire fraud is alleged here, this case "rises to the level of criminality."

[6] Mr. Painter's report provides a list of just ten "documents" he says he reviewed in forming his opinion. (*Id.* at 35.) These listed documents—which, incidentally, include several documents that are apparently in Shetty's possession but that he has not produced to the government in discovery—could not possibly give Mr. Painter the full picture of this case.

Motion to Exclude Expert Testimony - 18
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

this testimony out of hand. Furthermore, as with the other purported experts, Mr. Painter is not a reliable expert on the topic of criminal investigations and enforcement.

### C. James Angel

Shetty proposes that Mr. Angel would testify about financial markets, investments, and related topics. (*See* Angel Declaration, attached hereto as "Exhibit F"). None of his proposed testimony is especially objectionable, apart from the issues identified above and its overall questionable relevance. Mr. Angel would testify about topics in investing such as "hindsight bias" and "market sentiment," yet, as noted earlier, the question for the jury in this case is whether Shetty committed wire fraud, not whether he made prudent investments with the money he took from Company A. (*See id.* at 7.) Similarly, testimony about "unforeseen events," like natural disasters that have changed other investments' value is not pertinent to any issue before the jury. (*Id.* at 9.) In any case, the government does not ask that the Court rule now on excluding any of Mr. Angel's proposed testimony, and instead the government will make relevance or other objections as appropriate as the testimony comes in during trial.

### D. Redundancy

These witnesses also have unjustifiable redundancy between their proposed testimonies, which is grounds for exclusion. *See* Fed. R. of Evid. 403. For instance, both Mr. Weichsel and Mr. Painter purport to be experts about, and offer testimony regarding, the unusualness that a corporate officer face criminal charges for breaching a "fiduciary duty." (*Compare* Ex. D, at 8, *with* Ex. E, at 10.) Similarly, both witnesses intend to testify about their interpretation of Company A's investment policy. (*Compare* Ex. D, at 6, *with* Ex. E, at 7–8.) Although this testimony is improper and irrelevant, as detailed above, it is also excludable because of its redundancy.

## CONCLUSION

Shetty's six proffered expert witnesses intend to testify to a substantial number of unreliable, irrelevant, prejudicial, and otherwise excludable opinions. The Court should

Motion to Exclude Expert Testimony - 19
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

exclude these opinions, for the reasons outlined above, pursuant to the Federal Rules of Evidence 401, 402, 403, and 702 and as part of its gate-keeping role.

DATED: June 25, 2024

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*/s/ Grace W. Zoller*
PHILIP KOPCZYNSKI
GRACE W. ZOLLER
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-7970
Fax: (206) 553-0882
Email: philip.kopczynski@usdoj.gov
grace.zoller@usdoj.gov

I certify that this memorandum contains 6,197 words, in compliance with the Local Criminal Rules and the Court's Order (Dkt. 57).

Motion to Exclude Expert Testimony - 20
*United States v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970