The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>NEVIN SHETTY,<br><br>Defendant. | NO. CR23-084-TL<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL *BRADY* MATERIAL** |

The defendant, Nevin Shetty, faces a high burden with his motion to compel, and he does not nearly overcome it. He asks the Court to order the government to obtain and turn over vast categories of information from a separate criminal case pending in another district because he claims it will exculpate him under *Brady v. Maryland*. But that is not how *Brady* works, and the material that Shetty seeks is not exculpatory. The Court should deny his motion.

## BACKGROUND

The indictment alleges that Shetty was the CFO of Company A, a private company based in Seattle. (Dkt. 1 ¶¶ 3, 5.) Company A raised capital in multiple rounds of funding. (*Id*.) Company A wanted to safeguard this capital "until it would be used for operating expenses, acquisitions, and other business purposes." (*Id*. ¶ 8.) Company A's capital was

Opp'n to Mot. to Compel - 1
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   therefore to be invested conservatively, such as in money market funds or treasury bonds.
2   (*Id.* ¶ 9.)
3       The indictment further alleges that Shetty, knowing Company A's conservative
4   intentions for its capital, secretly took $35 million from Company A and moved it to a
5   company he and another person had recently created named HighTower Treasury. (*Id.*
6   ¶ 14.) From there, Shetty used Company A's money to acquire a cryptocurrency called
7   TerraUSD ("UST"). (*Id.* ¶ 17.) UST, a type of cryptocurrency known as a "stablecoin," was
8   "supposed to maintain a peg to the value of the U.S. dollar through an algorithmic
9   relationship with a 'sister token' called Luna." (*Id.*) Shetty deposited a large portion of his
10  UST with the "Anchor" protocol, a "system for lending and borrowing UST," and he used
11  the remainder to acquire "synthetic assets through [the] Mirror" protocol, such as "mirrored
12  Polkadot cryptocurrency." (*Id.*) These investments promised double-digit yields, a far cry
13  from the conservative returns that Company A wanted. (*Id.* ¶¶ 10, 17.) Shetty personally
14  stood to profit the most. (*Id.* ¶ 22.)
15      The indictment further alleges that "[t]he price of UST dropped below its $1 peg on
16  or about May 7, 2022, and it moved further downward in the ensuing days." (*Id.* ¶ 23.) By
17  May 13, 2022, "UST had lost nearly all its value and the broader Terra ecosystem had
18  essentially collapsed," at which point Shetty confessed to others at Company A what he
19  had done (although even then "he did not fully let on his own role at HighTower and other
20  material details"). (*Id.*) "[V]irtually all of Company A's" $35 million was lost in the UST
21  crash. (*Id.* ¶ 2.)
22      The government will prove the allegations against Shetty at trial with over a dozen
23  witnesses, telling the story, as the indictment does, largely from the victim's perspective.
24  Thus, for example, members of Company A's board of directors will explain their reasons
25  for wanting to invest Company A's cash conservatively. They will testify that an investment
26  in cryptocurrency—even a so-called "stablecoin"—was utterly incompatible with their
27  intentions, which Shetty understood. And the jury will see documentary evidence that

Opp'n to Mot. to Compel - 2
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reinforces this point, such as an email exchange among the board members and executives (including Shetty) in which, when adopting Company A's conservative investment policy, they joked about investing in bitcoin. The joke was funny because cryptocurrency was the furthest thing from their intended approach.

The government will also make its case with Shetty's own words. For example, the jury will hear how, shortly before he began secretly chasing high yields with the stolen $35 million, Shetty assured a board member that he would target investment returns of well under one-half of one percent with Company A's cash. The jury can compare this to Shetty's later boast to his HighTower co-founder about the substantially higher returns he was hoping to earn off Company A's money. The jury will also see that on HighTower's website, Shetty warned prospective customers that they should "not deploy more capital" to HighTower than they were "willing to lose." In another place on the website, he noted the investing axiom that "higher return generally equates to higher risk." Shetty thus acknowledged that investing in cryptocurrency involved risks, but secretly decided the risks were worth the potential reward (which would flow mostly to himself) when dealing with Company A's money.

## APPLICABLE LAW

"There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Instead, the Ninth Circuit has explained that "[u]nder *Brady*, the government must disclose information favorable to the accused that is material either to guilt or to punishment." *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (internal quotation marks and citation omitted). Favorable information is "material" if there is a "reasonable probability" that its disclosure would have changed the result at trial or sentencing. *Id*.

