The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA., <br><br> Plaintiff, <br><br> v. <br><br> NEVIN SHETTY, <br><br> Defendant. | No.: 2:23-cr-00084-TL <br><br> **BRIEF OF AMICUS CURIAE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

**INTRODUCTION**

For decades, the Supreme Court has steered a consistent campaign to rein in over-broad constructions of the federal fraud statutes like the interpretation the government urges this Court to adopt. The Supreme Court has intervened again and again—often unanimously—to check overzealous prosecutors' attempts to criminalize purportedly fraudulent conduct that falls outside the lines Congress has drawn.[1]

Amicus National Association of Criminal Defense Lawyers (NACDL) believes this case reflects yet another improper attempt by the government to stretch the wire-fraud statute beyond its breaking point. In this instance, the government is attempting to criminalize an allegedly self-interested investment decision made by an executive with the authority to make such an investment—simply because he allegedly did not disclose complete and accurate information to

---

[1] *See, e.g.*, *Ciminelli v. United States*, 598 U.S. 306 (2023) (unanimously overturning wire-fraud conviction); *Percoco v. United States*, 598 U.S. 319 (2023) (overturning wire-fraud conviction); *Kelly v. United States*, 590 U.S. 391 (2020) (unanimously overturning wire- and program-fraud convictions); *Skilling v. United States*, 561 U.S. 358 (2010) (overturning wire-fraud conviction); *Cleveland v. United States*, 531 U.S. 12 (2000) (unanimously overturning mail-fraud conviction).

BRIEF OF AMICUS NACDL - 1
(No. 2:23-cr-00084-TL)

others at the company. That is not wire fraud, as evidenced by the governments' moving-target attempts to characterize the purported criminality. And even if the Court ultimately concludes that this case falls within the grey area of the fraud statute's ambit, it should nevertheless dismiss as a matter of statutory interpretation, due process, and lenity.

**INTERESTS OF AMICUS CURIAE**

NACDL is a nonprofit bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crimes. Founded in 1958, NACDL has a nationwide membership of thousands of members, including private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defense and private criminal defense lawyers.

NACDL is dedicated to advancing the proper, efficient, and just administration of criminal justice. Each year, NACDL files amicus briefs in courts around the country, including the U.S. Supreme Court, concerning issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system. NACDL has a particular interest in reducing overcriminalization. It regularly opposes overbroad interpretations of criminal laws and has filed multiple amicus briefs regarding the proper interpretation of the federal fraud statutes.

**ARGUMENT**

**I.    The Indictment Attempts Overcriminalization Incompatible with the Supreme Court's Narrow Construction of the Federal Fraud Statutes.**

The indictment here is another step in a sustained tug-of-war between federal prosecutors' attempts to expand the scope of the federal fraud statutes and consistent judicial interventions to check that expansion. "Despite the[] limitations" imposed by the "original meaning of the text," "lower courts for decades interpreted the mail and wire fraud statutes to protect intangible interests unconnected to traditional property rights." *Ciminelli*, 598 U.S. at 312. In 1987, the Supreme Court "halted that trend"—or at least attempted to do so—by "prevent[ing] the Government from basing federal fraud convictions on harms to intangible interests." *Id.* at 313 (citing *McNally v. United States*, 483 U.S. 350 (1987), *superseded in part by* 18 U.S.C. § 1346).

But prosecutors were undeterred, continuing to use the wire-fraud statute as an almost

BRIEF OF AMICUS NACDL - 2
(No. 2:23-cr-00084-TL)

ORRICK HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301

infinitely flexible tool to police a broad range of conduct otherwise unregulated by federal criminal law. As a result, the Supreme Court has been required, again and again, to intervene to enforce fundamental statutory requirements. The Court has "consistently rejected such federal fraud theories that 'stray from traditional concepts of property'" and are therefore "unmoored from the federal fraud statutes' text" and "inconsistent with the [statutes'] structure and history." *Ciminelli*, 598 U.S. at 314-15 (quoting *Cleveland*, 531 U.S. at 24). In *Skilling*, the Court rejected a conviction for honest-services fraud based on "undisclosed self-dealing by a public official or private employee—i.e., the taking of official action by the employee that furthers his own financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." 561 U.S. at 409-10. In *Kelly*, the Court overturned wire-fraud convictions where the loss of money was "an incidental (even if foreseen) byproduct" of the defendants' conduct. 590 U.S. at 403. And most recently in *Ciminelli*, the Court set aside a wire-fraud conviction based on the deprivation of "potentially valuable economic information necessary to make discretionary economic decisions," i.e., a "right-to-control theory [which] is not a valid basis for liability under § 1343." 598 U.S. at 309 (quotation marks omitted).

