The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEVIN SHETTY,<br><br>Defendant. | No. 2:23-cr-00084-TL<br><br>SUPPLEMENTAL BRIEF REGARDING CORPORATE LAW IN SUPPORT OF PENDING MOTIONS |

**INTRODUCTION**

There are four motions pending before the Court that implicate corporate law principles in at least some respects: (1) Defendant's motion to suppress (Dkt. 41); (2) Defendant's motion to dismiss (Dkt. 52); (3) the government's motion to exclude expert testimony (Dkt. 58); and (4) Defendant's motion to compel *Brady* materials (Dkt. 73). Such issues also will arise in connection with jury instructions and motions *in limine*, if this case proceeds to trial. Due to the briefing limits, however, many of the relevant corporate law issues have not been addressed at sufficient length, and the government repeatedly has taken advantage of this relative void to press arguments that are significantly undermined by core principles of corporate law. This supplemental brief addresses those principles and their relevance to the pending motions.

For example, the government claims that Shetty, as CFO, defrauded Fabric because he invested some of its money contrary to the company's wishes and against purported "instructions"

SUPP. BRIEF ON CORPORATE LAW - 1
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

that an unnamed person at Fabric gave him. These vague claims raise several questions that require an in-depth look at Delaware corporate law.[1] For example, what inherent authority does a CFO have to invest a company's money? Where does such authority come from? How is a CFO's authority limited? Can a company have "wishes" and "desires"? How does a company express such wishes and desires in such a way as to bind its corporate officers? Can "instructions" from someone at the company—even a board member—limit the CFO's authority?

These questions—and the corporate law principles that answer them—are central to the government's case and the pending motions. For example, as detailed below, corporate law affects the pending motions in at least the following ways:

- The Defendant's motion to suppress requires this Court to consider the scope of Shetty's authority, as CFO, to carry out a board resolution, *see* Dkt. 41 at 6;

- The Defendant's motion to dismiss requires this Court to consider what actions a corporate officer is permitted to take within the bounds of the law, and what restrictions are placed on those actions, *see* Dkt. 52 at 5;

- The government's motion to exclude expert testimony requires this Court to consider what information about corporate law is relevant to the elements of the pending charges, *see* Dkt. 58 at 5; and

- The Defendant's motion to compel *Brady* material requires this Court to consider what evidence is relevant to how an officer might understand and implement resolutions of the board, *see* Dkt. 73 at 2.

Yet the government's indictment and subsequent pleadings against Shetty ignore these issues and Fabric's corporate form altogether. Instead, the government repeatedly speaks of Fabric as if the company itself were a person with wishes and desires, while also implying that the wishes and desires of certain unnamed individuals at "the company" are those of the company itself. The government is wrong in both regards.

---

[1] The indictment states that Fabric is incorporated in Delaware, (Dkt. 1 at ¶ 4), so Delaware corporate law governs these issues.

SUPP. BRIEF ON CORPORATE LAW - 2
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

A company is a legal entity, wholly separate from the owners and actors with roles within that entity. The government steadfastly ignores this vital distinction and instead attempts to prop up its case using vague references to the "wishes" of the company or what the company "wanted." This brief demonstrates that:

- Companies like Fabric are legal fictions that have no personal characteristics, thoughts, or desires of their own;

- Companies are governed by bylaws that divide authority between shareholders, directors, and officers and govern the relationship between the three groups;

- Corporate boards confer or restrict power and authority only through official acts, such as a resolution passed at a meeting or unanimous action by written consent; and

- Unofficial actions—even purported "instructions"—of a director or other officer cannot negate official actions.

## BACKGROUND

The government has repeatedly claimed that Shetty's HighTower investment was contrary to Fabric's "desires," "intentions," or what it "wanted." For example, the government's indictment and pleadings make the following claims:

- "By investing Company A's money in cryptocurrency through HighTower, SHETTY knowingly defied the board of directors' <u>intentions for how the company should safeguard its cash</u>." (Dkt. 1 at ¶ 18.)

