UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br>NEVIN SHETTY,<br><br>　　　　　　　　Defendant. | CASE NO. 2:23-cr-00084-TL<br><br>ORDER ON MOTION TO COMPEL *BRADY* MATERIAL |

This matter is before the Court on Defendant Nevin Shetty's Motion to Compel *Brady* Material. Dkt. No. 73. Having considered the Government's response (Dkt. No. 75), Mr. Shetty's reply (Dkt. No. 78), Mr. Shetty's supplemental brief (Dkt. No. 92) and the Government's response to the same (Dkt. No. 94), and the relevant record, the Court GRANTS Mr. Shetty's motion.

## I. BACKGROUND

The Court assumes familiarity with the facts of this case. Relevant to this motion, in May 2023, Mr. Shetty was indicted for wire fraud. *See* Dkt. No. 1. This charge was the result of a

2022 transfer of $35 million of his employer's funds into a decentralized finance platform at HighTower Treasury ("HighTower"), a company co-owned by Mr. Shetty. *See id.* ¶¶ 12, 14. From there, Mr. Shetty invested the $35 million into a cryptocurrency called TerraUSD ("UST"). *Id.* ¶ 17. In May 2022, shortly after the HighTower investment into UST, the Terra ecosystem collapsed, resulting in UST—and, consequently, Mr. Shetty's HighTower investment—losing nearly all its value. *Id.* ¶ 23.

Do Kwon was the co-founder and CEO of Terraform Labs, the company that launched UST. Dkt. No. 73 at 3. In June 2022, following the UST collapse, the U.S. Securities and Exchange Commission ("SEC") began an investigation of Kwon and Terraform Labs, eventually charging both with securities fraud related to the UST crash. *Id.* In March 2023, the U.S. Attorney's Office ("USAO") for the Southern District of New York ("SDNY") also indicted Kwon on a number of charges, including wire fraud. *Id.* at 4.

In the SDNY indictment, the government alleged that Kwon "engaged in a scheme to defraud individuals selling digital commodities for cryptocurrencies issued by TFL, including LUNA and UST, by using market manipulation and false statements to deceive those individuals about the effectiveness and sustainability of the algorithmic mechanism that purportedly ensured the stability of UST's price." *Id.* at 4 (quoting *United States v. Do Kwon*, No. CR23-151, Dkt. No. 1 at 4 (S.D.N.Y. Mar. 23, 2023)). The indictment makes a number of allegations about the false statements that Kwon allegedly made regarding the relative stability of UST's value. *Id.*

In April 2024, Mr. Shetty made an "oral *Brady* demand" to the Government "related to evidence from the DOJ investigation and prosecution of Kwon that could exculpate Mr. Shetty." *Id.* at 5. In July 2024, Mr. Shetty memorialized that demand in a letter to the Government, requesting:

> [A]ll evidence (1) tending to suggest that Do Kwon took steps to mislead investors and the public about the safety, security, and stability of the UST cryptocurrency, including the ability of Terra's algorithms to maintain a stable peg with the U.S. dollar; and (2) tending to suggest that the collapse of UST was directly caused by the actions of Mr. Kwon and his co-conspirators.

*Id.* at 6 (quoting Dkt. No. 73-1 at 2). The Government refused to make any productions in response to Mr. Shetty's letter. *Id.* at 6–7.

Mr. Shetty brought the instant motion on July 25, 2024. *See* Dkt. No. 73.

## II. LEGAL STANDARD

As a general rule, defendants in criminal cases have no constitutional right to discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, under *Brady v. Maryland* and its progeny, "the government must disclose information favorable to the accused that 'is material either to guilt or to punishment.'" *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1969)). There are three elements to a *Brady* claim: (1) the evidence must be favorable to the defendant, (2) the evidence must be material to either guilt or punishment, and (3) the evidence must be within the government's possession. *See Lucas*, 841 F.3d at 807; *United States v. Lacey*, No. CR18-422, 2020 WL 3488615, at *1–2 (D. Ariz. June 26, 2020).

