UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br>   v.<br><br>NEVIN SHETTY,<br><br>                    Defendant. | CASE NO. 2:23-cr-00084-TL<br><br>ORDER ON MOTION TO EXCLUDE<br>EXPERT WITNESS TESTIMONY |

This matter is before the Court on the Government's Motion to Exclude Expert Witness Testimony. Dkt. No. 58. Having considered Defendant Nevin Shetty's Response (Dkt. No. 60), the Government's Reply (Dkt. No. 63), Mr. Shetty's Supplemental Brief (Dkt. No. 92) and the Government's Response to the same (Dkt. No. 94), and the relevant record, the Court GRANTS IN PART, DENIES IN PART, and RESERVES IN PART the Government's motion.

## I.    BACKGROUND

The Court assumes familiarity with the facts of the case. Relevant to this motion, on May 27, 2024, the Parties exchanged expert witness disclosures under Federal Rule of Criminal

Procedure 16. *See* Dkt. No. 51 (order setting deadline for expert witness disclosures). Mr. Shetty disclosed six witnesses from which he intends to elicit expert testimony at trial—three of whom will provide testimony regarding cryptocurrency (Michael Perklin, Jonathan Joseph, and Omid Malekan), two of whom will provide testimony regarding corporate structure and Fabric's investment policy (Stuart Weichsel and Richard Painter), and one who will provide testimony regarding the financial markets and investments more generally (James Angel). *See generally* Dkt. Nos. 58-1, 58-2, 58-3, 58-4, 58-5, 58-6 (expert disclosures).

On June 25, 2024, the Government filed the instant motion, which seeks to exclude portions of each of Mr. Shetty's proposed expert's testimony. Dkt. No. 58 at 1.

## II.    LEGAL STANDARD

### A.    Expert Witness Testimony

Federal Rule of Evidence ("FRE") 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This imposes an obligation on the court to act as a gatekeeper and evaluate the admissibility of expert opinion testimony by ensuring that such evidence is both relevant and reliable. *See United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert I*"), 509 U.S. 579, 589 (1993)); *see also United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014) (citing *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)).

"The proponent of expert testimony 'has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.'" *United States v.*

*Nelson*, 533 F. Supp. 3d 779, 789 (N.D. Cal. 2021) (quoting Fed. R. Evid. 702 advisory

committee's note to 2000 amendment). In evaluating proffered expert testimony, the trial court is

"a gatekeeper, not a fact finder." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645,

654 (9th Cir. 2006)). "Shaky but admissible evidence is to be attacked by cross examination,

contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (quoting *Primiano v.

Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

### 1.    Sufficient Factual Basis

Rule 702(b) requires that an expert opinion be "based on sufficient facts and data." The

advisory committee note to the Rule explains:

> Subpart [b] of Rule 702 calls for a quantitative rather than
> qualitative analysis. The amendment requires that expert testimony
> be based on sufficient underlying "facts or data." The term "data"
> is intended to encompass the reliable opinions of other experts.
> The language "facts or data" is broad enough to allow an expert to
> rely on hypothetical facts that are supported by the evidence.
>
> When facts are in dispute, experts sometimes reach different
> conclusions based on competing versions of the facts. The
> emphasis in the amendment on "sufficient facts or data" is not
> intended to authorize a trial court to exclude an expert's testimony
> on the ground that the court believes one version of the facts and
> not the other.

Fed. R. Evid. 702 advisory committee's notes to 2000 amendment (internal citations omitted).

This element therefore "requires foundation, not corroboration"—"[i]t is not the court's role 'to

determine whether an expert's hypothesis is correct, or to evaluate whether it is corroborated by

other evidence on the record.'" *Thomsen v. NaphCare, Inc.*, No. C19-969, 2023 WL 8701971, at

*2 (D. Or. Dec. 15, 2023) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir.

2022)). "[T]he question is whether the expert considered enough information to make the

proffered opinion reliable." 29 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.

Evid. § 6268 (2d ed. 2017). "Although '[a] court may conclude that there is simply too great an

analytical gap between the data and the opinion proffered,' Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026 (internal citation omitted) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Rule 703 correspondingly states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

### 2.    Legal Conclusion

"Expert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.'" *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (quoting Fed. R. Evid. 702). Accordingly, "an expert cannot testify to a matter of law amounting to a legal conclusion" pursuant to Rule 702(a). *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015).

### B.    Exclusion of Relevant Evidence

Expert testimony must also be relevant in order to be admissible. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Primiano*, 598 F.3d at 565.

Under FRE 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Local Criminal Rule ("CrR") 26(c) also dictates that "[e]xcept as otherwise ordered by the court, a party shall not be permitted to call more than one expert witness on any subject." *See also Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115, 2019 WL 13241680, at *1 (W.D. Wash. Feb. 20, 2019) (instructing that once one expert "has testified on

any subject, that subject may not be covered again by the subsequent expert" pursuant to LCR 43(j), the identical civil rule).

### III.    DISCUSSION

**A.    Duplicative Expert Testimony**

As an initial matter, the Court addresses the Government's argument that "much of the defense's proposed expert testimony is overlapping and redundant." Dkt. No. 58 at 3. Mr. Shetty does not address this argument in his Response. *See generally* Dkt. No. 60.

The Court notes that many of the topics identified by Mr. Shetty in his expert disclosures overlap; for example, both Joseph and Malekan are expected to provide testimony regarding "[b]ackground on TerraLuna, Anchor, and UST." *Compare* Dkt. No. 58-2 at 2, *with* Dkt. No. 58-3 at 2. And both Weichsel and Painter are expected to provide testimony regarding "[h]ow corporations are structured and Fabric's corporate structure." *Compare* Dkt. No. 58-4 at 2, *with* Dkt. No. 58-5 at 2. Indeed, Mr. Shetty's disclosures describe each of these topics identically, with no distinction between the disclosures so as to identify which unique aspects of these topics each expert will testify on. This is impermissible under the Rules. *See* CrR 26(c); Fed. R. Evid. 403.

