UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br>NEVIN SHETTY,<br>　　　　　　　　Defendant. | CASE NO. 2:23-cr-00084-TL<br><br>ORDER ON MOTION FOR RECONSIDERATION OF THE COURT'S ORDER COMPELLING *BRADY* MATERIAL |

On December 4, 2024, this Court granted Defendant Nevin Shetty's motion to compel the Government to produce certain *Brady* material. Dkt. No. 102. This matter is before the Court on the Government's Motion for Reconsideration of that Order. Dkt. No. 107. Having considered Mr. Shetty's response (Dkt. No. 111) and the relevant record, the Court GRANTS the motion.

## I. BACKGROUND

The Court assumes familiarity with the facts of the case. Relevant to the instant motion, on July 25, 2024, Mr. Shetty filed a motion to compel production of *Brady* material. Dkt. No. 73. Mr. Shetty argued that the Government was in possession of, and should produce,

> [A]ll evidence (1) tending to suggest that Do Kwon took steps to mislead investors and the public about the safety, security, and stability of the UST cryptocurrency, including the ability of Terra's algorithms to maintain a stable peg with the U.S. dollar; and (2) tending to suggest that the collapse of UST was directly caused by the actions of Mr. Kwon and his co-conspirators.

*Id.* at 6 (quoting Dkt. No. 73-1 at 2). He contended that such information was relevant to the instant action and potentially exculpatory, as it would bolster Mr. Shetty's defense that he believed that the TerraUSD investment by HighTower was conservative based in part on representations made by Kwon. *Id.* at 8. In its opposition, the Government argued that the requested information was not favorable or material, and further, that the Government was not in "possession" of the materials for the purposes of *Brady* because they were held by the U.S. Attorney's Office ("USAO") for the Southern District of New York ("SDNY") pursuant to that office's investigation and indictment of Do Kwon. *See generally* Dkt. No. 75. Following briefing by the Parties, Mr. Shetty filed a supplemental brief in support of his motion to compel, addressing corporate law principles relevant to the motion. Dkt. No. 92.

The Court issued its Order granting Mr. Shetty's motion to compel on December 4, 2024. Dkt. No. 102. On December 16, 2024, the Government filed a status report regarding the Court's Order, recognizing that the Court had ordered a production within 30 days of its order and indicating that it would not be possible to meet that deadline due to the size of the SDNY USAO's casefile and because a collection of discoverable records had not yet been prepared. Dkt. No. 104 at 1–2.

On January 10, 2025, the Government filed the instant motion for reconsideration. Dkt. No. 107. Mr. Shetty opposes. Dkt. No. 111.

## II. LEGAL STANDARD

"Motions for reconsideration are disfavored." CrR 12(b)(13). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.* "A movant who seeks reconsideration 'shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling.'" *United States v. Jefferson*, No. CR23-109, 2024 WL 5119861, at *2 (W.D. Wash. Dec. 16, 2024) (quoting CrR 12(b)(13)(B)).

"No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). "Rather, the district court's authority to revisit a ruling . . . 'is within its sound judicial discretion.'" *Id.* (quoting *United States v. Raddatz*, 447 U.S. 667, 678 n.6 (1980)).

## III. DISCUSSION

The Government argues that the new facts about the size of the Kwon case file and proposal of factual stipulations to Mr. Shetty warrant reconsideration of the Court's Order. Dkt. No. 107 at 5. The Government additionally relitigates its arguments in opposition to Mr. Shetty's original motion to compel. *Id.* at 7–9.

### A. New Facts About the Size of the Kwon Case File

The Court is unimpressed with the Government's argument that the size of the Kwon case file is a "new fact" that warrants reconsideration of the Court's prior order. A "new fact" for purposes of a motion to reconsideration is one "which could not have been brought to [the

1  Court's] attention earlier with reasonable diligence." *Poore-Rando v. United States*, No. C16-
2  5094, 2017 WL 5549580, at *3 (W.D. Wash. Nov. 17, 2017). At minimum, the Government
3  could have inquired as to the size and breadth of the SDNY USAO's file on Do Kwon when
4  Mr. Shetty filed his motion to compel—or, even better, when Mr. Shetty made his initial request
5  in April 2024—which would have allowed them to make this argument as to the size of the
6  Kwon file in their briefing in response to Mr. Shetty's original motion. The fact that the
7  Government did not even begin to investigate what materials the SDNY USAO had in its
8  possession until after the Court's order, particularly when Mr. Shetty had made requests for
9  specific materials that he believed to be exculpatory months earlier, is troubling.[1]
10     While the Court acknowledges that the Kwon file does appear to be unusually large, the
11 Government's failure to inquire as to the size or scope of the file prior to the Court's Order is not
12 grounds for reconsideration.

