UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>NEVIN SHETTY,<br><br>  Defendant. | CASE NO. 2:23-cr-00084-TL<br><br>ORDER ON DEFENDANT'S<br>MOTIONS IN LIMINE |

This matter is before the Court on Defendant Nevin Shetty's Motions in Limine (Dkt. Nos. 182, 183, 185, 186, 187). Having considered the Government's response (Dkt. No. 196) and the relevant record, and having held oral argument (Dkt. No. 211), the Court rules on each motion as set forth in this Order.

## I.  BACKGROUND

The Court assumes familiarity with the facts of this case. *See* Dkt. No. 1 (Indictment); Dkt. No. 101 at 2–4 (Order on Motion to Dismiss).

## II.    LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted), *cert. denied*, 556 U.S. 1252. Federal Rule of Criminal Procedure 12(b)(3)(C) requires parties to make any motions for the suppression of evidence before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Motions in limine may also be made to admit evidence. *See, e.g.*, *United States v. Harris, 842 F. App'x 28, 31 (9th Cir. 2020)* (affirming district court's rulings in limine allowing government to present certain summary testimony and exhibits). The practice of issuing pre-trial evidentiary rulings in advance of trial has emerged as part of a "district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also* Fed. R. Evid. 103 ("Rulings on Evidence").

In ruling on motions in limine, the Court is generally guided by Federal Rules of Evidence ("Rules") 401, 402, and 403. *See* Fed. R. Evid. 401 (defining relevant evidence), Fed. R. Evid. 402 (relevant evidence is generally admissible), Fed. R. Evid. 403 (providing for exclusion of relevant evidence whose probative value is substantially outweighed by certain other considerations). A motion in limine to exclude evidence is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021) (quoting *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). A motion in limine should not be used to resolve factual disputes or weigh evidence. *Id.*; *accord Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862, 2021 WL 717540, at *1 (W.D. Wash. Feb. 24, 2021).

A court's ruling on a pre-trial motion in limine is preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change [their] mind during the course of a trial."); *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (district court may change its in limine ruling at trial if testimony brings unanticipated facts to the court's attention). "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

The primary Rules guiding the Court's evidentiary rulings provide as follows:

> **Rule 401.    Test for Relevant Evidence**
> Evidence is relevant if:
> (a)    it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b)    the fact is of consequence in determining the action.
>
> **Rule 402.    General Admissibility of Relevant Evidence**
> Relevant evidence is admissible unless any of the following provides otherwise:
> •    the United States Constitution;
> •    a federal statute;
> •    these rules; or
> •    other rules prescribed by the Supreme Court.
> Irrelevant evidence is not admissible.
>
> **Rule 403.    Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Exclusion under Rule 403 is discretionary, and The Ninth Circuit, recognizing that "[r]elevant evidence is inherently prejudicial," instructs district courts to be "cautious and sparing" in excluding evidence under this rule because its "major function is limited to excluding

matter of scant or cumulative probative force, dragged in by the heels for the sake of its

prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983))." "[U]nfair prejudice means 'undue

tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one.'" *Id* (quoting Advisory Committee Notes to Rule 403); *accord United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003).

In short, evidence is generally admissible at trial if it is relevant, unless another law or

rule prohibits its admission, and unless the probative value of the evidence is substantially

outweighed by such unwanted dangers as unfair prejudice or misleading the jury.

### III. DISCUSSION

The Court addresses each of Mr. Shetty's motions in limine in turn.

### A. Motion to Exclude Evidence of Subsequent Investment Performance (Dkt. No. 182)

Mr. Shetty first moves to exclude "any evidence of the performance of the UST-based

investments Shetty made on Fabric's behalf and resulting financial loss to Fabric on and after

May 9, 2022." Dkt. No. 182 at 1. The Government opposes this motion. Dkt. No. 196 at 2–6.

#### 1. Rules 401 and 402

Mr. Shetty argues that, because the Government alleges the elements of wire fraud were

satisfied at the moment he transferred Fabric's money to HighTower, the subsequent

performance of the invested funds does not make any element more or less probable, and is

therefore irrelevant and inadmissible. Dkt No. 182 at 2–4. The Government responds that "The

performance of Shetty's investments is an important part of the story of his fraud, and his actions

as UST declined in value"—including concealing the losses from Fabric until "after the Terra

ecosystem had essentially collapsed"—"are highly incriminating." Dkt. No. 196 at 2–3.

The law of this Circuit is on the Government's side. While Mr. Shetty claims that "courts regularly exclude" such evidence, he cites only two out-of-circuit cases: *United States v. Farrington*, 389 F.2d 357, 359–60 (6th Cir. 1968), and *United States v. Stoecker*, 920 F. Supp. 867, 875–76 (N.D. Ill. 1996), opinion clarified (Apr. 3, 1996). The Ninth Circuit has already considered the same argument Mr. Shetty makes in another case, *United States v. Carroll*, 73 F. App'x 222 (9th Cir. 2003). In *Carroll*, the court both distinguished *Farrington* and declined to follow it, clarifying that the Sixth Circuit's opinion in *Farrington* does not straightforwardly stand for the proposition that evidence of victims' losses is inadmissible, and, in any case, such evidence unequivocally *is* admissible under the law of this Circuit:

> Carroll's reliance on *United States v. Farrington,* 389 F.2d 357 (6th Cir.1968), is misplaced. There, without expressly ruling on the admissibility of the evidence of victim loss for this purpose, the Sixth Circuit held that extensive evidence of loss coupled with jury instructions repeatedly referring to the loss was unduly prejudicial and confusing. In contrast, our Circuit permits such evidence and the district court did not give any misleading instructions which could create any undue prejudice.