*Brady* is a self-executing obligation entrusted to the prosecution. *See United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992). "It is the government, not the defendant or the trial court, that decides prospectively what information, if any, is material and must

Opp'n to Mot. to Compel - 3
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

be disclosed under *Brady*." *Lucas*, 841 F.3d at 807. A defendant challenging the government on a *Brady* disclosure matter must show that material information was withheld. *Id.* at 808. Information is not material simply because the defendant wants it or speculates that it might help his defense. *Id.* at 808–09; *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).

*Brady* is traditionally a matter that arises after conviction. The Ninth Circuit has not been entirely consistent in its treatment of *Brady* claims made before trial. In several older cases, the Ninth Circuit held that when "a specific request for [*Brady*] evidence is made, the test for materiality is whether the requested evidence might affect the outcome of the trial." *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (internal quotation marks and citation omitted); *see also United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004) (noting that when "the defendant requests specific evidence under *Brady*, he must show that it is material," and the "test for materiality is whether the requested evidence might affect the outcome of the trial"). These cases accord with *United States v. Bagley*, 473 U.S. 667 (1985), where the Supreme Court held that *Brady* requires disclosure only of material evidence, and "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682.

More recently, in *United States v. Olsen*, 704 F.3d 1172 (9th Cir. 2013), the Ninth Circuit remarked that it is "too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *Id.* at 1183 n.3. In a footnote in the *Olsen* decision, the Ninth Circuit said that, because of this difficulty, "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence . . . should not limit the disclosure of such evidence." *Id*. Similarly, a later panel of the Ninth Circuit, relying on *Olsen*, wrote that "[w]hether a jury would ultimately find the evidence convincing and lead to an acquittal is not the measuring rod" for *Brady* disclosures before trial, and instead, the focus should be on the "favorableness" of the evidence based on the

Opp'n to Mot. to Compel - 4
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 record in the case "up to that point." *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir.
2 2020); *see also United States v. Cloud*, 102 F.4th 968, 980 (9th Cir. 2024) ("when favorable
3 suppressed evidence is discovered mid-trial, the materiality standard is benchmarked
4 against the relative value of the evidence in light of the proceedings to date—not as a
5 retrospective evaluation of how the disclosure may have impacted the outcome of a trial
6 that has not yet concluded"). Yet a different panel of the Ninth Circuit has called *Olsen*'s
7 point about *Brady* "dicta." *Lucas*, 841 F.3d at 809. That panel wrote that *Olsen* encouraged
8 "prosecutors to err on the side of disclosure" but "did not alter the fundamental construct
9 of *Brady*." *Id*. In other words, unless a defendant "can make a showing of materiality or
10 demonstrate the government has withheld favorable evidence, he must rely on the
11 prosecutor's decision regarding disclosure." *Id*.

12       District courts have varied in their interpretation of the Ninth Circuit's "somewhat
13 vague" guidance on how to apply *Brady*'s materiality standard before trial. *United States*
14 *v. Lacey*, No. CR18-422, 2020 WL 3488615, at *5 (D. Ariz. June 26, 2020). The
15 government's position is that, under *Bagley* and other controlling Supreme Court
16 precedent, the assessment of materiality has to reflect an analysis of whether there is a
17 reasonable probability that the evidence could affect the verdict or sentence. As explained
18 below, however, the Court should find that Shetty's motion fails no matter the precise
19 contours of the materiality standard, because the evidence he is seeking is irrelevant.

20 <center>**ARGUMENT**</center>

21       In spite of the byzantine appearance of the cryptocurrency investments that Shetty
22 pursued with Company A's cash—not to mention his own contemporaneous words of
23 caution about the risks involved—he now says that he will "likely" defend himself at trial
24 by claiming that he believed UST was "safe and conservative." (Dkt. 73 at 2, 8.) With that
25 as his "likely" defense, he asks the Court to order the government to produce "all evidence
26 in its files from the prosecution of Do Kwon that relates in any way to: (1) representations
27 or statements by Mr. Kwon or any affiliated entities or individuals about the safety, stability,

Opp'n to Mot. to Compel - 5
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or effectiveness of any cryptocurrencies; and (2) losses to investors caused by Mr. Kwon or any affiliated entities or individuals." (Dkt. 73-3 at 2.) As authority for such an extraordinary order, Shetty cites *Brady*.