With the charges against Mr. Shetty—filed less than a week after *Ciminelli* was decided—the government seeks to criminalize precisely what *Ciminelli* found beyond the reach of federal criminal law. The government alleges that Mr. Shetty invested Company A's money without disclosing the self-interested and volatile nature of that investment, and it asserts that this was a fraud because, for example, "Company A would not have wanted to invest in cryptocurrency." Indictment ¶ 19; *see also id.* ¶ 18 (alleging Mr. Shetty's investment "defied the board of directors' intentions for how the company should safeguard its cash"). But that is the expansive approach to fraud that *Ciminelli* proscribed: denying the purported victim "information that affects the victim's assessment of the benefits or burdens of a transaction." 598 U.S. at 311.

In the government's view, this indictment survives *Ciminelli* because "[t]his is not a case of imperfect information, rather it is a case of *no* information." Opp'n 11. As Mr. Shetty explained, however, the wire-fraud statute "does not reach deprivations of information necessary

BRIEF OF AMICUS NACDL - 3
(No. 2:23-cr-00084-TL)

ORRICK HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301

1   to make informed economic decisions." Mot. 7 (Dkt. 52).  Exactly right: whether framed as
2   imperfect information or—in the government's words—no information, "[t]here is no cognizable
3   property interest in 'the ethereal right to accurate information.'" *United States v. Yates*, 16 F.4th
4   256, 265 (9th Cir. 2021) (quoting *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014)).
5   Even if it were true that Mr. Shetty gave the company "no information" about the alleged
6   investment, *contra* Indictment ¶¶ 19-20, 23, the government cannot prosecute a fraud case
7   premised on the notion that "accurate information in itself constitutes 'something of value,'"
8   *Yates*, 16 F.4th at 165.

9         In dicta, the Ninth Circuit in *Yates* stated that "the fraudulent diversion of a bank's funds
10  for unauthorized purposes certainly could be the basis for a conviction" under the bank-fraud
11  statute. *Id.* at 268 (citing 18 U.S.C. § 1344).  The government here contends that Mr. Shetty
12  committed fraud because he made the alleged investment "without Company A's knowledge or
13  consent." Opp'n 9.  As Mr. Shetty has explained, the alleged investment "*was* authorized by
14  Fabric's board under the resolution adopting the investment policy." Reply 6 (emphasis added).
15  And the policy further explicitly instructed that an officer's investment action—like Mr. Shetty's
16  alleged actions here—is to be deemed "conclusive evidence of his or her authorization." *Id.*  The
17  government simply fails to reckon with the fact that as CFO, and under the company's investment
18  policy in particular, Mr. Shetty was authorized to make investments.  The government's unpled
19  contention that "this is a case about an embezzlement," Opp'n 11, is entirely undermined by that
20  reality—and is contrary to the indictment as well.

21        The same distinction undercuts the government's reliance (at 12) on another pre-*Ciminelli*
22  decision, *United States v. Spangler*, where the defendant's Ponzi scheme was predicated on self-
23  interested investments undertaken with client funds "all without his clients' consent." 810 F.3d
24  702, 705 (9th Cir. 2016).  Again, Mr. Shetty was authorized to invest and to self-authorize
25  exceptions to the investment policy (to the extent any exception was even necessary). *Spangler* is
26  further distinguishable because, in concluding that the indictment adequately alleged fraudulent
27  intent, the Ninth Circuit applied the substantially more lenient liberal-construction standard
28

BRIEF OF AMICUS NACDL - 4
(No. 2:23-cr-00084-TL)

ORRICK HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301

triggered by a midtrial, "tardy challenge" to an indictment—a thumb on the scale in the favor of the government that is absent in the present procedural context (where Mr. Shetty has timely moved to dismiss the indictment). *Id.* at 711; *accord id.* ("*Applying that standard* here, we have no trouble sustaining the indictment." (emphasis added)).

\* \* \*

As *Yates* explained, "recognizing accurate information as property would transform all deception into fraud," and would criminalize conduct far outside the reach of the federal fraud statutes. 16 F.4th at 265. The Supreme Court has repeatedly resisted that expansive interpretation of those statues based on the foundational principle that to criminalize conduct "not provided for in the text of the act" is an improper "usurpation of legislative authority." *United States v. Open Boat*, 27 F. Cas. 354, 357 (C.C.D. Me. 1829) (Story, J.). Moreover, the government's maximally flexible interpretation would empower federal prosecutors—without congressional authorization—to "enforce [their] view of[] integrity in broad swaths of state and local policymaking" or, as here, to transform their mistaken interpretations of internal company policies into trip wires for criminal liability. *Ciminelli*, 598 U.S. 312 (quoting *Kelly*, 590 U.S. at 404).