- "<u>Company A would not have wanted</u> to invest in cryptocurrency, and <u>Company A would not have wanted</u> to pay SHETTY extra money. . ." (*Id.* at ¶ 19.)

- ". . . <u>Company A did not want</u> him to take its money for use in this fashion. . ." (Dkt. 59 at 1.)

- ". . .despite <u>Company A's explicit instructions</u>. . ." (*Id.* at 2.)

- ". . .a risk <u>Company A did not want</u> to take. . ." (*Id.* at 5.)

- ". . .<u>Company A specifically denounced</u> placing its money in something as risky as cryptocurrency." (*Id.* at 5-6.)

- "The question is whether <u>Company A thought</u> that TerraLuna was an appropriate investment, and whether Shetty understood <u>Company A's view</u>. . ." (Dkt. 63 at 3.)

SUPP. BRIEF ON CORPORATE LAW - 3
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- "SHETTY knew the transfer was contrary to Company A's . . . policy and other instructions given to him. . ." (Dkt. 1 at ¶ 2.)

- "[O]n the question whether Shetty's investment in cryptocurrency was one that Company A wanted, its lawyer's views were highly relevant." (Dkt. 46 at 6.)

These allegations wrongly rely on the notion that corporations have desires and wishes. They do not. To be sure, the people that comprise the board of directors often have desires and wishes about how the company should be run. And when directors share the same ideas, they can vote and take official action to ensure the officers that run the company abide by their wishes. But officers' authority is neither extended or limited by vague notions of a company's desires or the explicit desires of individual directors. This is black letter corporate law, as detailed below.

## ARGUMENT

**I.      General Principles of Corporate Law Affect This Case.**

The government has ignored the corporate form throughout this case by making vague allegations about the intentions and desires of Fabric. But the government never identifies how these supposed desires are manifested in such a way that would bind an officer like Shetty, if they were manifested at all. Where the government has underpinned its allegations on the thoughts and feelings of a corporation that exists only in the contemplation of law, or where such entities have no identifiable human form and cannot act as alleged, the government's arguments must fail.

Under Delaware law, a corporation is a specific type of business entity, distinct from other entities such as limited liability companies, partnerships, or joint ventures. All such entities are companies, but not all companies are corporations.

**A.      Companies Like Fabric Are Legal Fictions With No Personal Desires of Their Own.**

The Supreme Court of the United States has defined a corporation as "an artificial being, invisible, intangible, and existing only in contemplation of law." *Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 636 (1819). "[B]eing a purely metaphysical creature, having no mind

SUPP. BRIEF ON CORPORATE LAW - 4
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

with which to think, no will with which to determine and no voice with which to speak, [a corporation] must depend upon the faculties of natural persons to determine for it its policies and direct the agencies through which they are to be effectuated." *N. Assur. Co. v. Rachlin Clothes Shop*, 125 A. 184, 188 (Del. 1924). A corporation cannot prefer one investment to another. A corporation cannot give instructions.

### B. Companies Are Governed by Bylaws that Divide Authority Between Shareholders, Directors, and Officers.

As the Supreme Court has established, "artificial entities such as corporations may act only through their agents." *Mallinckrodt Chem. Works v. State of Mo. ex rel Jones*, 238 U.S. 41, 56 (1915). Only human beings, acting on behalf of a corporate entity, can perform such actions. And the Delaware General Corporation Law (DGCL) outlines which persons within the corporate structure—shareholders, directors, officers, or their appointed agents—may act, and with what authority.

The DGCL provides a broad framework within which a corporation, at the direction of the board, determines how to conduct its business. 8 Del. C. §§ 101-116. "A cardinal precept of the General Corporation Law of the State of Delaware is that directors . . . manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *see* 8 Del. C. § 141(a). More importantly, the DGCL establishes and defines the tripartite relationship between shareholders, directors, and officers within that power structure. These are the three categories of natural persons given the power and authority under the law to act on behalf of a corporation—each in a different way. Understanding how these three distinct groups relate to one another in the corporate structure is critical to resolving aspects of the pending motions.