### A. Favorability

"Favorable evidence is 'any evidence' that 'tend[s] to call the government's case into doubt[,]' including 'both exculpatory and impeachment material that is relevant to either guilt or punishment.'" *Lacey*, 2020 WL 3488615, at *1 (quoting *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013)). "The prosecution must disclose materials that are *potentially* exculpatory or impeaching." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (emphasis in original) (citing *Schad v. Ryan*, 671 F.3d 708, 715 (9th Cir. 2011)).

B.  **Materiality**

The vast majority of cases under *Brady* arise after conviction, where the test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Cano*, 934 F.3d 1002, 1022 (9th Cir. 2019) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also United States v. Alahmedalabdaloklah*, 94 F.4th 782, 828 (9th Cir. 2024). However, as the Ninth Circuit has noted, "[t]his necessarily is a retrospective test, evaluating the strength of the evidence after trial has concluded." *Olsen*, 704 F.3d at 1183.

In *Olsen*, the Ninth Circuit acknowledged that "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence, however, should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *Id.* at 1183 n.3. And in *United States v. Price*, the Ninth Circuit similarly commented on the issue of pre-trial determinations of materiality, saying that it "note[d] favorably the thoughtful analysis set forth by two district courts in this circuit" which declined to apply the "'materiality' standard usually associated with *Brady* . . . to pretrial discovery of exculpatory materials." 566 F.3d 900, 913 n.14 (9th Cir. 2009) (quoting *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239 (D. Nev. 2005)). Instead, those district courts held:

> [T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made. . . . [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.

*Id.* (quoting *Acosta*, 357 F. Supp. 2d at 1239–40 (citing *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999))). "Effectually, this means producing any evidence that will 'assist [defendants] in formulating a defense.'" *Lacey*, 2020 WL 3488615, at *4 (cleaned up) (quoting *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016)).

These determinations do not quite align with prior Ninth Circuit jurisprudence, which had previously held that where, as here, a specific request for evidence is made prior to trial, "the test for materiality is whether the requested evidence *might* affect the outcome of the trial." *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (emphasis added) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1975)); *see also United States v. Alvarez*, 358 F.3d 1194, 1211–12 (9th Cir. 2004); *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998). This "reflect[s] a tension inherent in applying *Brady*'s materiality standard—a backwards looking standard that contemplates a post-trial judicial decision—to a pretrial prosecutorial judgment," and resulted in inconsistent application of the materiality standard for *Brady* claims in the pre-trial context. *Lacey*, 2020 WL 3488615, at *4 (citing *Agurs*, 427 U.S. at 108).[1] In sum, while it is certainly clear that "[t]he Ninth Circuit has urged prosecutors to consider *Sudikoff*'s analysis when assessing what materials to disclose prior to trial," "[i]t is not clear . . . that this approval established a new standard of materiality for pretrial discovery." *United States v. Mendez*, No. CR21-95, 2023 WL 5103906, at *2 n.3 (E.D. Cal. Aug. 9, 2023) (first citing *Price*, 566 F.3d

---

[1] *Compare United States v. Heine*, 314 F.R.D. 498, 504 (D. Or. 2016) ("The Ninth Circuit instructs that 'in a case like this, in which the defendant requests specific evidence under *Brady*, he must show that it is material. The test for materiality is whether the requested evidence might affect the outcome of the trial.'" (quoting *Alvarez*, 358 F.3d at 211)), *and Acosta*, 357 F. Supp. 2d at 1243 ("The Supreme Court and Ninth Circuit have held prosecutors must turn over material exculpatory evidence in pretrial discovery, not all exculpatory evidence however insignificant."), *with Sudikoff*, 36 F. Supp. 2d at 1199–200 ("Because the definitions of materiality as applied to appellate review are not appropriate in the pretrial discovery context, the Court relies on the plain meaning of 'evidence favorable to an accused' as discussed in *Brady*."), *and Acosta*, 357 F. Supp. 2d at 1239–40 ("*Brady's* materiality standard for due process violations in a post-trial context should not be used to sanction any and all conduct that does not rise to a constitutional violation of defendant's due process rights because the United States Attorney is held to a higher standard.").