However, the Government has not sought wholesale of exclusion of any expert on these grounds, and the Court declines to do so at this stage of the proceedings. Therefore, the Court instructs Mr. Shetty that once any expert has testified on any subject, that subject may not be covered again by any subsequent expert. The Government may object to expert testimony it believes is overly cumulative or duplicative and, while the Court will exercise discretion, the Court may excuse the expert if the objection is well-taken.

**B.      Expert Testimony Regarding Cryptocurrency**

Mr. Shetty designated three experts to testify regarding cryptocurrency. Michael Perklin is designated to testify regarding two general topics, cryptocurrency and blockchain technology, as well as the security measures, transparency, and regulatory framework surrounding cryptocurrency. *See* Dkt. No. 58-1 at 2–3. Perklin is also designated as a potential rebuttal witness to the Government's testimony about "any aspect of cryptocurrency and blockchain technology." *Id.* at 3. Jonathan Joseph is also designated to testify regarding two general topics: background on TerraLuna, Anchor, and UST; and TerraLuna as a stablecoin and the UST market crash. *See* Dkt. No. 58-2 at 2–3. Joseph is also designated as a potential rebuttal witness to the Government's testimony about "any aspect of TerraLuna, Anchor, and UST." *Id.* at 3. Finally, Omid Malekan is designated to testify regarding the same two topics as Joseph: background on TerraLuna, Anchor, and UST; and TerraLuna as a stablecoin and the UST market crash. *See* Dkt. No. 58-3 at 2–3. Like Perklin, Malekan is designated as a potential rebuttal witness to the Government's testimony about "any aspect of cryptocurrency and blockchain technology." *Id.* at 3.

The Government's challenges to each of these experts' testimony can be categorized into four buckets: (1) challenges to "sweeping statements that lack any apparent foundation"; (2) challenges to testimony about personal experiences as improper expert testimony; (3) challenges to "highly disputed conclusory statements" made without sufficient support; and (4) challenges to testimony about events that came after the period at issue in this case as irrelevant and prejudicial. Dkt. No. 58 at 4.

**1.      Challenges to "Sweeping Statements"**

First, the Government challenges a variety of statements by each expert that it describes as "broad-sweeping conclusions" as having an insufficient foundation. Dkt. No. 58 at 4.

The Government argues that Mr. Shetty's expert disclosures "do[] not explain how the witness[es] arrived at such blanket opinions in a manner countenanced by Rule 702." Dkt. No. 58 at 5. For example, the Government points to statements "about the totality of 'mankind's history,' 'all of humanity,' and inherent qualities of 'all technology'" as missing "particularized support so that the Court can analyze their trustworthiness." *Id.* The experts' backgrounds do not form a sufficiently reliable basis for these opinions, in the Government's view. *Id.*

"Experts must base their opinions on specific facts." *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1267 (D. Ariz. 2020) (citing *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001)); *see also Nelson*, 533 F. Supp. 3d at 788 ("Rule 703 further identifies the permissible 'bases' of an expert's opinion testimony, which must be premised on 'facts or data in the case that the expert has been made aware of or personally observed.'"). "Nothing in either *Daubert* or the Federal Rules of Evidence requires the district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Avery v. City of Seattle*, No. C22-560, 2024 WL 2959541, at *6 (W.D. Wash. June 12, 2024) (quoting *Domingo v. T.K*, 289 F.3d 600, 607 (9th Cir. 2002)); *see also United States v. Cloud*, 576 F. Supp. 3d 827, 838 (E.D. Wash. 2021). But the court's role is to "screen the jury from unreliable nonsense opinions, [] not exclude opinions merely because they are impeachable." *Nelson*, 533 F. Supp. 3d at 788 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

Perklin, Joseph, and Malekan base their expert opinions on their extensive backgrounds and personal experience with cryptocurrency, which the Government does not challenge as unreliable or insufficient. *See generally* Dkt. No. 58-1 at 12–15 (Perklin); Dkt. No. 58-2 at 9–10 (Joseph); Dkt. No. 58-3 at 11–12 (Malekan). Further, their personal experiences and observations are the type of experience reasonably relied on by other technology and cryptocurrency experts

in understanding how people judge and make investments into cryptocurrency. However, some of the statements which they offer appear to fall outside of their expertise such that it would be inappropriate for expert testimony or should be excluded on other grounds. The Court addresses each statement below:

| Perklin | |
|---|---|
| "Humans are naturally fearful of new things." Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 7). | Perklin's background and expertise in information science and cryptocurrency do not provide a basis for testimony regarding whether or not humans are naturally fearful, and Perklin offers no support or explanation in his report for this opinion. This opinion will therefore be excluded as unreliable, and the Government's motion as to this statement is GRANTED. |
| "[A]ll technology is inherently neutral, and it is the person that uses the technology who chooses to use it honorably or criminally." Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 7). | Perklin's background and expertise in information science and cryptocurrency do give him a basis for testimony regarding financial technology. However, the Court is uncertain whether his background and expertise give him the proper basis for opining on "all technology." Regardless, the Court finds that whether technology is inherently neutral is irrelevant to this case. Even if this information might be potentially tangentially relevant, the Court finds its probative value would be outweighed by the danger of undue prejudice under FRE 403 as the specific issue involved in this case revolves around cryptocurrency and not technology generally. The Government's motion as to this statement is GRANTED. |
| "[C]ryptocurrencies are completely neutral." Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 4). | Perklin's background and expertise in information science and cryptocurrency do give him a basis for testimony regarding the neutrality of cryptocurrency. The Government's motion as to this statement is DENIED. |
| "[C]ryptocurrency is the most traceable form of money that has ever been invented in mankind's history." Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 6). | Perklin's background and expertise in information science and cryptocurrency do give him a basis for testimony regarding cryptocurrency's traceability. However, the Court is uncertain whether his background and expertise give him the proper basis for opining on the issue of inventions "in mankind's history." Regardless, the Court finds that whether cryptocurrency is the "most traceable form of money that has ever been invented in mankind's history" is irrelevant to this case. Therefore, the Court limits Perklin's testimony to the traceability of cryptocurrency and why its traceability is significant in this case. The Government's motion as to this statement is GRANTED IN PART and DENIED IN PART. |