### B.   The Government's Proposed Factual Stipulations

14     The Government next argues that its proposal of factual stipulations to Mr. Shetty
15 satisfies its *Brady* obligations. Dkt. No. 107 at 10. Following the Court's Order and the
16 Government's inquiry into the Kwon file, the Parties met and conferred regarding the possibility
17 of stipulation to the facts related to the Kwon prosecution. *Id.* at 3. The Government "worked
18 with the Kwon prosecution team to develop stipulations that fairly summarize pertinent evidence
19 known to the SDNY team," and believes that "the proposed stipulations fairly convey Kwon's
20 attempt to mislead the public about UST's stability." *Id.* at 3–4. Mr. Shetty argues that the

---

[1] However, as previously noted in this Court's Order on Mr. Shetty's opposed motion to continue trial, the Court also finds Mr. Shetty's delay in requesting the *Brady* material problematic. Dkt. No. 76 at 3. The Court still finds troubling that despite Mr. Shetty's counsel writing to the Government about the Do Kwon SEC case in March 2023 and then expressly requesting *Brady* material from the Do Kwon file in April 2024, Mr. Shetty waited until July 25, 2024—an additional three months and less than two months before the then-scheduled trial date (Dkt. No. 39)—to file his motion to compel. Therefore, neither Party has clean hands.

Government cannot avoid its *Brady* obligations through stipulations "that may not address its actual trial strategy." Dkt. No. 111 at 6.

The Government contends that *Brady* requires only disclosure of *information* without regard to format. Dkt. No. 107 at 10. In support of this proposition, the Government cites a number of cases where courts found that no *Brady* violation had occurred where the government had provided defendant with substantive exculpatory information, without providing the actual evidence on which that exculpatory information was based. *Id.* at 10 n.3. For example, in *United States v. Van Brandy*, the Ninth Circuit found that no *Brady* violation had occurred where defendant sought the FBI file on a relevant informant but was provided with incomplete summaries of the information contained in that informant's file. *See* 726 F.2d 548, 551 (9th Cir. 1984). In *Van Brandy*, the Court's determination hinged on the fact that the government's disclosures related to the informant's credibility and that the informant had been cross-examined at trial, finding:

> The government, where doubt exists as to the usefulness of evidence, should resolve such doubts in favor of full disclosure, *but its failure to do so must raise a reasonable possibility that it materially affected the verdict before it becomes significant*. This is not here the case. Blevins, the informant, was exhaustively cross-examined; his creditability was thoroughly questioned. Furthermore, the evidence, independent of the informant's information, was very strong against each defendant.

*Id.* at 552 (internal citations omitted) (emphasis added). Other courts have similarly held that the production of summaries suffices to satisfy the government's *Brady* obligations. *See United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir. 1993) (finding no *Brady* violation where government provided typewritten summaries of agent's notes, but did not produce the original notes themselves); *United States v. Henderson*, 250 F. App'x 34, 38–39 (5th Cir. 2007) (finding that defendant had not been prejudiced, and therefore suffered no *Brady* violation, where

government had disclosed contents of at-issue email over a month before trial); *United States v. Parnas*, No. CR19-725, 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) (finding that government had met its *Brady* obligations and declining to compel production of notes from witness interviews where government had produced summaries of witness statements)

As the Court acknowledged in its prior Order, "[t]he vast majority of cases under *Brady* arise after conviction," where the test for determining if a *Brady* violation has occurred includes an analysis of whether the withheld evidence was material to the proceeding. Dkt. No. 102 at 4. Thus, a consideration of whether the information contained within the withheld evidence was ever disclosed to the defendant is appropriate—because if it were, it may weigh against a finding that the failure to disclose the actual evidence materially affected the verdict.

Here, the Court is placed in an unusual situation. It previously found that, under the Ninth Circuit's recent decision in *United States v. Cloud*, 102 F.4th 968 (9th Cir. 2024), no determination of materiality is required upon a pre-trial motion to compel under *Brady*, and that "the government must disclose upon request all favorable evidence that is likely to lead to favorable evidence that would be admissible." Dkt. No. 102 at 6 (quoting *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1200 (C.D. Cal. 1999)). Consistent with that standard, the Court determined that the Government should produce potentially favorable information specifically requested by Defendant which was within the Government's possession.[2] *See* Dkt. No. 102 at 6. But now, the Government contends that its *Brady* obligations are satisfied where it has not

---

[2] The Court acknowledges that the Government continues to argue that it does not possess the Kwon investigation files. Dkt. No. 107 at 8. However, the Court's Order did not, as the Government argues, impose "an unlimited duty" on the Government to inquire of other offices; it imposed a duty on the Government to coordinate with another office within the same governmental agency working on a related investigation. Dkt. No. 102 at 10–11. Further, to the extent that the Court's Order obligated the Government to seek out "potentially favorable information" (Dkt. No. 107 at 9), such an order is within the constructs of *Brady*, which the Ninth Circuit acknowledges "imposes a duty on prosecutors to *learn of* material exculpatory and impeachment evidence" (Dkt. No. 102 at 7 (emphasis added) (quoting *Browning v. Baker*, 875 F.3d 444, 460 (9th Cir. 2017))).