*Carroll*, 73 F. App'x at 225 (citation modified).

The Government, by contrast, provides binding case law that evidence of the whole scheme is relevant in a wire fraud case and argues that Mr. Shetty's alleged scheme was ongoing at the time the losses happened. Dkt. No. 196 at 4 (citing *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016)). The *Loftis* court explained:

> The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud. The crime charged in a wire fraud prosecution therefore includes not only the specific executions of the scheme alleged as the second element of the offense but also the overall scheme alleged as the first element of the offense. As we recently explained, the commission of a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole . . . . Rule 404(b) thus does not preclude the government

> from introducing evidence of uncharged transactions to prove the
> first element of wire fraud—the existence of a scheme to defraud.

*Loftis*, 843 F.3d at 1177 (citation modified) (citing *United States v. Lo*, 839 F.3d 777, 793 (9th

Cir. 2016)). While the court here was discussing relevance in the context of Rule 404(b)—

finding that uncharged transactions were not excludable as "other acts"—the basis of its finding

is that the entire scheme is relevant because the scheme itself is an element of a crime. As the

Government explains, the fact that even a scheme in the planning stages can satisfy this element

does not require the Government to limit its presentation of evidence to the minimum facts

necessary to establish a scheme. Here, Mr. Shetty's allege scheme was to "enrich himself by

secretly transferring $35 million in [Fabric] corporate funds to a cryptocurrency investment

platform that [Mr. Shetty] owned and operated . . . to bolster his fledgling cryptocurrency

venture . . . and to earn large profits for himself . . . ." Dkt. No. 1. This alleged scheme was

ongoing until the point at which Mr. Shetty revealed the plan to Fabric, and the entire course of

these events, even when they did not go according to Mr. Shetty's plan, is relevant. This is

especially true to the extent that Mr. Shetty's reaction to the unexpected losses constitutes

additional deceit, evidences an intent to defraud, or illustrates consciousness of guilt. *See* Dkt.

No. 196 at 3.[1]

　　Information about Fabric's losses resulting from Mr. Shetty's investment are relevant.

### 2.    Rule 403

　　Mr. Shetty next argues that "even if it had some marginal probative value," evidence of

Fabric's losses should still be excluded under Rule 403 because of a substantial risk that it will

//

---

[1] The Court credits the Government's commitment that it "will not argue the crash of UST is evidence that
Mr. Shetty knew or should have known UST was risky." Dkt No. 196 at 5 (citing Dkt. No. 128-1).

unfairly prejudice Mr. Shetty, mislead the jury and confuse the issues, and waste time. Dkt. No. 182 at 4; *see id.* at 4–6.

*Unfair Prejudice*: Mr. Shetty warns that "A $35 million loss would likely 'unduly inflame the passion of the jury' and lead jurors to convict based on sympathy for Fabric rather than proof of the charged offense." *Id.* at 5 (quoting *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006)). The Court takes seriously Mr. Shetty's concern that the magnitude of the losses is prejudicial, and even—to the extent that jurors may feel someone needs to be held accountable for the ultimate loss—that some of that prejudice may be unfair. However, Mr. Shetty fails to distinguish this prejudice from the prejudice inherent to all losses, and, as explained above, the Ninth Circuit rule is that evidence of victims' losses is relevant and admissible. Moreover, he does not explain how any prejudice could *substantially* outweigh the evidence's probative value (as Rule 403 requires), and the Court agrees with the Government that depriving it of evidence of the conclusion of Mr. Shetty's alleged scheme would substantially hamper its ability to tell the story of the allegations against Mr. Shetty—that is, to make its case. *See* Dkt. No. 196 at 5–6.

*Confusion of Issues / Misleading the Jury*: Mr. Shetty cites to *United States v. Lindsey*, 850 F.3d 1009, 1017–18 (9th Cir. 2017), to support his proposition that the "Ninth Circuit has repeatedly cautioned against admitting evidence that could confuse jurors about the elements of wire fraud." Dkt. No. 182. But beyond showing that Rule 403 was correctly applied to exclude evidence in a wire fraud prosecution at least once before, *Lindsey* appears to offer nothing to the analysis here. In that case, the Ninth Circuit upheld the exclusion of evidence a wire fraud and mortgage fraud defendant' evidence that his statements or omissions were not relied on, finding this was "poor evidence" of "little relevance" to the respective materiality elements (which the defendant could challenge in other ways), and that the evidence could mislead the jury not about

the elements of either crime but about the existence of defenses of negligence, intentional

disregard, and lack of reliance—none of which are defenses to wire fraud or mortgage fraud.