Do Kwon, as Shetty describes for the Court, is a founder of UST and its parent company, TerraForm Labs. Civil and criminal cases filed in both the United States and Korea allege that Kwon misled investors in UST by, among other things, misrepresenting the extent of UST's popularity and overstating the ability of the algorithmic mechanism behind UST to maintain the peg to the U.S. dollar. A federal criminal fraud case is pending against Kwon in New York while the United States seeks his extradition from Montenegro. *See U.S. v. Kwon*, No. 23-CR-151 JPC (S.D.N.Y.). Additionally, the SEC recently won a civil fraud trial against Kwon and TerraForm Labs in New York, after which the parties announced a nearly $4.5 billion settlement.

The Court should reject Shetty's claim that *Brady* entitles him to a wide swath of the investigative file from the prosecution against Kwon in New York. Shetty's arguments in support of that claim are flawed at every step. He does not offer the kind of case-specific analysis that might show the requested records are accessible to the prosecution team. He also does not show that any of the requested records are favorable or material to his guilt or punishment. Finally, his speculative arguments about the Sentencing Guidelines are, at best, premature, and can be addressed closer in time to sentencing.

A.  **Shetty does not show that the requested information is in the possession of, or accessible to, the prosecution team.**

Shetty's motion seeks the production of information that is not in the prosecution team's possession. He would have the prosecutors obtain the files of another office, claiming those files are just "a phone call" or "email" away, then review the files for responsiveness to his two exceptionally broad categories of supposedly "exculpatory" information. (Dkt. 73 at 3.) But his argument that *Brady* requires these steps simply because the Western District of Washington and the Southern District of New York "are both

Opp'n to Mot. to Compel - 6
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

branches of the Department of Justice" (Dkt. 73 at 9), has been repeatedly rejected by courts as insufficient. *See, e.g.*, *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844–45 (9th Cir. 2024) (rejecting an argument about access to documents under *Brady* that "conflate[d] the DoD components that participated in the investigation with the entirety of DoD," and noting a prior holding that "the FBI and the DEA were outside of the investigating team for a criminal prosecution that had been investigated and initiated by Homeland Security Investigations, notwithstanding the fact that the FBI and DEA, like the prosecuting U.S. Attorney's Office, were components of the Department of Justice"); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis" (internal quotation marks omitted)). *Brady* does not require the prosecutors here to scour the records of another U.S. Attorney's Office for potentially exculpatory information that may exist in a separate prosecution of a different defendant.

The two cases cited by Shetty are distinguishable. In *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989), there was "a nationwide investigation" of the *defendant's* "activities coordinated by the National Office of the Internal Revenue Service." *Id.* at 1033. The Ninth Circuit reversed a district court ruling that allowed the government to limit its production of exculpatory information from the nationwide investigation to information from the district where charges were brought. The Ninth Circuit explained that the prosecutors' *Brady* obligation did not "stop at the border of the district" in this circumstance. *Id.* at 1037. Here, by contrast, Shetty wants the prosecutors to review the discovery from an unrelated criminal case brought in a separate district regarding an entirely different defendant.

In the other case cited by Shetty, *United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995), the defendant was charged with murdering a fellow inmate at a federal prison. The

Opp'n to Mot. to Compel - 7
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendant "requested Bureau of Prison files on the testifying inmates in order to seek information that linked them to rival gangs." *Id.* at 893. The Ninth Circuit held that the prosecutors had "knowledge of and access to" the requested files from the BOP, and therefore constructively possessed them. *Id.* at 894. Here, Shetty has not shown that the prosecutors have knowledge of and access to the Kwon materials in New York. Indeed, Shetty is not even identifying particular files in the New York case, but rather he wants—in the fashion of a civil discovery demand—"all evidence . . . that relates in any way to" two amorphous and exceedingly broad topics. (Dkt. 73-3 at 2.)

**B.     Shetty does not show that the requested information is favorable or material.**

A bigger problem with Shetty's motion is that he has not established that any of the information he is seeking is favorable or material to his defense. His effort to show that the requested evidence is favorable and material falls short in at least four respects.

*First*, Shetty fails to explain how it is that a "good faith" belief that UST was "conservative and ultimately safe" would be "exculpatory." (Dkt. 73 at 1–2.) The point is not self-evident. For one, his investments with Company A's stolen cash involved far more than holding UST. He does not say if he believed his esoteric trades involving mirrored Polkadot were also "conservative and safe." Moreover, Shetty could have believed in the safety of all these investments while still carrying out the scheme to defraud Company A. The two are not mutually exclusive. There is no suggestion that Shetty was somehow deceived into believing UST was actually a treasury bond or some other investment type that Company A wanted. Nor is it suggested that Kwon tricked or deceived Shetty into misrepresenting material facts to Company A. Shetty never attempted to persuade Company A's board that UST was "conservative and safe" because he never even discussed the investment with the board. Instead, he lied to them about his intentions and carried out his scheme in secret. Shetty's actions speak for themselves. Even if he personally believed the investments were safe, and even if he believed this conclusion because of Kwon's misrepresentations, Shetty is still guilty of wire fraud.