The government's overreach is further demonstrated by its strained attempts to identify precisely what was fraudulent about the charged conduct here. In its opposition (at 1, 3, 11-12), the government repeatedly asserts without specifics that Mr. Shetty made material misrepresentations. But it identifies only one particular allegation of false statements—HighTower's website—and does not explain how that website was directed at Company A or otherwise a part of the purported scheme to defraud. *See* Opp'n 8. Unable to articulate a cognizable fraud, the government pivots (at 11) to arguing that "this case is about an embezzlement," but the indictment does not charge embezzlement. The government's moving-target approach suggests that even the government itself is unsure how the indictment's allegations amount to wire fraud—rather than a workplace policy dispute. This Court should not countenance the government's continued attempts at the "sweeping expansion of federal criminal

BRIEF OF AMICUS NACDL - 5
(No. 2:23-cr-00084-TL)

ORRICK HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301

jurisdiction," *Kelly*, 590 U.S. at 404, so as to "criminalize[] traditionally civil matters" far outside the federal fraud statutes' reach, *Ciminelli*, 598 U.S. at 316.

## II.   Principles of Statutory Interpretation and Due Process Favor Narrow Construction of the Wire-Fraud Statute.

To the extent there is any doubt whether the Court should interpret the wire-fraud statute to criminalize the conduct charged in the indictment, fundamental principles of statutory interpretation and due process all counsel against doing so.  A "manifestation" of the Due Process Clause's "fair warning requirement," the "canon of strict construction of criminal statute, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."  *United States v. Lanier*, 520 U.S. 259, 266 (1997).  Lenity, originally rooted in English law, has come to "serve distinctively American functions—a means for upholding the Constitution's commitments to due process and the separation of powers." *Wooden v. United States*, 595 U.S. 360, 389 (2022) (Gorsuch, J., concurring in the judgment); *see also* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 128-34 (2010) (chronicling the history and application of the rule of lenity).

The rule of lenity is "especially appropriate" in the wire-fraud context, and the Supreme Court has not hesitated to apply it in order to "resist the Government's less constrained construction [of the fraud statutes] absent Congress' clear instruction otherwise." *Skilling*, 561 U.S. at 411 (quoting *Cleveland*, 531 U.S. at 25).  So, to the extent that this Court concludes—despite all the decisions above urging narrow construction of the fraud statutes—that there is still "no clear answer," the "next step is lenity." *Id.* at 395.

In the face of prosecutorial overreach, the Court's role in applying the rule of lenity and the fair-warning requirement is not just a matter of good government and congressional authorization.  It is also an important check on the dangers of overcriminalization.  Overbroad government interpretations of criminal statutes "encourage arbitrary and discriminatory enforcement." *McDonnell v. United States*, 579 U.S. 550, (2016) (quoting *Skilling*, 561 U.S. at 402-03).  And as Chief Justice Roberts has pointed out, overbroad interpretations give prosecutors "extraordinary leverage" to charge aggressively and extract guilty pleas.  Oral Arg.

BRIEF OF AMICUS NACDL - 6
(No. 2:23-cr-00084-TL)

**ORRICK HERRINGTON & SUTCLIFFE LLP**
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301

Tr. 31, *Yates v. United States*, 574 U.S. 528 (2015) (No. 13-7451).

The Supreme Court's adherence to these fundamental principles explains why, time and again, the Court has rejected the creeping expansion of the federal fraud statutes. This Court should take the same approach and reject the government's attempts to broaden the wire-fraud statute here in circumvention of *Ciminelli* and related decisions.

## CONCLUSION

Amicus NACDL respectfully urges the Court to grant Mr. Shetty's motion and dismiss the indictment.

Dated: August 12, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ *James Anglin Flynn*
James Anglin Flynn (*pro hac vice* pending)
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel.: (617) 880-1802
Fax: (617) 880-1801
jflynn@orrick.com

Aaron Brecher (WSBA No. 47212)
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301
abrecher@orrick.com

*Attorneys for Amicus Curiae*
*National Association of*
*Criminal Defense Lawyers*

Counsel certifies that this memorandum contains 2,018 words, in compliance with the Local Criminal Rules.

BRIEF OF AMICUS NACDL - 7
(No. 2:23-cr-00084-TL)

ORRICK HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Tel.: (206) 839-4300
Fax: (206) 839-4301