The DGCL mandates that the board of directors adopt bylaws. *Id.* § 109(a). Along with the corporation's certificate of incorporation and the overarching framework of the DGCL, the bylaws specify how the power structure of a corporation will operate. *Id.* § 109(b). Under the bylaws, the

SUPP. BRIEF ON CORPORATE LAW - 5
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

board may appoint various officers, such as a Chief Executive Officer or Chief Financial Officer, to run the day-to-day operations of the business. The board also may adopt additional policies that expand or limit officer authority to act on behalf of the corporation.

### C. Boards Confer or Restrict Power and Authority <u>Only</u> Through Official Acts.

Article IV, § 4.7 of Fabric's bylaws provides that "the officers of the Company shall have such powers and duties in the management of the Company as may be designated from time to time by the Board and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board." The Board designates such duties to officers through official actions.

The DGCL, Chapter 8, § 141(a) states that "[t]he business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors." A board is allowed to take action by either (1) a resolution adopted by vote at a meeting (*Id.* § 141(b)), or (2) in absence of a meeting, through unanimous action by written consent. *Id.* § 141(f). Committees adhere to the same rules. *Id.* § 141(c)(4), (f); *see Applied Energetics, Inc. v. Farley*, 239 A.3d 409, 425 (Del. Ch. 2020). Fabric's bylaws accord with these statutory provisions. *See* Fabric's bylaws Art. II § 2.1, 2.9, 2.10. Further, the implication of the DGCL, Chapter 8, § 141(a) is that the board must act <u>collectively</u> for their decisions to be binding.

In *Farley*, the Delaware Court of Chancery held that for an action taken on behalf of a corporation to be valid, there must exist both the power to take the action and the authorization to do so. 239 A.3d at 413. The court explained that "*corporate power* refers to the ability of the corporation as an entity to engage in a particular act, no matter what steps may be necessary to properly authorize that act." *Id*. (emphasis added). And "*authorization* refers to whether the appropriate combination of intra-corporate actors—viz., the officers, board of directors, or stockholders—took the proper steps to authorize the entity to exercise corporate power in

SUPP. BRIEF ON CORPORATE LAW - 6
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

compliance with the requirements of the DGCL and the corporation's constitutive documents." *Id.* (emphasis added).

Here, before Fabric adopted the investment policy, Shetty enjoyed the powers that generally pertain to Chief Financial Officers. While the government alleges that the board had expressed dissatisfaction with Shetty's job performance, there is no allegation (because it is not true) that the board restricted his access to accounts or his authority to bind Fabric to investments before passing the Investment Policy. This past course of action (or inaction) further confirms that Shetty had the power to bind Fabric through investments he made on its behalf. *See Hessler, Inc. v. Farrell*, 226 A.2d 708 (Del. 1967) (a board's past conduct implies authority for an officer to bind the corporation, as corporate action must be authorized by the board or its delegated officer).

Under the Investment Policy, which was passed by resolution and therefore capable of limiting or expanding Shetty's power, Shetty was expressly "authorized to execute transactions and perform day to day management of investments." (Dkt. 41-4 at 2.) Adoption of the policy granted Shetty the power to make investments; the policy itself granted him the authority. (Dkt. 62-1 at 2; Dkt. 41-4 at 2.)

The resolution adopting the Investment Policy stated that "the officers of the Company are authorized and empowered to take any and all such further action … as any such officer may deem necessary or advisable to effectuate the purposes and intent" of the policy. (Dkt. 62-1 at 1.) The resolution added that "the taking of such actions … by any such officer [is] conclusive evidence of his or her authorization hereunder and the approval thereof." (*Id.*) In other words, Fabric's board explicitly authorized officers like Shetty to make investments contrary to the letter of the Investment Policy, so long as the officer deemed such actions "advisable to effectuate the purposes and intent" of the policy. (*Id.*)

SUPP. BRIEF ON CORPORATE LAW - 7
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### D. Unofficial Acts <u>Cannot</u> Negate Official Actions.