ORDER ON MOTION TO COMPEL BRADY MATERIAL - 5

at 913 n.13; and then citing *United States v. Lischewski*, No. CR18-203, 2019 WL 2211328, at *2 (N.D. Cal. May 22, 2019)).

However, in a recent ruling discussing the materiality standard "applicable to withheld evidence discovered before or during trial," the Ninth Circuit described *Price* as having "established a baseline for evaluating *Brady* violations discovered before conviction," holding more firmly that "the materiality standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials." *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024) (quoting *Price*, 566 F.3d at 913 n.14).

The Court notes that the Ninth Circuit has also held that "[i]t is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material and must be disclosed under *Brady*." *Lucas*, 841 F.3d at 807 (emphasis in original). "And, as the Supreme Court has explained, *Brady* does not permit a defendant to sift through information held by the government to determine materiality." *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987)). Therefore, on a motion to compel *Brady* material, "it is clear that a defendant must do more than provide mere speculation that *Brady* material exists." *Lischewski*, 2019 WL 2211328, at *2 (citing *Lucas*, 841 F.3d at 808).

Considering the Ninth Circuit's most recent decision on this issue in *Cloud*, this Court understands the weight of jurisprudence in this area to require that "the government must disclose upon request all favorable evidence that is likely to lead to favorable evidence that would be admissible." *Sudikoff*, 36 F. Supp. 2d at 1200. "[W]here doubt exists as to the usefulness of evidence, [the government] should resolve such doubts in favor of full disclosure." *United States v. Van Brandy*, 726 F.2d 548, 552 (9th Cir. 1984). No further determination of whether that evidence is or might be "material" is required.

C.  **Possession**

Finally, "*Brady* does not oblige the government 'to produce information which it does not possess or of which it is unaware.'" *Lacey*, 2020 WL 3488615, at *2 (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)). But a "prosecutor's personal knowledge does not define the limits of constitutional liability" under *Brady*. *Browning v. Baker*, 875 F.3d 444, 460 (9th Cir. 2017). To the contrary, "*Brady* imposes a duty on prosecutors to learn of material exculpatory and impeachment evidence in the possession of state agents, such as police officers." *Id.* A prosecutor's obligation under *Brady* does not stop at the border of their district: "If a federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady* and its progeny that is outside the district, then the prosecutor must disclose it to the defense." *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989); *see also United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995) (holding that government had "possession and control" over Bureau of Prisons files for purposes of *Brady* disclosure).

### III.  DISCUSSION

Mr. Shetty seeks to compel the Government to produce evidence in the possession of the SDNY USAO related to two categories: (1) evidence tending to suggest that Do Kwon took steps to mislead investors and the public about the safety, security, and stability of the UST cryptocurrency, including the ability of Terra's algorithms to maintain a stable peg with the U.S. dollar; and (2) evidence tending to suggest that the collapse of UST was directly caused by the actions of Mr. Kwon and his co-conspirators. *See* Dkt. No. 73 at 6 (quoting Dkt. No. 73-1 at 2).

A.  **Favorability of the Requested Evidence**

    1.  **Evidence Suggesting Kwon Misled Investors**

Mr. Shetty argues that his requested evidence is favorable because it will corroborate his argument that he believed that the HighTower investment into UST was conservative, which will

defend against the Government's allegations that Mr. Shetty placed Fabric's money into a high-risk investment. *See* Dkt. No. 73 at 7–8. Mr. Shetty contends that materials and communications supporting the Department of Justice's ("DOJ") allegations that Kwon "mislead investors . . . into believing that TerraLuna was a stable, conservative investment and would remain pegged to the dollar" will corroborate his own testimony and support his argument at trial. *Id.* at 8.