| | |
|---|---|
| "[T]he Government has inflated monetary supply with 'reckless abandon during recent years.'" Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 5). | Perklin's background and expertise in information science and cryptocurrency do not provide a basis for testimony regarding the government's policy on monetary supply, and Perklin offers no support or explanation in his report for this opinion. This opinion will therefore be excluded as unreliable, and the Government's motion as to this statement is GRANTED. |
| "[C]ryptocurrency is so strong that every computer on the planet working together to break the encryption of a single account would not succeed before our Sun dies, taking all of humanity with it." Dkt. No. 58 at 4 (quoting Dkt. No. 58-1 at 8). | Perklin's background and expertise in information science and cryptocurrency do give him a basis for testimony regarding cryptocurrency's strength and encryption. While the Court understands Perklin is trying to make a point about how it is essentially impossible to break the encryption of a cryptocurrency account, the Court is uncertain about the relevance of this point and reserves ruling on it at this time. However, the Court finds the phrase "taking all of humanity with it" to be irrelevant and will exclude that part of his opinion. The Court further cautions Defense Counsel regarding Perklin's inclination to use sweeping, overly dramatic characterizations that likely will run afoul of FRE 403, even if found to be tangentially relevant at trial. The Government's motion as to this statement is GRANTED IN PART, DENIED IN PART, and RESERVED IN PART. |
| **Joseph** | |
| "[I]n 2022, 'UST adoption and LUNA had reached a scale that would have led *any* passive observer to believe they were going to be successful.'" Dkt. No. 58 at 9 (quoting Dkt. No. 58-2 at 7). | Joseph's background and significant experience in cryptocurrency do give him a basis for testimony regarding whether passive observers would believe that UST and LUNA would be successful, and he may therefore testify about actual known perceptions of UST and LUNA. The Court finds this statement is relevant to the intent element of wire fraud. However, Joseph's specific statement that "any" passive observer would believe in UST and LUNA's future success is not limited to his actual known perceptions and is not relevant in this case, as it is the perception of Mr. Shetty that is at issue. Accordingly, the Government's motion is GRANTED as to the inclusion of the term "any" with this opinion. |
| **Malekan** | |
| "Putting UST into Anchor was 'to some people' 'closer to an enhanced saving account than risky crypto investment.'" Dkt. No. 58 at 10 (quoting Dkt. No. 58-3 at 5). | Malekan's background and experience in blockchain and cryptocurrency do give him a basis for testimony as to the reason putting UST into Anchor could be considered closer to an enhanced savings account than a risky crypto investment, and he may therefore testify as to his actual known perceptions of putting UST into Anchor. However, as he has only been a consultant for less than two years, the Court finds he does not have the experience to discuss the perceptions of others on this issue. Further, the |

| | perceptions of "some people" is not relevant in this case. It is the perception of Mr. Shetty that is at issue. However, even if the perception of "some people" might be tangentially relevant, the Court finds that its probative value would be outweighed by the danger of undue prejudice under FRE 403 given how amorphous the reference to "some people" is. The Government's motion as to this statement is GRANTED IN PART and DENIED IN PART. |
|---|---|
| "UST's perceived risk-return profile compared to other available investment opportunities: Those who didn't question the stability mechanism perceived it to be a dollar-linked investment with limited downside." Dkt. No. 58 at 11 (quoting Dkt. No. 58-3 at 10). | Malekan's background and experience in blockchain and cryptocurrency do give him a basis for testimony as to UST's perceived risk-return profile compared to other investment opportunities, and he may therefore testify as to his actual known perceptions of UST's perceived risk-return profile. However, as he has only been a consultant for less than two years, the Court finds he does not have the experience to discuss the perceptions of others on this issue. Further, the perceptions of "those who didn't question the stability mechanism" is not relevant in this case. It is the perception of Mr. Shetty that is at issue. Even if the perception of "those" people might be tangentially relevant, the Court finds that its probative value would be outweighed by the danger of undue prejudice under FRE 403 given how amorphous the reference to "those" people is. The Government's motion as to this statement is GRANTED IN PART and DENIED IN PART. |
| "[B]elief that TerraLuna was a stablecoin project led to many people considering UST a safe investment, at least as far as cryptocurrencies were concerned." Dkt. No. 58 at 11 (quoting Dkt. No. 58-3 at 6). | Malekan's background and experience in blockchain and cryptocurrency do give him a basis for testimony as to why Terra may have been considered a safe investment. However, as he has only been a consultant for less than two years, the Court finds he does not have the experience to discuss the perceptions of others on this issue. The Government's motion as to this statement is GRANTED IN PART and DENIED IN PART. |

The Government also argues that these statements are irrelevant, contending that "the fact that Shetty's acts involved cryptocurrency does not make any and all opinions about cryptocurrency relevant." Dkt. No. 58 at 5. As the Court noted in its Order on Mr. Shetty's Motion to Compel *Brady* Material (Dkt. No. 102 at 8), the Government must prove at trial that Mr. Shetty "*knowingly* devised a scheme to or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses," and that he "acted with the intent

to defraud." Ninth Cir. Mod. J. Instr. 15.35 (2024) (emphasis added). Thus, Mr. Shetty is entitled to make arguments—and solicit testimony from expert witnesses—as to his purported belief that the HighTower investments were conservative and safe. Mr. Shetty's proposed expert testimony is clearly relevant for this purpose.