1 produced the underlying evidence, but a factual summary[3] that, in its view, "fairly and

2 meaningfully convey[s] the sum and substance of the case against Kwon as it relates to

3 [Mr. Shetty's] intended defense." Dkt. No. 107 at 10.

4     In response, Mr. Shetty argues that "[t]he government still intends to argue that [he]

5 somehow knew this investment was risky, despite Do Kwon's extensive deception of the market.

6 Without knowing how they plan to thread this needle at trial, it is impossible to know what

7 *Brady* material might exist to rebut their specific theory." Dkt. No. 111 at 6. However, as the

8 Ninth Circuit has held, a defendant's "mere speculation about materials in the government's files

9 does not require the district court . . . under *Brady* to make the materials available for [the

10 defendant's] inspection." *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986)

11 (cleaned up) (quoting *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174,

12 202 (3d Cir. 1970)). In *Michaels*, the Ninth Circuit addressed (following trial and conviction) a

13 district court's pre-trial denial of defendant's motion to compel the production of agents' rough

14 interview notes of witnesses where the defendant had been provided with typed interview

15 summaries by the government. *Id.* at 1115. It held that the defendant was not entitled to the

16 rough interview notes where he had no basis for the belief that the notes contained any

17 exculpatory material which had not been contained in the interview summaries. *Id.* at 1115–16.

18     Mr. Shetty's argument here is similar. He has made no showing that the Kwon file

19 contains further favorable information not contained within the Government's factual summary,

20 and he admits that "it is impossible to know what *Brady* material might exist." Dkt. No. 111 at 6.

---

[3] The Government proposes this summary as a set of "factual stipulations." Because stipulations are negotiated between parties, the Court declines to order that any party stipulate to a set of facts to which it does not agree. However, as the Government argues that their proposed stipulations convey the relevant exculpatory information to Mr. Shetty in a way that satisfies the Government's *Brady* obligations, the Court will refer to these stipulations as a "summary" of the exculpatory Kwon material going forward.

ORDER ON MOTION FOR RECONSIDERATION OF THE COURT'S ORDER COMPELLING BRADY MATERIAL - 7

"The prosecutor's responsibility to make judgment calls about what information constitutes *Brady* . . . material may cause defense counsel some angst," but *Brady* does not entitle defendants "to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Acosta*, 357 F. Supp. 2d 1228, 1244 (D. Nev. 2005); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1231 (D.N.M. 2008) (quoting *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990)). *Brady* is the Government's obligation alone, and it is they who bear the risk of having any potential conviction overturned if they do not meet their obligations. *See Acosta*, 357 F. Supp. 2d at 1244.

"The court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought." *Lujan*, 530 F. Supp. 2d at 1256. Mr. Shetty's speculation that the Kwon files contain favorable evidence not disclosed in the Government's proposed summary is insufficient to compel the Government to make the actual files available for review. *See id.* The Government contends that its factual summary "fairly and meaningfully convey[s] the sum and substance of the case against Kwon" as it relates to Mr. Shetty's intended defense, based on information shared by the SDNY USAO. Dkt. No. 108-1 at 2. Without any evidence to the contrary, the Court is in no position to determine that the Government has not complied with its *Brady* obligations by producing this summary. In addition, the Government's summary identifies specific public statements made by Kwon such that Mr. Shetty should be able to pull up these publicly available materials himself. Finally, the Court notes that Mr. Shetty argues a need for the materials because "[t]he government still intends to argue that Mr. Shetty somehow knew this investment was risky." Dkt. No. 111 at 6. But Mr. Shetty should know himself what representations from Kwon about TerraUSD that he heard and relied upon, and he should be able to provide evidence of those representations. He can also research public statements made by Kwon that other

investors would have heard. In other words, in this particular situation, the information is already accessible to Mr. Shetty.

\* \* \*

The Court's prior Order outlines the favorability of the evidence originally sought by Mr. Shetty and determined that the Government was in possession of such evidence. *See* Dkt. No. 102 at 7–12. Those holdings remain. However, upon review of the relevant caselaw, the Court finds that the precise method by which the Government chooses to satisfy its *Brady* obligations is the responsibility of the prosecutor to determine. *See Acosta*, 357 F. Supp. 2d at 1245. "The prudent prosecutor will err in favor of disclosure." *Id.* If the Government believes that its factual summary satisfies its *Brady* obligations, without evidence to the contrary, the Court must defer to this judgment call by the Government. *See id.* However, the Court cautions the Government that this Order should not be construed as a finding that the Government has satisfied its obligations under *Brady*, and the impact of any failure to satisfy its *Brady* obligations will fall squarely on the Government.

## IV.   CONCLUSION

Accordingly, the Government's Motion for Reconsideration (Dkt. No. 107) is GRANTED. The Government is ORDERED to make any revisions to its factual summary consistent with the Court's prior holdings regarding favorability and possession, and to produce the summary to Defendant, **within fourteen (14) days** of this Order.

Dated this 30th day of January 2025.

Tana Lin
United States District Judge