*Lindsey,* 850 F.3d at 1015–18. None of these circumstances are analogous to the situation here.

Moreover, Rule 403 allows exclusion of otherwise relevant evidence if its probative value is

*substantially* outweighed by one or more of the enumerated dangers. While the *Lindsey* court

could confidently conclude that potential juror confusion "substantially outweighed" the

negligible probative value of evidence that had "little relevance," this does not illuminate how

potential jury confusion, if any, should be weighed against the genuinely relevant evidence at

issue here. Ultimately, the Court finds that these concerns do not substantially outweigh the

probative value of the evidence. Jurors will be instructed on the elements that make up wire

fraud. Mr. Shetty's arguments about what does *not* constitute wire fraud can be, and undoubtedly

will be, presented to the jury through his counsel. It is the Court's position that jurors can

understand these distinctions, which are not complex.

    *Waste of Time*: Mr. Shetty asserts that admitting this evidence would necessitate a "time

consuming mini-trial about cryptocurrency markets and specifics about UST's collapse," (Dkt.

No. 182 at 6), but the Court sees no reason this would be true. While the Court will consider jury

instructions as necessary to limit these collateral issues (*see* Dkt. No. 196 at 5), waste of time

alone will rarely if ever be a reason to exclude highly relevant, non-cumulative evidence, and it

is not so here.

    Accordingly, Mr. Shetty's motion to exclude evidence of Fabric's losses / the

performance of the HighTower investment (Dkt. No. 182) is DENIED.

**B.    Motion to Exclude Fabric's 2022 Employee Handbook (Dkt. No. 183)**

    Mr. Shetty asks the Court to exclude Fabric's 2022 employee handbook from evidence,

noting that this document was included as Government's Exhibit 85 in the exhibit list disclosed

1   by the Government, and arguing for exclusion under Rules 401, 402, and 403 because the 2022

2   handbook—which was adopted after Mr. Shetty's departure from Fabric—"lacks probative value

3   while creating substantial risk of unfair prejudice by confusing the jury about which policies

4   informed Mr. Shetty's conduct." Dkt. No. 183 at 1–2.

5          In its response, the Government indicates that, after Mr. Shetty filed his motion, the

6   Government obtained two earlier handbooks from Fabric (a revised 2020 version and a 2021

7   version), both of which were in effect while Mr. Shetty worked at Fabric. Dkt. No. 196 at 6. The

8   Government continues:

> To the extent the government seeks to admit any of the handbooks at trial, it
> would establish when the handbook was in effect at Company A and otherwise
> lay a foundation with an appropriate witness to show why the handbook is
> relevant. The government would certainly not claim that the 2022 handbook
> governed Shetty's conduct because it took effect after he was terminated.
> However, the 2022 handbook could still become relevant for other reasons
> depending on arguments presented by defense. Thus, while the parties appear
> to be largely in agreement here, the Court should defer ruling on this issue
> unless and until it arises at trial.

14   *Id.* While the Court is not certain what admissible purpose there may be for this evidence, it

15   accepts this as the Government's agreement that it will not "seek[] to introduce the Fabric

16   employee handbook as evidence of Fabric's policies and procedures that Mr. Shetty was required

17   to follow" (Dkt. No. 183 at 3), while understanding that the Government reserves the right to

18   move outside the presence of the jury to admit the evidence for another purpose if Mr. Shetty

19   opens the door.

20          Accordingly, Mr. Shetty's motion to exclude Fabric's 2022 employee handbook is

21   GRANTED IN PART. The 2022 Fabric employee handbook may not be introduced as evidence of

22   Fabric policies or procedure that governed Mr. Shetty's actions at the time of the alleged

23   conduct. The Court will otherwise RESERVE RULING at this time. Should the government wish to

24   introduce any portion of the 2022 handbook for another purpose arising out of "arguments

presented by defense" (Dkt. No. 6 at 196), the Government SHALL make a motion outside the presence of the jury at that time, explaining the relevance of the evidence and the purpose for which it will be used.

## C.    Motion to Exclude Evidence of Mr. Shetty's Ownership of Hightower (Dkt. No. 185)

Mr. Shetty asks the Court to "exclude arguments and evidence related to his minority ownership in HighTower Treasury pursuant to Federal Rule[s] of Evidence 401, 402, and 403." Dkt. No. 185 at 1.

### 1.    Rules 401 and 402

Mr. Shetty argues that his ownership of Hightower has "little to no probative value" because the government would still argue that Mr. Shetty was guilty of fraud if he had made any unauthorized transfer of Fabric's funds "no matter who benefitted from the transfer." Dkt. No. 185 at 4 (capitalization modified).