Opp'n to Mot. to Compel - 8  
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

*Second*, Shetty misconstrues the government's position about what could be relevant evidence at trial. He says that the government takes the position that "Kwon's representations to investors—even if relied on by Shetty—are irrelevant." (Dkt. 73 at 2.) He is wrong. If Shetty testifies at trial and claims that he believed his investments were conservative and safe, he can describe statements by Kwon or other market information that informed his purported view without objection from the government.[1] But nothing from the Kwon prosecution is needed for Shetty to offer that testimony, which turns on what he knew at the time. The only thing the discovery from the Kwon prosecution could add is facts not known to Shetty, and facts that post-date Shetty's offense—neither of which are relevant. Shetty's suggestion that evidence from the Kwon prosecution would "corroborate" his testimony (Dkt. 73 at 2) is far too nebulous for a *Brady* claim.

*Third*, Shetty ignores a simple way of addressing the subject of the UST market crash that would not require detouring his trial into an exposition on the crash's cause. Shetty's apparent concern about the crash is that unless he establishes that "Kwon's fraud led to the crash of UST," the jury might conclude that the crash was "foreseeable to Shetty." (Dkt. 73 at 8.) He therefore wants to try to prove that the crash was not foreseeable. But if the Court agrees this is a valid concern, it could simply instruct the jury that they should not speculate about the cause of the crash, which is not a question they have to decide. Such an instruction would vitiate any notion that Shetty has to put on the case against Do Kwon within his defense case-in-chief.

*Fourth*, Shetty does not acknowledge that much of what he is claiming he needs in discovery is already known to him because it is public record. Indeed, the extensive public

---

[1] The government does have a larger concern about relevance here, as previously expressed, which is that the views about cryptocurrency of "Company A and its board"—not Shetty or anyone else—are what ultimately matter to the wire fraud charges. (Dkt. 58 at 9.) But the government acknowledges that, if Shetty testifies, he should have some leeway to describe his state of mind.

Opp'n to Mot. to Compel - 9
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 record is what allowed Shetty to bring this motion. As he describes, Kwon and Terraform Labs have recently agreed to a nearly $4.5 billion settlement with the SEC after a jury found them liable for fraud at a nine-day trial. Additionally, there is a public indictment of Kwon pending in the Southern District of New York, more charges pending in Korea, and countless articles written about the criminal charges against Kwon and the downfall of UST. With this massive body of public facts at Shetty's disposal, the question becomes whether there is some different or additional information in the possession of prosecutors in New York that is material to Shetty's defense. Shetty gives no reason to think the answer to that question is yes. *See United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("When, as here, a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government."); *Michaels*, 796 F.2d at 1116 ("Michaels offers no reason for believing that the notes contain significant material that is not contained in the typed summaries he already possesses.").

**C.     Shetty's concerns about the Sentencing Guidelines are, at best, premature.**

Finally, Shetty's concerns about sentencing are not a sound basis to grant his motion to compel. *Brady* claims in the sentencing context commonly involve death penalty mitigation evidence. Shetty's claim, by contrast, is that the Do Kwon fraud could factor into the Court's calculation of the foreseeable loss caused by Shetty under the Sentencing Guidelines. (Dkt. 73 at 8.) The Court can safely leave Guidelines questions for another day. After Shetty is convicted at trial, the Court will have heard the government's evidence, including the evidence (like Shetty's own words) that goes to whether Shetty foresaw Company A's loss. If at that point the Court believes the Kwon prosecution is relevant to the loss calculation or any other question, the parties can address it. But it is not a reason to order the government now to obtain and produce a vast quantity of discovery from another case in the name of *Brady*.

//

Opp'n to Mot. to Compel - 10
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CONCLUSION

Shetty fails to establish that the requested information from the Kwon case is in the prosecution team's possession or that it is favorable or material to his defense. The Court should deny Shetty's motion.

DATED this 1st day of August, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Philip Kopczynski*
PHILIP KOPCZYNSKI
GRACE W. ZOLLER
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-7970
Fax: (206) 553-0882
Email: philip.kopczynski@usdoj.gov
grace.zoller@usdoj.gov

I certify that this memorandum contains 3,444 words, in compliance with the Local Criminal Rules.

Opp'n to Mot. to Compel - 11
*United States v. Nevin Shetty*, CR23-084-TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970