The government alleges that Shetty's investment in HighTower was "a risk [Fabric] did not want to take." (Dkt. 46 at 5.) And that Shetty received "other instructions" from unnamed sources at Fabric indicating the same. (Dkt. 59 at 2.) The government's fraud theory relies on these allegations, but they are legally irrelevant to the extent they differ from what is expressed in the Investment Policy or from any other official act of Fabric's board.

The government's use of vague language about Fabric's desires fails to make a legally valid point. As discussed above, "Fabric" is a corporate form and therefore lacks capacity to have feelings about risk. If the board had designated someone to oversee the CFO and to guide risk assessment, perhaps that person might be able to make binding pronouncements about Fabric's investment desires. But the government has never claimed anyone at Fabric had such power (because no one did).

And the government's allegation that Shetty received "instructions" outside of the Investment Policy fails for the same reason. Only the board's official actions grant the power and authority for an officer to act. And only official actions can limit the power an officer has been granted. Additional instructions from an unnamed person—even if that person were a director or other officer, such as the CEO—do not constitute binding instructions to Shetty as CFO. His power is limited by official actions taken by the board.

Fabric's Investment Policy was adopted and directors had the opportunity to discuss, question, and weigh options before resolving to accept the proposal. As established, the policy was adopted in an official board action, making it binding. The board's later dissatisfaction with the consequences of their past decision does not negate the fact that the board officially (1) approved and adopted the Investment Policy Statement; which (2) included a list of "approved investment instruments" that was not exhaustive; and (3) provided an exception for officers to make investments that "fall[] outside of this investment policy but may present financial merits for the

SUPP. BRIEF ON CORPORATE LAW - 8
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Company." *See* Investment Policy Statement, (Dkt. 41-4 at 3.) Furthermore, the board's resolution adopting the Investment Policy authorized officers to make investments contrary to the policy so long as the officer deemed such actions "advisable to effectuate the purposes and intent" of the policy. (Dkt. 62-1 at 1.) The fact that the board adopted a policy that was not particularly specific, and which failed to account for certain possible outcomes, does not transform an officer who acted on the power and authority the board granted into a criminal.

To be sure, the government claims that Shetty violated the investment policy. But Shetty has explained in other pleadings (1) why the HighTower investment complied with the investment policy and (2) why violating the investment policy does not establish a criminal act. *See, e.g.,* Dkt 41 at 5-6; Dkt 49 at 3-6. The government cannot avoid those problems by pointing to vague references about what Fabric "wanted" or "instructions" Shetty was supposedly given from some unnamed person. These things are not binding on Shetty and have no bearing on this case.

## CONCLUSION

For the reasons stated above, in resolving the pending motions, this Court should account for the foundational principles of corporate law that the government persistently ignores—all of which undermine the legal sufficiency of the allegations in the indictment and the government's arguments in its subsequent pleadings.

DATED this 16th day of August, 2024.  I certify that this pleading contains 2,750 words, in compliance with the Local Criminal Rules.

CORR CRONIN LLP

*s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith, WSBA No. 30954
1015 Second Avenue, Floor 10
Seattle, Washington  98104-1001
Ph: (206) 625-8600 | Fax: (206) 625-0900
jcoopersmith@corrcronin.com

SUPP. BRIEF ON CORPORATE LAW - 9
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

|   |   |
|---|---|
| 1 |   |
| 2 | J. Alex Little, admitted *pro hac vice* |
| 3 | Zachary C. Lawson, admitted *pro hac vice*<br>6339 Charlotte Pike, Unit #C321 |
| 4 | Nashville, TN 37209<br>alex@litson.co |
| 5 | zack@litson.co |
| 6 | *Attorneys for Defendant* |

SUPP. BRIEF ON CORPORATE LAW - 10
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900