The Government argues that evidence supporting Mr. Shetty's good faith belief that UST was a conservative investment would not be exculpatory, because "[e]ven if [Mr. Shetty] personally believed the investments were safe, and even if he believed this conclusion because of Kwon's misrepresentations, [he] is still guilty of wire fraud." Dkt. No. 75 at 8. But the Government must prove at trial that Mr. Shetty "*knowingly* devised a scheme to or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses," and that he "acted with the intent to defraud." Ninth Cir. Mod. J. Instr. 15.35 (2024). As the Government admits, if Mr. Shetty "testifies at trial and claims that he believed his investments were conservative and safe, he can describe statements by Kwon or other market information that informed his purported view" (Dkt. No. 75 at 9)—and the information that Mr. Shetty seeks is related to and could possibly corroborate such testimony.

While the Government argues that such a connection is "far too nebulous" to support a *Brady* claim (*id.*), "where doubt exists as to the usefulness of evidence, [the government] should resolve such doubts in favor of full disclosure." *Sudikoff*, 36 F. Supp. at 1202 (quoting *Van Brandy*, 726 F.2d at 552). Evidence about the actions that Kwon may have taken in order to mislead investors—including Mr. Shetty—into believing that UST was a stable and safe investment is clearly favorable to Mr. Shetty's potential argument that, for example, he believed that the HighTower investment was compatible with Fabric's board of directors' intention to invest the company's cash conservatively. *See* Dkt. No. 75 at 2 (explaining that the government

will prove the allegations against Mr. Shetty in part by having members of Fabric's board of directors testify that an investment in cryptocurrency was incompatible with their intentions for how Fabric's cash should be invested). This is clearly favorable to, and potentially exculpatory regarding, at a minimum, the intent element of wire fraud. While the Government may disagree with Mr. Shetty about the potential success of this argument, it should resolve any doubt in favor of disclosure to Mr. Shetty.

### 2. Evidence Suggesting Kwon's Actions Caused UST's Collapse

Mr. Shetty also requests the production of "all . . . evidence tending to suggest that the collapse of UST was directly caused by the actions of Mr. Kwon and his co-conspirators," arguing that this evidence is relevant "because it shows that the reasons for the crash were not foreseeable to Shetty or other prudent investors—they were intentionally concealed from them." Dkt. No. 73 at 8.

Mr. Shetty's argument that this evidence has value as corroborative of Mr. Shetty's "good-faith belief that the HighTower investment was safe and conservative" (Dkt. No. 73 at 8) is unpersuasive. The specific facts surrounding the cause of the UST crash, which occurred *after* Mr. Shetty transferred and invested Fabric's funds, have no bearing on Mr. Shetty's belief in the investment's safety and conservativeness *at the time* that he made the transfer and investment. However, this evidence will be relevant to sentencing and thus falls within the scope of the Government's obligations under *Brady*. As Mr. Shetty points out, "'actual loss' for purposes of sentencing means 'the reasonably foreseeable pecuniary harm that resulted from the offense.'" Dkt. No. 73 at 8 (quoting U.S.S.G. § 2B1.1 cmt. n.3(A)(i)). Thus, whether Kwon directly caused the collapse of UST will bear favorably on whether the loss of the $35 million HighTower investment was foreseeable.

The Government argues that Mr. Shetty's "concerns about sentencing are not a sound basis to grant his motion to compel." Dkt. No. 75 at 10. But the Government cites to no support for this proposition, and the Court can find none. Favorable evidence under *Brady* includes evidence "that is relevant to either guilt *or punishment*." *Lacey*, 2020 WL 3488615, at *1 (emphasis added). Thus, evidence "tending to suggest that the collapse of UST was directly caused by the actions of Mr. Kwon and his co-conspirators" is favorable under *Brady*.