Therefore, the Government's motion to exclude "sweeping statements" of Perklin, Joseph, and Malekan is GRANTED IN PART and DENIED IN PART, as detailed above.

### 2.    Challenges to Testimony About Personal Experiences

Next, the Government challenges proposed testimony from experts Perklin and Malekan about their own personal experiences as improper expert testimony. Dkt. No. 58 at 4. The Government identifies the following opinions that it challenges on this basis:

| *Perklin* | |
|---|---|
| Testimony about "'personal[]' views on the 'benefits in cryptocurrency,'" and "personal anecdotes explaining his view that cryptocurrency is preferable to U.S. dollars, such as that he once had his 'PayPal account frozen temporarily,' had his 'bank tell' him he could not 'withdraw [his] own funds to cash,' and had his 'bank refuse to send a wire transfer on [his] behalf despite it being [his] money to send to whomever [he] wish[es].'" | Dkt. No. 58 at 5–6 (alterations in original) (quoting Dkt. No. 58-1 at 4). |
| Testimony that "wire transfers are 'often held for up to 15 days making them useless,' 'wire transfers still inexplicably cost $70 to send,' and '[w]hen you are a merchant . . . it can be very costly to have that credit card payment reversed a month later because the cardholder decided to commit a chargeback.'" | Dkt. No. 58 at 6 (alterations in original) (quoting Dkt. No. 58-1 at 5). |
| *Malekan* | |
| "He 'was surprised by the number of intelligent people who believed in Terra and the viability of UST, people who were knowledgeable about the nuances of [his] industry. Some were friends and/or people whose judgment [he] respected.'" | Dkt. No. 58 at 11 (quoting Dkt. No. 58-3 at 5). |
| "His 'friends encouraged [him] to actually try' UST and he was 'impressed' by it." | Dkt. No. 58 at 11 (quoting Dkt. No. 58-3 at 5). |
| "His 'associates' started 'the hedge fund (where [he is] an investor and advisor) and it has done well.'" | Dkt. No. 58 at 11 (quoting Dkt. No. 58-3 at 6). |

The Government argues that these opinions are not supported by each respective expert's professional experience and that they are otherwise improper expert testimony "because a witness's personal views, anecdotes, and experiences are not reflective of any 'scientific, technical, or other specialized knowledge.'" Dkt. No. 58 at 6 (quoting Fed. R. Evid. 702(a)).

But expert witnesses are permitted to rely on their own personal experience in stating their opinions. *In re Bard IVC Filters Prods. Liab. Litig.*, No. C15-2641, 2018 WL 6186496, at *2 (D. Ariz. Feb. 21, 2018) (denying motion to exclude anecdotal expert testimony); *see also McLellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1127 n.28 (D. Or. 2010) (permitting testimony as to personal knowledge and experience with pain pump labeling); *Primiano*, 598 F.3d at 566 (finding expert qualified based on extensive, relevant experience despite lack of medical literature supporting his view). Testimony about a cryptocurrency expert's own experiences with cryptocurrency is not based on mere speculation.

The one exception to this is that the Court will exclude Malekan from stating that he was surprised by the number of intelligent people who believed in Terra. As stated earlier, since he has only been a consultant for less than two years, the Court finds he does not have the experience to discuss the perceptions of such an amorphous and generic "number of intelligent people." However, he can testify about his personal experiences with friends or other people whose judgment he respected that believed in Terra. The Government may cross-examine Perklin and Malekan about the basis for their statements and the specific instances they reference, but the Government has not identified a basis for excluding these statements under Rule 702.

Therefore, the Government's motion to exclude testimony about personal experiences by Perklin and Malekan is GRANTED IN PART and DENIED IN PART.

### 3. Challenges to "Highly Disputed Conclusory Statements"

The Government also challenges a variety of "highly disputed conclusory statements" by Perklin as having insufficient support and argues that the Court should exclude such statements for their lack of reliability and prejudice. Dkt. No. 58 at 4. The Government identifies the following opinions that it challenges on this basis:

| *Perklin* | |
|---|---|
| "It is impossible to launder funds on a fully-transparent [*sic*] public blockchain since everyone can see when proceeds of crime move from one account to another." | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 6). |
| "[C]ryptocurrencies are superior to legacy financial assets[.]" | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 5). |
| "[C]ryptocurrencies' 'transparency makes it very difficult for bad actors to siphon funds.'" | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 5). |
| "[A] decentralized payment network allows all users to be sovereign in their financial affairs in a way that cannot be overridden by others." | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 4). |
| "[T]he legacy financial system is opaque, meaning money paid to public goods (such as taxes, political donations, etc.) can be used improperly with little oversight[.]" | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 4–5). |
| "[C]ryptocurrency is heading to 'general adoption.'" | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 10). |
| "Bitcoin has held its purchasing power significantly better than the USD." | Dkt. No. 58 at 7 (quoting Dkt. No. 58-1 at 5). |

The Government argues that Perklin's resume "does not give the Court adequate information to ensure these opinions are reliable or otherwise explain how Mr. Perklin reached them." Dkt. No. 58 at 7. "[W]hile disagreement alone is not a basis for exclusion," it continues, "it does bolster the need for a more specific basis to ensure trustworthiness." *Id.*

But in Perklin's report, he describes the bases for these opinions as to the transparency of cryptocurrency and explains the mechanics of the public blockchain, a foundation of this opinion. *See* Dkt. No. 58-1 at 6. Further, the Government does not challenge Perklin's qualifications, and it is clear that he is testifying based on his experience in information science

and cryptocurrency security and regulation. *See* Dkt. No. 58-1 at 14 (noting involvement in CryptoCurrency Security Standard and publications related to security of bitcoin). On cross-examination, the Government can probe its concerns about Perklin's basis for his assessment of cryptocurrency security. *See United States v. Guo*, No. CR23-118, 2024 WL 2262706 (S.D.N.Y. May 17, 2024) (denying motion to exclude testimony of cryptocurrency expert on basis that report did not adequately support specific conclusion).