Mr. Shetty's position is untenable. Even assuming the Government would consider Mr. Shetty to have committed wire fraud under this hypothetical, this position does not mean that its theory of the crime would be the same under such altered circumstances, or that it is restricted in this actual prosecution only to the evidence it would have in that hypothetical one. Rule 401 does not require that evidence be absolutely necessary, only that it has "any tendency to make a fact [of consequence] more or less probable . . . ." As Mr. Shetty notes, the Government must prove that Mr. Shetty "devised a scheme or plan to defraud *for the purpose of obtaining money or property*." Dkt. No. 185 at 4 (emphasis added) (quoting Ninth Cir. Model Crim. Jury Instruction 15.35 (rev. 2024)). The fact that Mr. Shetty was a part owner of HighTower, and thus stood to gain directly from Fabric's investment, makes it more likely that the "purpose" of his actions was "obtaining money or property." The government will also have to prove that Mr. Shetty's conduct involved "false or fraudulent pretenses, representations, or promises, or omitted

facts." Mr. Shetty's ownership of HighTower is an "omitted fact" the Government is entitled to use to make its case. Of course, the government must also prove, for example, that Mr. Shetty "devised a scheme or plan to defraud," that his statements or omissions were "material," and that he "used an interstate wire communication." Dkt. No. 185 at 4 (quoting Ninth Cir. Model Crim. Jury Instruction 15.35 (rev. 2024)). But evidence need not be relevant to *every* element of a crime, only to *any* fact of consequence in determining the action. Fed. R. Evid. 401. And as a general matter, "[r]elevant evidence is admissible." Fed. R. Evid. 402. That ownership of HighTower is not alone *sufficient* to for the government to prove its case—or, as in Mr. Shetty's hypothetical scenario (*see* Dkt. No. 185 at 4), that the evidence is not *necessary* to prove any element of the crime—does not mean the evidence is not relevant (and the Court finds that it is).

### 2.    Rule 403

Mr. Shetty next argues that the Court should exercise its discretion under Rule 403 to exclude evidence of his ownership of HighTower because its probative value is substantially outweighed by the danger that it will cause unfair prejudice, confuse the issues, and confuse the jury. Mr. Shetty's argument, grounded largely in flawed legal theories that have already been rejected by the Court, are unavailing.

First, Mr. Shetty argues that "ownership evidence creates an unacceptable risk the jury will convict Mr. Shetty for undisclosed self-dealing, which is not a crime." Dkt. No. 185 at 7. Mr. Shetty continues to suggest that his case is governed by *United States v. Skilling*, 561 U.S. 358 (2010), and to both criticize and misrepresent the Court's repeated rejection of this argument.[2] Dkt. No. 185 at 7; *see* Dkt. No. 101 at 7–12; Dkt. No. 113 at 4–10. Mr. Shetty's

---

[2] As the Court has repeatedly observed, *Skilling* "did not disturb the law of traditional fraud." Dkt. No. 101 at 10 (quoting *United States v. Wright*, 665 F.3d 650 (3d Cir. 2012)); Dkt. No. 113 at 6 (quoting Dkt. No. 101 at 10). In *Skilling*, the Supreme Court held that the honest-services fraud statute 18 U.S.C. § 1346 is unconstitutionally vague when applied to self-dealing (and other conduct not involving bribery and kickbacks). While Mr. Shetty's alleged

suggestion that the jury "will struggle to make th[e] distinction" the Court has made between his

case and the facts at issue in *Skilling* is neither here nor there, as this is not what the jury will be

called upon to do. Rather, the jury will be instructed on the elements of wire fraud, the fact that

all elements must be proven beyond a reasonable doubt, and other applicable law. The Court

"presume[s] that jurors follow the jury instructions they are given." *United States v. Ovsepian*,

113 F.4th 1193, 1201 (9th Cir. 2024) (citation modified). As for any risk of prejudice by jurors

who mistakenly believe that self-dealing is inherently criminal, or who believe that self-dealing

should be a crime, the cure for this is limiting instructions, not exclusion. Mr. Shetty argues that

"[n]o limiting instruction can cure this prejudice when the evidence directly implicates non-

criminal conduct that appears criminal to laypeople, or that some people might believe should be

criminal." Dkt. No. 185 at 7. However, Mr. Shetty does not explain why this prejudice is not

curable, and he cites no authority supporting his position. This is exactly the type of prejudice

that jury instructions are presumed to cure.[3]

Mr. Shetty's arguments that evidence of his ownership in HighTower will confuse or

mislead the jury are also unconvincing. Mr. Shetty argues that "ownership evidence will confuse

the issues and mislead the jury," by distracting jurors with the "legally irrelevant fact of

undisclosed self-enrichment" (*id.*) rests on a false premise, because the fact that Mr. Shetty

allegedly stood to enrich himself by the investment in HighTower is not irrelevant. Rather, it is

potential evidence that he acted with the "purpose of obtaining money or property"—an element

of wire fraud that the government must prove. Ninth Cir. Model Crim. Jury Instruction 15.35

(rev. 2024).

---

conduct does not constitute "honest-services fraud, as that theory has been defined by the Supreme Court in *Skilling*, [it] may still constitute money-or-property based wire fraud." *United States v. Avery*, 719 F.3d 1080, 1085 n.3 (9th Cir. 2013).

[3] At Mr. Shetty's request, the Court will give some version of an instruction informing the jury that self-dealing alone does not satisfy the elements of wire fraud.