B.  **Whether the Government Possesses the Requested Evidence**

Next, the Court must determine whether the Government is in possession of Mr. Shetty's requested evidence, which is in the possession of the SDNY USAO. Dkt. No. 73 at 9. The Government argues that "*Brady* does not require the prosecutors here to scour the records of another U.S. Attorney's Office." Dkt. No. 75 at 7. Here, the Court determines that the Government has knowledge of and access to files in the related Kwon investigation and prosecution in SDNY.

First, Mr. Shetty has asked for targeted information from a specific case file in another U.S. Attorney's office. Second, while the Government correctly notes that the geographical scope of *Brady* is not unlimited, information is in the prosecutor's "possession" under *Brady* if "it is held by other executive branch agencies and the prosecutor has 'knowledge of and access to' the evidence." *Alahmedalabdaloklah*, 94 F.4th at 844 (quoting *Bryan*, 868 F.2d at 1036). While the Government claims that it lacks access to Mr. Shetty's requested documents, courts have repeatedly held that federal prosecutors have access to materials held by other branches of the DOJ, leading the Court to conclude that federal prosecutors would certainly have access to materials held by other offices of their same agency. *See Santiago*, 46 F.3d at 894 ("As a general matter, the fact that the Bureau of Prisons and the United States Attorney's Offices are both branches of the [DOJ] would facilitate access by federal prosecutors to prison files."); *United*

ORDER ON MOTION TO COMPEL BRADY MATERIAL - 10

States v. Thompson, No. CR19-159, 2022 WL 861041, at *1 (W.D. Wash. Mar. 23, 2022) (noting in the context of a *Brady* order that the government provided discovery to the defense that had originally been in the possession of DOJ in Washington, D.C. ("Main Justice"), and had confirmed with both Main Justice and the SDNY USAO that no additional relevant materials existed); *see also United States v. Stone*, No. CR12-72, 2013 WL 4541513, at *2 (E.D. Cal. Aug. 27, 2013) ("Federal prosecutors, through the [DOJ], have 'possession, custody or control' over BOP files."); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1090 (D. Mont. 2005) ("The government's obligations under *Brady* cover a broad range of federal agencies and fulfilling its constitutional obligations may prove burdensome to the prosecution. . . . The Constitution does not go too far in defense of due process when it requires that the prosecution's search for evidence favorable to the accused be as far-reaching as the search for evidence against him.").

Further, although the SDNY office was not involved in the investigation of Mr. Shetty, this does not defeat possession; courts may determine that the government has "'knowledge and access' of materials held by separate governmental divisions with no responsibility for the investigation or prosecution of the crime in question." *Lacey*, 2020 WL 3488615, at *7 ("An agency's participation in an investigation is sufficient, but not necessary, to establish that the Government has access [to] the agency's information.").

C.     **Relief**

In fashioning the relief to be granted relating to a pretrial *Brady* motion, the Court keeps in mind that the Government has a self-executing duty to disclose *Brady* material. *Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001) ("[T]he prosecution has a constitutional obligation to disclose exculpatory evidence . . . . This obligation extends . . . to evidence that was not requested by the defense . . . ."). Further, it is well established that "[i]t is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material

and must be disclosed under *Brady*." *Lucas*, 841 F.3d at 807 (emphasis in original). Finally, while the Court will order the Government to disclose information consistent with this Order, the Court cautions that this does not necessarily mean that any of the information produced will be admissible at trial. Should the admissibility of any of the information be disputed, the Parties shall file a motion *in limine* in accordance with the Court's Standing Order for All Criminal Cases, Section I.E (last updated Nov. 1, 2024).

### IV. CONCLUSION

Accordingly, Mr. Shetty's Motion to Compel *Brady* Material (Dkt. No. 73) is GRANTED. The Government is ORDERED to review files in the related Kwon investigation and prosecution in the Southern District of New York and produce to Mr. Shetty, **within thirty (30) days of this Order**, any evidence that is (1) responsive to either of his two discovery requests and (2) favorable to Mr. Shetty, in accordance with the Court's analysis above.

Dated this 4th day of December 2024.

Tana Lin
United States District Judge