The Government also makes a fleeting argument as to these statements' relevance to the charges in the indictment. *See* Dkt. No. 58 at 7. For the reasons discussed above, *see supra* Section III.B.1, this argument is unpersuasive to the Court.

However, the Court notes that as to Perklin's opinions that "cryptocurrency is heading to 'general adoption'" and that "[b]itcoin has held its purchasing power significantly better than the USD," it is hard to determine whether these opinions are referencing the time period at which Mr. Shetty was making the UST investment. To the extent that these opinions refer to the time period at issue in this case, they will be permitted; to the extent that they refer to events following the time period at issue in this case, they will be excluded. *See infra* Section III.B.4. Because these opinions' admissibility will be largely dependent on how they come in at trial, the Court will reserve ruling at this time.

Therefore, the Government's motion to exclude "highly disputed conclusory statements" by Perklin is DENIED IN PART AND RESERVED IN PART.

### 4.    Challenges to Testimony About Events Following Period at Issue

Finally, the Government challenges testimony "about events that came after the period at issue in this case" as irrelevant and prejudicial. Dkt. No. 58 at 4. The Government identifies the following opinions that it challenges on this basis:

| *Perklin* | |
|---|---|
| Testimony that "the financial world is 'changing rapidly' 'to a blockchain-based economy based on tokens'" and supporting examples of financial institutions offering cryptocurrency-related offerings. | Dkt. No. 58 at 8 (quoting Dkt. No. 58-1 at 7). |
| "[A]t this point in 2024, it would be difficult to find any developed country that has not used some kind of laws, regulations, bills, acts, or guidance for their citizens who use cryptocurrencies." | Dkt. No. 58 at 8 (quoting Dkt. No. 58-1 at 9). |
| Testimony regarding bill passed by the U.S. House of Representatives on May 22, 2024. | Dkt. No. 58 at 8 (citing Dkt. No. 58-1 at 9). |
| "[A]t this point in 2024 it may be easier to collate a list of major institutions that have NOT invested in cryptocurrencies or blockchains in one manner or another." | Dkt. No. 58 at 8 (quoting Dkt. No. 58-1 at 10). |
| *Joseph* | |
| Testimony about the history of UST and the 2022 "TerraLuna market crash" "in a way that includes reference to facts that only came to light much later." | Dkt. No. 58 at 9 (citing Dkt. No. 58-2 at 5). |

The Government argues that testimony about events following Mr. Shetty's actions taken in 2022 is irrelevant. Dkt. No. 58 at 8. The Government's argument is persuasive; at issue is whether Mr. Shetty "*knowingly* devised a scheme to or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses," and that he "acted with the intent to defraud." Ninth Cir. Mod. J. Instr. 15.35 (2024) (emphasis added). Thus, as the Court explained above, Mr. Shetty is entitled to make arguments as to his purported beliefs regarding the conservativeness and safety of the HighTower investments at the time that he made those investments—*i.e.*, in 2022. However, testimony regarding the perceived safety of, regulations regarding, and institutional investments in cryptocurrency in 2024 are clearly irrelevant to that purpose. Therefore, the Court will grant the Government's motion as to the challenged testimony from Perklin.

However, the Court does not have sufficient information at this time to rule on the Government's motion as to the challenged testimony from Joseph. As the Government indicated

1  that it would be filing a separate motion *in limine* on this issue, the Court will reserve any ruling

2  until reviewing that motion and any response filed.

3        Therefore, the Government's motion to exclude testimony about events following the

4  period at issue in this case is GRANTED IN PART and RESERVED IN PART.

5  **C.    Expert Testimony Regarding Corporate Law**

6        Mr. Shetty designated three experts to testify regarding corporate law, financial markets,

7  and related matters. Stuart Weichsel is designated to testify regarding three general topics: how

8  corporations are structured and Fabric's corporate structure; the fiduciary duty that corporate

9  officers owe the corporation and liability related to the same; and Fabric's investment policy and

10  treasury account agreement with HighTower. *See* Dkt. No. 58-4 at 2–3. Weichsel is also

11  designated as a potential rebuttal witness to the Government's testimony about "any aspect of

12  Fabric's corporate structure, the liability officers face for breach of fiduciary duty, and Fabric's

13  investment policy and agreement with HighTower," and as potentially testifying about "any

14  irregularities in the investigation or manner of enforcement of this case as they relate to

15  corporate law." *Id.* at 3–4. Richard Painter is designated to testify regarding all the same topics

16  as Weichsel (including his potential testimony as a rebuttal witness). *See* Dkt. No. 58-5 at 2–4.

17  James Angel[1] is designated to testify regarding two general topics: general background on the

18  financial market and investments; and hindsight bias in investments. Dkt. No. 58-6 at 2–3. Angel

19  is also designated as a potential rebuttal witness to the Government's testimony about "any

20  aspect of financial markets and investments," and, like Weichsel and Painter, as potentially

21  testifying about "any irregularities in the investigation or manner of enforcement of this case,"

22  but in Angel's case, as they relate to the financial market and investments *Id.* at 3.

23

24  [1] The Government "does not ask that the Court rule now on excluding any of Mr. Angel's proposed testimony," and will make "relevance or other objections as appropriate as the testimony comes in during trial." Dkt. No. 58 at 19.

The Government's challenges to Weichsel and Painter's testimony can be categorized into three buckets: (1) challenges to "case-specific facts and opinions that, to the limited extent they are relevant, should be left to lay witnesses"; (2) challenges to testimony about "core disputed opinions in the case" as invading the province of the jury; and (3) testimony that this case should be civil rather than criminal. Dkt. No. 58 at 12.

### 1.    Challenges to Case-Specific Opinions

First, the Government challenges a variety of statements by Weichsel and Painter that specifically address the entities and individuals involved in this case. Dkt. No. 58 at 13.