Mr. Shetty's argument that "the Government will confuse and mislead the jury" with an "impossible fraud theory" involving the cost and carry fees HighTower generated from Fabric's capital because these fees were "property of HighTower" (Dkt. No. 185 at 8) fails as well. First, Mr. Shetty provides no basis for the Court to assume that these fees were Hightower's property if it was not legally in possession of this capital. Second, the cost and carry fees are a key component of the scheme to defraud if, as the Government argues, "Shetty fraudulently obtained the carry and fees by funneling that investment through HighTower to enrich himself with money that [Fabric] would otherwise not have to pay or not agree to pay." Dkt. No. 196 at 9.

Accordingly, the Court finds that the probative value of Mr. Shetty's ownership of HighTower is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or other dangers addressed by Rule 403. Mr. Shetty's motion to exclude this evidence is DENIED.

**D.      Motion to Exclude Opinion Testimony by Fabric's Board Members and Officers (Dkt. No. 186)**

Mr. Shetty seeks the exclusion of "testimony from [Fabric] officers and board members regarding their individual views, opinions, preferences, or feelings about (i) cryptocurrency, (ii) investments, (iii) Shetty's investment in UST, and (iv) the meaning of the investment policy." Dkt. No. 186 at 1. Mr. Shetty argues that "[s]uch testimony is irrelevant under Federal Rules of Evidence 401, 402, and 701, and [that] it would be unfairly prejudicial under Rule 403." *Id.* The Government responds that "[t]he testimony . . . is highly relevant and entirely appropriate evidence." Dkt. No. 196 at 11.

**1.      Rules 401, 402, and 701**

Under Rule 401 (as previously discussed), "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the

1  fact is of consequence in determining the action." Under Rule 402 (also as previously discussed),

2  relevant evidence is, generally speaking, admissible. And under Rule 701(b), when a non-expert

3  is testifying in the form of an opinion, their testimony must be "helpful to clearly understanding

4  the witness's testimony or to determining a fact in issue."

5      Mr. Shetty argues that "board members' personal opinions cannot establish any element

6  of wire fraud under any theory the government has advanced so far," and are therefore irrelevant.

7  Dkt. No. 186 at 2. "Fraudulent intent," Mr. Shetty argues, "must be proven through Shetty's own

8  knowledge, actions, and intent—not through third parties' personal, individual investment

9  philosophies or risk preferences." *Id.* at 3. But Mr. Shetty's argument presupposes that such

10 "philosophies or risk preferences" could have had no conceivable influence on Mr. Shetty's

11 "knowledge, actions, and intent." This is an unreasonable presupposition.

12     The Government asserts that "Shetty was aware of the views of his fellow executives and

13 the board members, and his conscious decision to defy those views shows his bad intent." Dkt.

14 No. 196 at 12. The Court agrees. The extent to which Mr. Shetty knew that his colleagues (i.e.,

15 his fellow corporate officers) and the governors of his employer (i.e., the board members) might

16 have disapproved of what he was doing is relevant, because Mr. Shetty's knowledge of that

17 disapproval (or presumed disapproval) could have reasonably informed his conduct. As the

18 Government argues, "[t]his evidence bears on many other aspects of the case—including, among

19 others, the unauthorized taking of [Fabric's] money and the materiality of Shetty's lies and

20 omissions." *Id.* Indeed, it is a reasonable premise that any person's workplace conduct might be

21 influenced by their awareness that their colleagues would object to a particular course of action.

22 If, as alleged here, a person takes an objectionable action anyway, without informing their

23 colleagues, their awareness of their colleagues' views supports an inference that they possessed

24 an intent to deceive.

But such evidence is relevant only insofar as: (1) it coincides with the corporate officers' and board members' professional roles with Fabric; and (2) Mr. Shetty *knew* about it. As to the first point, "the government agrees with Shetty that witnesses' 'personal cryptocurrency opinions or investment philosophies' are irrelevant." *Id*. "But," the Government continues, "it is entirely appropriate for these witnesses to speak to the views they held *as owners and managers of [Fabric],* because those views, in context, bear on a critical fact in the case: that Shetty's secret transfers to HighTower were unauthorized." *Id.* (emphasis added).

The Court credits Mr. Shetty's point that a corporate board manifests and exercises its authority by way of its "official act[s]," taken as a collective, and not through the individual expressions or assertions of particular members. *See* Dkt. No. 186 at 5. Accordingly, the individually held opinions of board members are not dispositive as to whether Mr. Shetty contravened the Board's authority or violated any company policy. But, as Mr. Shetty points out, the ultimate question is not whether he violated a company policy, but whether he committed wire fraud. *See generally* Dkt. No. 187. To carry its burden, part of what the Government must prove is that Mr. Shetty possessed the "intent to defraud, that is, the intent to deceive and cheat . . . ." Dkt. No. 203 at 48 (agreed portion of proposed jury instruction). Evidence that Mr. Shetty knew that individual officers or board members would have disapproved of a cryptocurrency investment—then secretly made the investment anyway—is probative of his intent to deceive those individuals. In sum, if a board member or other corporate officer would have disapproved of Mr. Shetty's conduct, and Mr. Shetty knew this, then that witness's opinions and the fact that they were known to Mr. Shetty are relevant.