The Government argues that to the extent that case-specific facts are relevant, "they can and should be supplied by lay witnesses with firsthand experience." Dkt. No. 58 at 13. In response, Mr. Shetty focuses specifically on his proposed expert testimony regarding Fabric's investment policy, arguing that the experts' "interpretation of the investment policy is relevant to Shetty's state of mind," and should therefore be permitted. Dkt. No. 60 at 10. He does not appear to respond to the Government's argument regarding the provision of case-specific facts by lay witnesses with firsthand knowledge.

The Government cites to *United States v. Brooks*, No. CR06-550, 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010), in support of its argument that Mr. Shetty's corporate governance experts should not be permitted to testify to case-specific facts. But *Brooks* is neither controlling nor persuasive and has been cited disapprovingly by at least one court in this Circuit. *See McCoy v. Kazi*, No. C08-7244, 2010 WL 11465179, at *16 (C.D. Cal. Aug. 27, 2010). In *McCoy*, the court declined to follow *Brooks*, stating that it "seems to conflict with Second Circuit case law." *Id.* The court continued:

> In *Brooks*, the district court stated that 'overwhelmingly, courts
> specifically preclude the expert from offering either legal
> conclusions or opinions that apply corporate governance concepts

to the case's specific facts.' Yet, the *Brooks* court cites to *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 2009 WL 4673916, *3 (2d Cir. Dec. 10, 2009), where the Second Circuit held that a trial court was correct in admitting expert testimony on the plaintiff's corporate structure and evidence of dominance by another corporation. The admitted testimony in *Rochester* was clearly expert opinions applying corporate governance concepts to that case's specific facts.

*Id.* (internal citations omitted). Further, Federal Rule of Evidence 704 dictates that outside of the defendant's mental state or condition in a criminal case, "[a]n opinion is not objectionable just because it embraces an ultimate issue." This Court will similarly decline to follow *Brooks* and will permit expert testimony regarding Fabric's specific corporate structure, Mr. Shetty's duties and responsibilities as CFO, and other similar testimony applying corporate governance concepts to the specific facts of this case.

However, the Court notes that some expert testimony proposed by Mr. Shetty is irrelevant such that it would be inappropriate for expert testimony. The Court addresses each statement below:

| Weichsel | |
|---|---|
| Testimony describing Fabric's "corporate structure, including its officers and board of directors." Dkt. No. 58 at 13 (citing Dkt. No. 58-4 at 2–3). | Weichsel's expert report indicates that he reviewed Fabric's Certificate of Incorporation and bylaws (Dkt. No. 58-4 at 6), giving him a basis to testify as to Fabric's corporate structure. The Government's motion as to this statement is DENIED. |
| Testimony describing "[Mr. ]Shetty's duties and responsibilities as CFO and [Fabric]'s board's duties and responsibilities." Dkt. No. 58 at 13 (citing Dkt. No. 58-4 at 2–3). | Weichsel's expert report indicates that he reviewed Fabric's Certificate of Incorporation and bylaws (Dkt. No. 58-4 at 6), giving him a basis to testify as to Mr. Shetty's and Fabric's board's duties and responsibilities. The Government's motion as to this statement is DENIED. |
| Testimony about Fabric's investment policy, including his opinion that it is "poorly drafted." Dkt. No. 58 at 13 (quoting Dkt. No. 58-4 at 7). | Weichsel's expert report indicates that he reviewed the investment policy and explains his belief that it is poorly drafted because (1) it does not include reference to a conflict-of-interest policy, and (2) it does not dictate reports more frequently than annually. But a conflict-of-interest policy is not at issue in this case. Likewise, frequency of reporting is not at issue in this case, as the transfer of assets for the investment was made the month |

| | after the policy went into effect. As Weichsel's opinion on these topics are irrelevant, the Government's motion as to this statement is GRANTED. |
|---|---|
| ***Painter*** | |
| Testimony about Fabric's investment policy, including his opinions about its "flaws." Dkt. No. 58 at 17 (quoting Dkt. No. 58-5 at 8). | This testimony appears linked to a discussion of: (1) how the language "could lead a . . . Chief Financial Officer to believe that he could alone, without an Investment Manager, provide a 'written exception to the quantitative guidelines[,]'" which is irrelevant since the only relevant issue in this case is how Mr. Shetty interpreted the provision (testimony that should and can be presented by Mr. Shetty himself); or (2) a likely breach of fiduciary duty by the board, which is also irrelevant to this case. Further, this testimony goes to the expert's own version of contractual interpretation, and therefore impinges on the province of the jury. *See infra* Section III.C.2. Therefore, the Government's motion as to this statement is GRANTED. |
| Testimony that "some of the purported flaws [in the investment policy] 'very likely' represent a breach of fiduciary duty by the board, which approved the policy." Dkt. No. 58 at 17 (quoting Dkt. No. 58-5 at 10). | Testimony regarding whether Fabric's board breached any fiduciary duty in approving and adopting the investment policy is irrelevant to the issues in this case. Therefore, the Government's motion as to this statement is GRANTED. |

Additionally, Mr. Shetty asserts that the investment policy at issue in this case is filled with terms of art, and expert testimony as to the meaning of those terms would assist the jury in determining whether Mr. Shetty violated the investment policy. *See* Dkt. No. 60 at 10. The Government does not appear to challenge that testimony at this time. Dkt. No. 63 at 4. The Court cannot make a ruling on any whether expert testimony should be allowed with regard to any specific terms of art contained in the investment policy without knowing which terms are considered "terms of art." Therefore, the Court will not address this issue until it has been properly raised. *See also infra* Section III.C.2.

Therefore, the Government's motion to exclude testimony about case-specific opinions by Weichsel and Painter is GRANTED IN PART and DENIED IN PART, as detailed above.