By the other side of the same coin, to the extent that Mr. Shetty was unaware of individual officers' or board members' opinions about cryptocurrency and investment strategy, this evidence is not relevant, because it could not have had any bearing on Mr. Shetty's conduct

1    or intent. Therefore, if the Government intends to adduce evidence of individual corporate

2    officers' and board members' views on cryptocurrency and investment strategy, it must establish

3    that Mr. Shetty knew about those views before engaging in the alleged misconduct.

4        **2.    Rule 403**

5        Rule 403 empowers the Court to "exclude relevant evidence if its probative value is

6    substantially outweighed by a danger of one or more of the following: unfair prejudice,

7    confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

8    cumulative evidence." Mr. Shetty makes three arguments in this regard.

9        First, Mr. Shetty argues that "[b]oard members' testimony about their personal

10    cryptocurrency opinions or investment strategies would unfairly prejudice Shetty by suggesting

11    he committed fraud simply because he chose an investment strategy that some board members

12    personally dislike." Dkt. No. 186 at 7. This is a red herring. The Government responds that it

13    "will not ask [these witnesses] about their purely personal views." Dkt. No. 196 at 12. Rather,

14    the Government intends for these witnesses to "speak to the views they held as owners and

15    managers of [Fabric] . . . ." *Id.* These views, contextualized within the witnesses' professional

16    roles—and assuming they were known to Mr. Shetty—are relevant.

17        Second, Mr. Shetty similarly argues that admitting opinions about Mr. Shetty's specific

18    investment decisions "poses substantial risk that the jury would conflate individual opinions with

19    official corporate policy and convict based on personal disagreement rather than criminal intent."

20    Dkt. No. 186 at 8. Mr. Shetty overstates the risk: it is reasonable to expect a juror to have the

21    intellectual capacity to distinguish between an individual's opinion and an official corporate

22    policy, and Mr. Shetty's counsel can easily highlight such a distinction on cross examination.

23    Regardless, the Government has indicated that the testimony is directed toward the furtive nature

24    of Mr. Shetty's conduct—and, thus, Mr. Shetty's mindset when acting. *See* Dkt. No. 196 at 12

(noting "Shetty's secret transfers to HighTower"); *id.* (noting "the materiality of Shetty's lies and omissions"). Although the Court disagrees with Shetty's analysis on this point, it agrees with his conclusion: witnesses' post-hoc opinions about the financial soundness of Mr. Shetty's specific decision to invest Fabric's funds in Hightower are inadmissible. This is not because these opinions will confuse the jury, but simply because they are irrelevant: backward-looking opinions could not have been known to Mr. Shetty at the time of his alleged conduct and cannot be probative of any element of wire fraud.

Third, Mr. Shetty argues that the testimony would "creat[e] confusion about how corporate policies should be construed and applied," because the jury would be "invite[d] . . . to rely on subjective interpretations rather than the policy's actual terms." Dkt. No. 186 at 9. As discussed above, the Court's position is that a reasonable juror would be able to distinguish between an individual board member's opinion and an official corporate policy, and, in any case, both may be relevant to establishing Mr. Shetty's "intent to deceive." As to Mr. Shetty's assertion that "[t]he jury might incorrectly conclude that individual board members' personal interpretations of corporate policies or their informal 'instructions' based on such interpretations can override official board actions or the plain meaning of written corporate policies" (*id.* at 9), any potential "incorrect conclu[sion]" is easily deflected through cross examination.

Therefore, Mr. Shetty's motion is GRANTED IN PART and DENIED IN PART. Fabric's board members and corporate officers will be permitted to testify as to their opinions about cryptocurrency, investments, and the meaning of the investment policy, but only to the extent they held the opinions in their capacity as board members or officers of Fabric and only to the extent that these opinions were known to Mr. Shetty at the time of the alleged conduct. Opinions unknown to Mr. Shetty, and post-hoc opinions on the financial soundness of the specific investment at issue, are EXCLUDED.

1    **E.    Motion to Exclude Evidence of Violation of Investment Policy (Dkt. No. 187)**

2           Finally, Mr. Shetty asks the Court to "exclude argument and evidence that Mr. Shetty

3    violated Fabric's investment policy." Dkt. No. 187 at 1. Here again, Mr. Shetty argues first that

4    the evidence is irrelevant under Rule 401 and thus inadmissible under Rule 402, then that any

5    probative value is substantially outweighed by the dangers enumerated in Rule 403. *See*

6    *generally id.* The Government opposes the motion. *See* Dkt. No. 196 at 14–17.

7           **1.    Rules 401 and 402**

8           "It is beyond dispute that violation of a bank's internal operating rules or procedures does

9    not necessarily constitute a federal offense, and the government does not contend that it does."