### 2.    Other Challenges to Testimony

The Government next challenges proposed testimony by Weichsel and Painter regarding whether Mr. Shetty violated Fabric's investment policy. Dkt. No. 58 at 14.

The Government argues that "[t]he Ninth Circuit has held that generally experts should not testify about the interpretation of contracts." Dkt. No. 58 at 15 (citing *Nationwide Trans. Fin. v. Case Info. Sys.*, 523 F.3d 1051, 1058–60 (9th Cir. 2008)). The question of whether Mr. Shetty did or did not violate Fabric's investment policy is a legal conclusion that is impermissible for expert testimony. *See, e.g.*, *Nationwide Trans. Fin.*, 523 F.3d at 1060 ("The district court precluded Carney only from framing his testimony as a legal opinion that Cass violated the UCC. Because Carney's legal conclusions would have served 'to do nothing more than tell the jury what result it should reach,' and because Carney was able to testify regarding the circumstances that led him to formulate his opinion, the district court did not err in excluding Carney's testimony." (internal citations omitted)); *In re Novatel Wireless Sec. Litig.*, No. C08-1689, 2011 WL 5827198, at *3 (S.D. Cal. Nov. 17, 2011) ("[T]o the extent that Mr. Regan opines on the question of whether the contracts at issue allowed Defendants to ship products to customers in the manner they did, the Court finds such opinions to be improper legal conclusions[.]").

Mr. Shetty argues that "the investment policy is filled with terms of art" that the jury will need assistance in understanding. Dkt. No. 60 at 10. The Ninth Circuit has held that "if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017). In *Diaz*, expert testimony was needed to assist the jury in interpreting prescriptions written by a physician who was charged with the distribution of controlled

substances outside the course of professional practice. *Id.* at 1197, 1199. The expert's testimony

"was helpful because a lay jury would not have the requisite knowledge to evaluate whether the

dosage, mix, and course of narcotics prescribed by Diaz were medically appropriate for the

conditions being complained of by his patients." *Id.* at 1199.

But here, the Court's analysis of the policy has not required the interpretation of any

ambiguous provisions or confusing technical terms thus far. In addition, courts considering the

exclusion of expert testimony regarding the interpretation of similar policies or contracts have

held that, barring testimony about specific terms of art, experts are not permitted to testify as to

their own version of contractual interpretation. *See, e.g.*, *N. Am. Specialty Ins. Co. v. Myers*, 111

F.3d 1273, 1281 (6th Cir. 1997) (excluding expert testimony interpreting insurance contract

where policy did not contain ambiguous provisions or confusing technical terms); *Navigators

Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 49–50 (S.D.N.Y. 2022) (excluding expert testimony

regarding "purpose" of insurance contract as impinging upon the province of the court); *cf.

Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 182 (S.D.N.Y. 2020) (permitting

expert to explain that the meaning of the term "aerial equipment" is distinct from "rebound

equipment" as used within the field of gymnastics). However, the Court DIRECTS the Parties to

meet and confer as to whether any terms of art are appropriate for expert testimony and, if they

cannot reach agreement, they may file motions *in limine* on this issue.

Additionally, Federal Rule of Evidence 704(b) bars expert opinions about "whether the

defendant did or did not have a mental state or condition that constitutes an element of the crime

charged or of a defense." As the Court has already stated, the Government must prove at trial

that Mr. Shetty "*knowingly* devised a scheme to or plan to defraud for the purpose of obtaining

money or property by means of false or fraudulent pretenses," and that he "acted with the intent

to defraud." Ninth Cir. Mod. J. Instr. 15.35 (2024) (emphasis added). Thus, testimony as to

1  whether Mr. Shetty specifically did or did not believe he was violating Fabric's investment

2  policy at the time that he made the HighTower investment is impermissible.

3          For clarity, the Court addresses each of the Government's challenged statements below:

| Weichsel | |
|---|---|
| Testimony that that "'Shetty may have reasonably concluded that the account created with Hightower Treasury met the definition' of a 'treasury account' under the investment policy." Dkt. No. 58 at 13 (citing Dkt. No. 58-4 at 8). | This testimony is impermissible under FRE 704, because this testimony goes to Mr. Shetty's mental state at the time he made the HighTower investment. The Government's motion as to this statement is GRANTED. |
| Testimony that "[i]t is reasonable to interpret the investment policy as permitting the corporation to invest in Hightower if an investment manager presented the investment and Shetty or the COO provided a written waiver." Dkt. No. 58 at 13 (citing Dkt. No. 58-4 at 8). | This testimony goes to the expert's own version of contractual interpretation, and therefore impinges on the province of the jury. The Government's motion as to this statement is GRANTED. |
| Testimony that "it cannot be clearly determined that Shetty violated the investment policy as stated." Dkt. No. 58 at 13 (quoting Dkt. No. 58-4 at 8). | This testimony specifically goes to the question of whether Mr. Shetty did or did not violate the investment policy, an impermissible legal conclusion. Allowing Weichsel to opine on this would invade the province of the jury. The Government's motion as to this statement is GRANTED. |
| Painter | |
| Testimony that "it is difficult to argue that Shetty lied to the Board." Dkt. No. 58 at 18 (quoting Dkt. No. 58-5 at 10). | Whether or not Mr. Shetty lied or intentionally mislead Fabric's board of directors is an impermissible legal conclusion, and allowing Painter to opine on this would invade the province of the jury. The Government's motion as to this statement is GRANTED. |
| Testimony that "'a transaction that deviated only slightly from the guidelines in the Policy' would be consistent with 'both the intent and the express language of the Policy.'" Dkt. No. 58 at 17 (quoting Dkt. No. 58-5 at 9). | This testimony goes to the expert's own version of contractual interpretation, and therefore impinges on the province of the jury. Additionally, while Painter reviewed the investment policy and related documents in preparing his report (Dkt. No. 58-5 at 36), he has not laid a foundation for his knowledge and expert testimony regarding the intent of the policy. For this reason, Painter will not be permitted to testify as to whether actions would be consistent with the intent of the policy. The Government's motion as to this statement is GRANTED. |

1    Therefore, the Government's motion to exclude testimony about "core disputed

2  questions" in this case is GRANTED.