10   *Stoecker*, 920 F. Supp. at 875 (citation modified) (citing *United States v. McCright*, 821 F.2d

11   226, 229 (5th Cir.1987)). It should also be indisputable that actions *which themselves constitute*

12   *federal crimes* are not the only type of actions that can clear the low bar of relevance under Rule

13   401. Here, the Government intends to present evidence that Mr. Shetty's alleged transfer of

14   Fabric funds to HighTower contravened Fabric's investment policy (and that Mr. Shetty knew

15   this). Dkt. No. 196 at 15. Mr. Shetty argues that "a violation of a company policy is irrelevant to

16   every element of wire fraud." Dkt. No. 187 at 2.

17          Mr. Shetty first claims that evidence he violated Fabric's investment policy is not

18   probative of a scheme to defraud or intent to defraud, asserting that Courts have "consistently"

19   recognized this principle. Dkt. No. 187 at 3. But the three cases Mr. Shetty cites in support of

20   this assertion are all easily distinguishable. First, Mr. Shetty quotes a hypothetical posited in

21   *United States v. Clark*, 765 F.2d 297, 303 (2d Cir. 1985) as part of its examination of the

22   "misapplication" prong of 18 U.S.C. § 656:

23                  [A] bank's decision solely for political reasons not to permit loans
                    to companies doing business with the apartheid government of
24                  South Africa would hardly justify criminal prosecution under

§ 656 of an officer who violated that policy even though it might subject him to discharge by the bank.

*Id.* But Mr. Shetty has stripped this analysis of its context, which, in the Court's view, speaks for itself:

> The objective of § 656, both before and after it was revised in 1948, has always been to protect federally-insured banks against *economic* loss or the threat of *economic* loss attributable to misconduct on the part of their employees, rather than to insure that banks are operated in accordance with their own internal administrative rules or policies. For instance, a bank's decision solely for political reasons not to permit loans to companies doing business with the apartheid government of South Africa would hardly justify criminal prosecution . . . [I]t is evident that to constitute "misapplication" within the meaning of the statute the bank officer's conduct must involve some risk of pecuniary loss to the bank, not simply the violation of a rule or policy not designed to protect the bank's assets against loss.

*Id.* (internal citation omitted). The policy at issue here was designed to protect Fabric's assets, and is less like the hypothetical above and more like the real Second Circuit cases the *Clark* court contrasted it with: *United States v. Iannelli,* 461 F.2d 483 (2d Cir.), *cert. denied,* 409 U.S. 980 (1972), and *United States v. Fortunato,* 402 F.2d 79 (2d Cir.1968), *cert. denied,* 394 U.S. 933 (1969). *Clark*, 765 F.2d at 302–303. In both of these cases, evidence was presented of a bank employee's violation of a bank policy.

As for *Stoecker,* the district court that excluded evidence of a company violation in that case did so because it was not relevant to the purpose for which it was offered: as "direct proof of an element of the [bank fraud] statute: that this particular act was corrupt" (where "corrupt" was interpreted to require, in part, that an act be "performed with the purpose of accomplishing either an *unlawful* end or result or accomplishing some otherwise lawful end or result by any *unlawful* method or means"). *Stoecker*, 920 F. Supp. at 875 (citation modified). The *Stoecker* court did not consider whether a policy violation might have been direct or circumstantial

1    evidence relevant to knowledge, intent, or the existence of a scheme to defraud, because the

2    government did not offer it for that purpose. *See generally id.* Further, the Court notes here that

3    the purported quotation Mr. Shetty offers from *Stoecker*, that violations "themselves were not

4    crimes," does not appear anywhere in the text. *Compare* Dkt. No. 187 at 3, *with Stoecker* 920 F.

5    Supp. 867.

6         Mr. Shetty's citation to *United States v. McCright*, 821 F.2d 226 (5th Cir. 1987) similarly

7    accomplishes little. Mr. Shetty quotes the *McCright* court's observation that "violations of . . .

8    internal operating procedures do not *alone* create offenses prosecutable in federal court," but this

9    is undisputed. Dkt. No. 187 at 4 (emphasis added) (quoting *McCright*, 821 F.2d at 229). The

10   *McCright* opinion does not discuss relevance, admissibility, prejudice, or the exclusion of

11   evidence at all.

12        The Court is more convinced by the Government's citation to Ninth Circuit case law that

13   professional misconduct can be relevant evidence even if it does not alone constitute a crime, or

14   even an element of a crime:

15          [W]hile improper accounting requiring a restatement does not, by
            itself, establish materiality, it can be used as evidence. . . . Here, the

16          Government did not argue that Brocade's financial restatement alone,
            which was required because the Company's accountants found

17          material discrepancies in the financials, rendered Reyes criminally
            culpable. . . . The jury was properly instructed as to the materiality

18          requirements . . . and is presumed to follow those instructions.

19   *United States v. Reyes*, 660 F.3d 454, 470 (9th Cir. 2011) (internal citations omitted)

20   (cited by Dkt. No. 196 at 15). The Government's citation to *United States v. Pacilio*, 85 F.4th

21   450, 465 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 1033, (2024), is also persuasive. *See* Dkt.