3    **3.    Challenges to Testimony About Criminal Case**

4    The Government next challenges testimony by Mr. Shetty's experts regarding the

5  usualness of prosecution of corporate officers. Dkt. No. 58 at 15–16. The Government identifies

6  the following opinions that it challenges on this basis:

| *Weichsel* | |
|---|---|
| Testimony that "'liability' for a corporate officer's breach of a fiduciary duty is 'almost exclusively civil and rarely criminal.'" | Dkt. No. 58 at 14 (quoting Dkt. No. 58-4 at 9). |
| "It is practically unheard of for a corporate officer to face criminal charges that might violate corporate board policies." | Dkt. No. 58 at 14 (quoting Dkt. No. 58-4 at 9). |
| Testimony regarding instances where corporate officer's liability is criminal, and why Mr. Shetty's conduct falls outside the scope of liability. | Dkt. No. 58 at 14 (citing Dkt. No. 58-4 at 9). |
| Testimony that Mr. Shetty was "'foolish,' but 'not criminal,' and 'for Federal prosecutors to bring charges on the facts in this case is highly unusual and probably represents a change in criminal legal standards.'" | Dkt. No. 58 at 14 (quoting Dkt. No. 58-4 at 9). |
| Testimony that "there is no sign of direct or indirect embezzlement or conversion of assets for personal use or other crimes." | Dkt. No. 58 at 14 (quoting Dkt. No. 58-4 at 9). |
| *Painter* | |
| Testimony that "'criminal charges are . . . extremely rare' and 'almost never . . . imposed' in cases involving corporate officers 'absent . . . kickbacks [or] misrepresentation.'" | Dkt. No. 58 at 18 (quoting Dkt. No. 58-5 at 7). |

18    The Government argues that neither Weichsel nor Painter have established a foundation

19  for their ability to testify as to whether prosecution of corporate officers is usual or not. *See* Dkt.

20  No. 58 at 16–18. The Court agrees. Weichsel and Painter have not established themselves as

21  having any background in criminal law, nor do they explain how they reached their conclusions

22  that criminal charges are extremely rare in cases involving corporate officers. Further, Mr. Shetty

23  argues that Painter's testimony is relevant because "the board's actions and motives in initiating

24  the prosecution are relevant and will be at issue in the trial." Dkt. No. 60 at 12. But the charges

were brought *by the Government* (and not by the company of the board), and it is up to the jury to determine if a crime occurred. Finally, the question of whether it is "usual" or "unusual" for the Government to bring criminal charges as to any particular crime is of no relevance to the jury.

Therefore, the Government's motion to exclude testimony about the usualness of criminal prosecutions of corporate officers is GRANTED.

### 4.    Challenges to Testimony Regarding Legal Concepts

Finally, the Government also noted that Mr. Shetty's proposed testimony would have his experts discussing legal concepts. *See* Dkt. No. 58 at 16. For example, Weichsel's report and disclosure indicates that he intends to testify regarding the concept of a fiduciary duty (Dkt. No. 58-4 at 5), and Painter's report and disclosure indicates that he intends to testify regarding the "prudent person rule" (Dkt. No. 58-5 at 6). The Government admits that some of this testimony may be proper but could cross over the line, depending on how it comes in. Dkt. No. 58 at 16. The Court agrees and will rule on this issue if and when presented. However, the Court cautions Mr. Shetty that while it declines to exclude any expert testimony regarding legal concepts at this point, it is the province of this Court, and not any expert, to instruct the jury on the law. *See United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (quoting *United States v. Brodie*, 858 F.2d 492, 496–97 (9th Cir. 1988)). Should any expert at any point make an instruction to the jury on the law, the Court may excuse the expert.

Relatedly, the Government also challenges Mr. Shetty's designation of all three of his corporate-law experts as potentially testifying about "any irregularities in the investigation or manner of enforcement of this case." Dkt. No. 58 at 18. The Government argues that this disclosure is unclear, and requests that the Court either require Mr. Shetty to "spell out the supposed 'irregularities' so that the government may make informed objections" or exclude this testimony out of hand. *Id.* at 18–19. However, this testimony is proposed as potential rebuttal

testimony to the Government's case-in-chief. *See, e.g.*, Dkt. No. 58-4 at 4. The Court declines to exclude this rebuttal testimony or request further clarification at this time, though the Government may raise this issue the Court prior to the start of the defense case at trial.

//

//

## IV.  CONCLUSION

Accordingly, the Government's Motion to Exclude Expert Witness Testimony (Dkt. No. 58) is GRANTED IN PART, DENIED IN PART, and RESERVED IN PART. It is hereby ORDERED:

- Once any expert has testified on any subject, that subject may not be covered again by any subsequent expert.

- The Government's motion to exclude "sweeping statements" by Perklin, Joseph, and Malekan is GRANTED IN PART and DENIED IN PART.

- The Government's motion to exclude testimony about personal experience by Perklin and Malekan is GRANTED IN PART and DENIED IN PART.

- The Government's motion to exclude "highly disputed conclusory statements" by Perklin is DENIED IN PART AND RESERVED IN PART.

- The Government's motion to exclude testimony about events following the period at issue in this case is GRANTED IN PART and RESERVED IN PART.

- The Government's motion to exclude testimony about case-specific opinions by Weichsel and Painter is GRANTED IN PART and DENIED IN PART.

- The Government's motion to exclude testimony about "core disputed questions" by Weichsel and Painter is GRANTED.

- The Government's motion to exclude testimony about the usualness of criminal prosecutions of corporate officers is GRANTED.

Dated this 12th day of December 2024.

Tana Lin
United States District Judge