22   No. 196 at 15. In *Pacilio*, the Seventh Circuit fount that evidence that the defendants violated

23   company policies and the rules of the Chicago Mercantile Exchange ("CME") was relevant

24   because the "defendants knew of the CME rules," and testimony of their knowledge and

violations was "relevant to demonstrate the defendants' intent to manipulate the market by

placing orders with the intent to cancel, *contrary to the expectation of market participants*." 85

F.4th at 465 (emphasis added). Evidence that Mr. Shetty violated Fabric policies, allegedly as

part of a scheme to defraud the company with transfers and investments that contravened its

expectations and consent, is relevant to his intent in a very similar way.

Mr. Shetty argues that the fact that his transfer of Fabric funds was unauthorized is

irrelevant because a policy violation cannot "transform" non-criminal self-dealing into a crime:

"Adding self-dealing to a policy violation does not transform non-criminal conduct into criminal

conduct—it just adds another layer of non-criminal rule breaking." Dkt. No. 187 at 5. This

argument fails as a matter of logic. Crimes are composed of elements, of which any single

element independently might not be criminal.[4] Nevertheless, there may well be circumstances

where multiple "layer[s] of non-criminal rule breaking" together satisfy the elements of a crime.

More to the point, however, no one but Mr. Shetty is suggesting or endorsing the facile

formulation of "[policy violation] plus self-dealing equals wire fraud." *Id.* Many acts of self-

dealing likely violate employer policies without being part of a scheme to defraud, or without

otherwise satisfying the wire fraud elements. However, where all elements are satisfied, as the

Government alleges and will have to prove, both policy violations and self-dealing may be

relevant, as both rule-breaking and an expectation of personal gain may have a tendency to make

one or more elements of wire fraud more likely.

Mr. Shetty's final "relevance" argument is not clearly related to the issue of relevance,

but warns of a slippery slope:

> Accepting a theory that violations of company policies can be
> fraud (at least when accompanied by self-dealing) . . . would

---

[4] In the case of wire fraud, the independent elements are not criminal. As the jury will be instructed (*see* Dkt. No. 203 at 48), *all* elements must be present for a finding that the crime has occurred.

> effectively federalize corporate governance disputes and chill
> legitimate business decision-making. Corporate officers would
> face the impossible choice between conservative decision-making
> that avoids any policy ambiguity and aggressive decision-making
> that maximizes shareholder value but risks criminal prosecution.

Dkt. No. 187 at 6–7. This concern is overstated, as the "aggressive decision-making" Mr. Shetty

describes has little in common with the conduct he is accused of (which the Court has no

hesitation in discouraging). Mr. Shetty is not alleged to have acted in an area of "policy

ambiguity," but to have violated a policy intentionally, unambiguously, and—most

importantly—*as part of a scheme to defraud*.[5] Corporate officers who violate their employers'

rules in the absence of such a scheme are not committing wire fraud. Furthermore, here, the

Government alleges that Mr. Shetty intended to devise "a scheme to defraud *and* to obtain

money and property . . . by means of materially false and fraudulent pretenses, representations,

and promises, *and* the omission and concealment of material facts." Dkt. No. 1 at 1 (emphases

added). By contrast, corporate officers who violate their employer's rules in the absence of all

these additional elements are not committing wire fraud, and the Court sees no reason to fear

their prosecution. To mitigate this concern, however, the Court will instruct the jury that

violation of a company policy alone does not constitute wire fraud.

### 2. Rule 403

The relevant evidence of Mr. Shetty's policy violation will not be excluded under Rule

403 for the same reasons as other relevant evidence discussed above. *See supra* Sections III.A.2,

III.B, III.C.2, III.D.2. None of the concerns raised by Mr. Shetty have been shown to

significantly outweigh the probative value of this evidence.

Accordingly, Mr. Shetty's motion to exclude this evidence is DENIED.

---

[5] And, obviously, Mr. Shetty's alleged actions did not "maximize shareholder value."

#### IV.    CONCLUSION

Accordingly, the Court orders as follows:

(1)    The Court DENIES Mr. Shetty's Motion to Exclude Evidence of Subsequent Investment Performance (Dkt. No. 182).

(2)    The Court GRANTS IN PART and RESERVES IN PART Mr. Shetty's motion to exclude Fabric's 2022 employee handbook (Dkt. No. 183).

(3)    The Court DENIES Mr. Shetty's Motion to Exclude Evidence of Mr. Shetty's Ownership of HighTower (Dkt. No. 185).

(4)    The Court GRANTS IN PART AND DENIES IN PART Motion to Exclude Opinion Testimony by Fabric's Board Members and Officers (Dkt. No. 186)

    (a)    Fabric's board members and corporate officers MAY testify as to their opinions about cryptocurrency, investments, and the meaning of the investment policy, but only to the extent they held the opinions in their capacity as board members or officers of Fabric and only to the extent that these opinions were known to Mr. Shetty at the time of the alleged conduct.

    (b)    Opinions unknown to Mr. Shetty, and post-hoc opinions on the soundness of the specific investment at issue, are EXCLUDED.

(5)    The Court DENIES Mr. Shetty's Motion to Exclude Evidence of Violation of Investment Policy (Dkt. No. 187).

Dated this 15th day of October, 2025.

Tana Lin
United States District Judge