UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br> v.<br>NEVIN SHETTY,<br><br>     Defendant. | CASE NO. 2:23-cr-00084-TL<br><br>ORDER ON GOVERNMENT'S MOTIONS IN LIMINE |

This matter is before the Court on the Government's Motions in Limine. Dkt. Nos. 181, 184. Having considered the motions, Mr. Shetty's responses (Dkt. No. 195), and the relevant record, and having held oral argument (Dkt. No. 211), the Court rules on each motion as set forth in this Order.

**I.  BACKGROUND**

The Court assumes familiarity with the facts of this case. *See* Dkt. No. 1 (Indictment); Dkt. No. 101 at 2–4 (Order on Motion to Dismiss).

## II.     LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted), *cert. denied*, 556 U.S. 1252. Federal Rule of Criminal Procedure 12(b)(3)(C) requires parties to make any motions for the suppression of evidence before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Motions in limine may also be made to admit evidence. *See, e.g.*, *United States v. Harris*, 842 F. App'x 28, 31 (9th Cir. 2020) (affirming district court's rulings in limine allowing government to present certain summary testimony and exhibits). The practice of issuing pre-trial evidentiary rulings in advance of trial has emerged as part of a "district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also* Fed. R. Evid. 103 ("Rulings on Evidence").

In ruling on motions in limine, the Court is generally guided by Federal Rules of Evidence ("FRE") 401, 402, and 403. *See* Fed. R. Evid. 401 (defining relevant evidence), Fed. R. Evid. 402 (relevant evidence is generally admissible), Fed. R. Evid. 403 (providing for exclusion of relevant evidence when probative value is substantially outweighed by certain other considerations). A motion in limine to exclude evidence is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021) (quoting *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). A motion in limine should not be used to resolve factual disputes or weigh evidence. *Id.*; *accord Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862, 2021 WL 717540, at *1 (W.D. Wash. Feb. 24, 2021).

A court's ruling on a pre-trial motion in limine is preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change [their] mind during the course of a trial."); *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (district court may change its in limine ruling at trial if testimony brings unanticipated facts to the court's attention). "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

The primary rules guiding the Court's evidentiary rulings provide as follows:

> **FRE 401.  Test for Relevant Evidence**
> Evidence is relevant if:
>     (a)    it has any tendency to make a fact more or less probable than it would be without the evidence; and
>     (b)    the fact is of consequence in determining the action.
>
> **FRE 402.  General Admissibility of Relevant Evidence**
> Relevant evidence is admissible unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute;
> - these rules; or
> - other rules prescribed by the Supreme Court.
>
> Irrelevant evidence is not admissible.
>
> **FRE 403.  Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons**
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Exclusion under FRE 403 is discretionary, and The Ninth Circuit, recognizing that "[r]elevant evidence is inherently prejudicial," instructs district courts to be "cautious and sparing" in excluding evidence under this rule because its "major function is limited to excluding

matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983))." "[U]nfair prejudice means 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id* (quoting Advisory Committee Notes to FRE 403); *accord United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003).

In short, evidence is generally admissible at trial if it is relevant, unless another law or rule prohibits its admission, and unless the probative value of the evidence is substantially outweighed by such unwanted dangers as unfair prejudice or misleading the jury.

### III.  DISCUSSION

**A.    Motion to Exclude Irrelevant Information About Certain Witnesses**

In a sealed motion, the Government asks the Court to exclude certain information about two of its witnesses on the grounds that the information is irrelevant and unduly prejudicial. *See generally* Dkt. No. 181. Mr. Shetty does not oppose this motion. Dkt. No. 195 at 1 n.1.

Therefore, the Court GRANTS this motion, with the caveat that Mr. Shetty may move, outside the presence of the jury, for the Court to revisit this ruling if the witnesses' testimony makes the excluded information relevant.

**B.    Motion to Admit Testimony Regarding Mr. Shetty's Intention to Plead Guilty**

The Government intends to present witness Milan Lathia to testify, at least in part, about several statements Mr. Shetty allegedly made to him during a lunch in August 2023. *See* Dkt. No. 195-1 at 3 (Milan Lathia Letter); Dkt. No. 195-2 (Agent Beckley Report). The Government moves to admit this testimony. Dkt. No. 184 at 3–10. Mr. Shetty opposes the motion. Dkt. No. 195 at 1–4.

As a preliminary matter, the evidence in question is not hearsay because it consists of alleged statements made by an opposing party. Fed. R. Evid. 801(d)(2)(A). Similarly, the alleged statements to Mr. Lathia are not inadmissible under FRE 410 (as statements related to plea discussions) because the statements were not made to an attorney for the prosecuting authority, but rather to a personal acquaintance. *See* Fed. R. Evid. 410(a)(4); *see also United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) (affirming admission of defendant's statements to prison counselor indicating willingness to plead guilty because "the counselor was not empowered to negotiate on behalf of the government"); *United States v. Mejia*, 655 F.3d 126, 135 (2d Cir. 2011) (affirming admission of defendant's expression of desire to plead guilty in phone call with his sister because "Rule 410 does not apply").

Additionally, the Court will not reserve on this motion until after hearing from Mr. Lathia outside the presence of the jury about what was said in the conversation with Mr. Shetty. Mr. Shetty has been provided with a letter written by Mr. Lathia himself, which outlines what Mr. Lathia claims was said in his conversation with Mr. Shetty. Additionally, FBI Agent Beckley Krista Lee provided a written summary of what Mr. Lathia told her during her interview of him. Dkt. No. 195-2. Agent Beckley's report does not contradict statements from Mr. Lathia's written letter, but instead provides supplemental information about what Mr. Lathia claimed Mr. Shetty told him. *Id*. If Mr. Shetty sees inconsistencies between these accounts, or other reasons to doubt Mr. Lathia's statements, he may attempt to use these to impeach him during cross-examination. Mr. Shetty can also choose to, but of course is not required to, testify to provide additional context to the conversation between him and Mr. Lathia.

Subject to these initial observations, the Court addresses the alleged statements in turn.

//

//

**1.      Mr. Shetty's Alleged Statement About Plans to Plead Guilty**

In his letter, Milan Lathia told the Government that Mr. Shetty said he planned to plead guilty in the present case. Dk. No. 195-1 at 3. The Government proposes admitting this statement as evidence of Mr. Shetty's intent and consciousness of guilt. Dkt. No. 184 at 3. This statement is relevant under FRE 401 because the alleged fact that Mr. Shetty stated he planned to plead guilty tends to make it more probable that he committed the underlying offense.

Mr. Shetty asserts that he told Mr. Lathia that he intended to plead guilty for reasons unrelated to guilt. Dkt. No. 195 at 1–2 (Response to Government's Motions in Limine). In support of this assertion, Mr. Shetty cites Mr. Lathia's written statement to the Government. *Id*. (citing Dkt. No. 195-1). This assertion is an incorrect recitation of the written statement. Nowhere in the written statement does Mr. Lathia write that Mr. Shetty said he planned to plead guilty for reasons unrelated to guilt. *See generally* Dkt. No. 195-1. Rather, Mr. Lathia reports that Mr. Shetty told him: (1) he planned to plead guilty; (2) his sentence would likely be half of the plea deal; (3) he would get out of prison in a couple years for good behavior; and (4) he was going to write a memoir about his experience. *Id*. at 3. The letter does not indicate that these were the **reasons** to plead guilty, rather the letter simply states that Mr. Shetty said he was "planning to plead guilty" and communicated his beliefs as to how the rest of the process would play out. *Id*. Additionally, Mr. Shetty asserts that these alleged statements were not an admission of guilt, but rather Mr. Shetty considering whether to avoid "rolling the dice" at trial to reduce any potential sentence. Dkt. No. 195 at 2. However, nowhere in Mr. Lathia's letter does it reference Mr. Shetty saying he planned to plead guilty to avoid taking a risk at trial. Dkt. No. 195-1.

Additionally, the probative value of an admission from Mr. Shetty of an intent to plead guilty is not substantially outweighed by potential unfair prejudice under FRE 403. Hearing that

Mr. Shetty told an acquaintance that he planned to plead guilty in this case does not steer the jury to decide on an improper basis. Instead, the fact that Mr. Shetty, at one point, allegedly planned to plead guilty provides highly relevant evidence that the jury can consider when deciding the ultimate issue. *See, e.g.*, *United States v. Ross*, 588 F. Supp. 2d 777, 784–85 (E.D. Mich. 2008) (statements defendant made that he "hoped they sold protein supplements in federal prison" and he wanted to "hurry up and get to [prison] so he could start lifting weights" were relevant and not unfairly prejudicial, as they were evidence of the "defendant's guilty knowledge"). Mr. Shetty generally asserts that all the testimony by Mr. Lathia regarding Mr. Shetty's alleged statements will be "highly and unfairly prejudicial" (Dkt. No. 195 at 2), but he does not actually provide any reason the testimony will be *unfairly* prejudicial. Simply saying something does not make it so.

Therefore, the Court GRANTS the Government's motion to admit evidence that Mr. Shetty told Mr. Lathia that he planned to plead guilty.

### 2.    Mr. Shetty's Alleged Statement About Length of Sentence

The Government moves to admit evidence that Mr. Shetty told Mr. Lathia that he believed he would be sentenced to a term that was half of what he might otherwise have received because judges are lenient on financial crimes. Dkt. No. 184 at 3. Testimony about what type of sentence Mr. Shetty believed he would receive and why is barred because jurors are not to consider punishment. Model Crim. Jury Inst. 9th Cir. ("Ninth Circuit Instructions") 6.22 (2024). The Ninth Circuit Instructions provide, "[t]he punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt." *Id*. Additionally, case law provides that it is inappropriate for a jury to consider or be informed of the punishment that comes from a verdict. *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no

sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Lynch*, 903 F.3d 1061, 1081 (9th Cir. 2018) (rejecting a challenge to Ninth Circuit Instruction 6.22). Despite moving to admit evidence related to punishment here, the Government acknowledges in its own briefing that testimony about punishment could be improper. Dkt. No. 202 at 14 (United States' Trial Brief). Mr. Shetty's statement about the sentence he might receive may inappropriately cause the jury to consider punishment.

After hearing the Court's ruling at oral argument, Mr. Shetty's counsel informed the Court that Mr. Shetty may wish to introduce this information to provide additional context as to anticipated testimony from Mr. Lathia that Mr. Shetty intended to plead guilty. Counsel acknowledged that should they decide to conduct cross-examination in that way, this might open the door to the Government inquiring about excluded punishment-related statements on re-direct.

Therefore, the Court DENIES the Government's motion to admit evidence that Mr. Shetty stated he believed he would be sentenced to a term that was half of what he might otherwise have received because judges are lenient on financial crimes.

### 3. Mr. Shetty's Alleged Statement About Prison

The Government moves to admit evidence that Mr. Shetty said he believed he would be released from prison early for good behavior and that he expected to serve his sentence in a minimum-security facility. Dkt. No. 184 at 3; *see* Dkt. No. 195-2 at 3. These statements regarding being sent to prison and the potential length of a sentence may inappropriately cause the jury to consider punishment.

After hearing the Court's ruling at oral argument, Mr. Shetty's counsel informed the Court that Mr. Shetty may wish to introduce this information to provide additional context as to anticipated testimony from Mr. Lathia that Mr. Shetty intended to plead guilty. Counsel

acknowledged that should they decide to conduct cross-examination in that way, this might open the door to the Government inquiring about excluded punishment-related statements on re-direct.

Therefore, for the same reasons stated in Section III.B.2, the Court DENIES the Government's motion to admit evidence that Mr. Shetty believed he would be released from prison early for good behavior.

### 4. Mr. Shetty's Alleged Statement About Memoir

The Government moves to admit evidence that Mr. Shetty expected to write a memoir about his experience. Dkt. No. 184 at 3. This particular statement is not necessarily evidence of intent and consciousness of guilt and does not seem particularly relevant to whether Mr. Shetty is, in fact, guilty of wire fraud.

Therefore, the Court DENIES the Government's motion to admit evidence that Mr. Shetty expected to write a memoir about his experience.

### 5. Mr. Shetty's Alleged Statement About Corruption at Fabric

The Government moves to admit evidence that Mr. Shetty told Mr. Lathia that he stole from Fabric because he believed that Fabric was corrupt, and he suspected others at Fabric were stealing money too. Dkt. No. 184 at 3. This evidence is relevant under FRE 401 and goes to Mr. Shetty's intent and consciousness of guilt. For the same reasons stated in Section III.B.1., these statements are not unduly prejudicial. Mr. Shetty is correct that should the Government elicit this testimony, Mr. Shetty is entitled to offer evidence that Mr. Lathia is either lying or mistaken (Dkt. No. 195 at 9), but this will be limited to evidence *about what Mr. Shetty said to Mr. Lathia*. *See infra* Section III.E.

Therefore, the Court GRANTS the Government's motion to admit evidence that Mr. Shetty told Mr. Lathia that he stole from Fabric because he believed that Fabric was corrupt, and he suspected others at Fabric were stealing money too.

### 6. Mr. Shetty's Alleged Statement About Plans with HighTower

The Government moves to admit evidence that Mr. Shetty told Mr. Lathia that his plan with HighTower had been to make money for himself by investing Fabric's money, and then to give some return to Fabric, but that TerraUSD and Luna crashed before he could cash out for himself. Dkt. No. 184 at 3. This evidence is relevant under FRE 401 because statements by Mr. Shetty that he invested Fabric's money for the benefit of his own personal company tend to make it more likely Mr. Shetty committed the underlying offense. For the same reasons stated in Section III.B.1., these statements are not unduly prejudicial.

Therefore, the Court GRANTS the Government's motion to admit evidence that Mr. Shetty told Mr. Lathia that his plan with HighTower had been to make money for himself by investing Fabric's money, and then to give some return to Fabric, but that TerraUSD and Luna crashed before he could cash out for himself.

### C. Motion to Admit Transcripts of Mr. Shetty's Virtual Meetings with Representatives of Meow, Compound Treasury, Katana, and Origin Protocol

The Government moves for the admission of computer-generated transcripts of meetings between Mr. Shetty and representatives of various DeFi companies. Dkt No. 184 at 5. The government asserts that these transcripts were recovered from Mr. Shetty's computer and created using an application called Tactiq. *Id.* The Government asserts that this evidence is admissible under Federal Rules of Evidence 104(a), 801(c)(2) and (d)(2)(A), and 901(b)(1) and (4). *Id.* at 8. Mr. Shetty opposes the motion and asserts that the transcripts do not pass the bar set by Federal Rules of Evidence 702, 801, 901. Dkt. No. 195 at 4–8. Both Parties cite to case law in support of their positions. Additionally, Mr. Shetty provides information from the Committee on Rules of Practice & Procedure's newly drafted and approved Federal Rule of Evidence, Rule 707.

The Court believes additional information is necessary to determine whether the proper foundation can be established for admission of the transcripts and has set a pre-trial evidentiary hearing on this issue in the event the Parties do not agree that a declaration from a Tactiq representative will provide sufficient information for the Court to resolve this issue on the papers.

Therefore, for the reasons stated in the Pre-Trial Conference, the Court RESERVES RULING on the Government's motion to admit transcripts from meetings with representatives from Meow, Compound Treasury, Katana, and Origin Dollar.

### D.  Motion to Exclude References to Alternative Civil Remedies

The Government moves to exclude evidence that Fabric or the Government could have sought alternative civil remedies outside of criminal prosecution. Dkt. 184 at 10. Mr. Shetty asserts that this motion is moot because "[t]he Court previously granted the government's motion to exclude such expert testimony." Dkt. No. 195 at 9 (citing Dkt. No. 103 at 23–24).

Whether the Government or Fabric could have pursued civil remedies against Mr. Shetty as an alternative to criminal prosecution is irrelevant under FRE 401. Potential civil remedies are irrelevant because the fact that the Government or Fabric have civil remedies available to them does not tend to make the underlying allegations more or less probable than they would be without evidence of civil remedies. In fact, including evidence of the Government's or Fabric's potential civil remedies would encourage jury nullification. *See United States v. DeMuro*, 677 F.3d 550, 565 (3rd Cir. 2012) (affirming exclusion of evidence about possibility of civil resolution in tax case because it would encourage jury nullification "by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally").

As to Mr. Shetty's assertion regarding mootness, the Court's previous order specifically excluded proposed expert testimony by Stuart Weichsel and Richard Painter. While that expert

testimony would have discussed alternative civil remedies, the Court makes clear in this order that *no* references to alternative civil remedies will be admitted at all—whether through Government or Defense witnesses.

Therefore, the Court GRANTS the Government's motion to exclude evidence of alternative civil remedies.

### E. Government's Motion to Exclude Evidence of or References to Other Misconduct by Employees of Fabric

The Government moves to prevent Mr. Shetty from referencing or introducing evidence of other misconduct that Mr. Shetty claims took place at Fabric. Dkt. No. 184 at 10. Mr. Shetty opposes the motion. Dkt. No. 195 at 9.

Evidence that other employees, including executives who make company policies, also committed fraudulent acts has no tendency to show that a defendant's acts were innocent. *United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007). Therefore, the Court agrees that evidence of general misconduct by others is irrelevant under FRE 401.

However, if misconduct is related to the investment policy in particular, such that it would tend to show that the policy was not the actual or effective policy of the company because, for example, none of the executives or board members followed it, that evidence would be relevant. This is because such a showing could bring Mr. Shetty's conduct back within the realm of an official act that, notwithstanding undisclosed self-dealing, does not satisfy the elements of wire fraud.

At oral argument, the Court inquired of Mr. Shetty's counsel as to what type of misconduct by other Fabric employees he anticipated offering as evidence. Mr. Shetty's counsel informed the Court that the other misconduct was related to violations of Fabric's conflict-of-interest policy, not its investment policy. Based upon the information available to the Court at

this time, misconduct by other Fabric employees based on conflicts of interest appears to be irrelevant under FRE 401, and therefore is not admissible as a general matter.

Finally, as Mr. Shetty points out, "misconduct" could encompass topics that may be proper impeachment evidence. Dkt. No. 195 at 9. *See* Federal Rule of Evidence 608(b) (allowing evidence of certain types of misconduct to impeach a witness's credibility). At the pretrial conference, the Court requested that, if a situation arises in which Mr. Shetty may wish to present misconduct evidence for impeachment purposes, he raise the issue with the Court outside the presence of the jury. Therefore, given the information available at this time, the Court GRANTS the Government's motion to exclude evidence of or reference to misconduct by other employees of Fabric. However, the Court's ruling on this motion in limine is preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See e.g. Ohler*, 529 U.S. at 758 n.3.

**F.   Motion to Exclude Evidence of Fabric's Tax Records**

The Government moves to prevent Mr. Shetty from introducing Fabric's tax records. Dkt. No. 184 at 11–12. Mr. Shetty opposes the motion. Dkt. No. 195 at 10.

The Government asserts that Fabric's tax records are irrelevant under FRE 401 and, thus, should be excluded at trial. Dkt. No. 184 at 11. Specifically, the Government wants to exclude information about how Fabric classified its $35,000,000 loss on its tax returns. *Id*. This information is relevant to the ultimate question of whether Mr. Shetty committed wire fraud because if Fabric classified this loss as an investment loss on its tax returns, that tends to make it more probable than it would be without the evidence that the transfers at issue in this case were indeed investments on the company's behalf, perhaps made by Mr. Shetty within his authority as CFO. This fact is of consequence because, if Mr. Shetty made these transfers to invest within his official authority, he did not make them "to carry out an essential part" of "a scheme or plan to

defraud for the purpose of obtaining money or property," as the Government must prove. Ninth Circuit Instruction 15.35.

The Government also asserts that even if the Court finds this information to be relevant, the evidence should still be excluded under FRE 403 because the "probative value is outweighed by unfair prejudice, risk of confusion, waste of time, and misleading of the issues." *Id*. The Government goes on to say that allowing this evidence would cause a substantial detour at trial and that Fabric's tax preparer would need to testify as to the reasons it identified the loss the way it did. *Id*.

The question under FRE 403 is not just whether the probative value of evidence is outweighed by unfair prejudice, risk of confusion, waste of time, and misleading of the issues, it is whether the probative value is *substantially* outweighed by these concerns. Fed. R. Evid. 403. Here, the probative value of the classification of $35,000,000 as an investment loss on Fabric's tax returns is not substantially outweighed by unfair prejudice, risk of confusion, waste of time, and misleading of the issues. There is no unfair prejudice by admitting tax information related to the $35,000,000 loss because it is a contradictory representation that the alleged victim made to the Internal Revenue Service that a jury should be able to consider.

Admitting this evidence may give rise to some initial confusion, but: (1) that confusion will be temporary and can be alleviated by Fabric's tax preparer explaining why the loss was qualified the way it was on the tax records; and (2) this brief confusion does not substantially outweigh the probative value of admitting potentially exculpatory evidence. The Government intends to call numerous other Fabric employees as witnesses. Therefore, it is the Government's burden to call Fabric's tax preparer as well. Further, there is no risk of waste of time, or misleading the issues because how the alleged victim classified this major loss to the IRS is relevant to at least one element the Government must prove.

1   Lastly, Mr. Shetty has a right to put on a defense. If Mr. Shetty is asserting that this was
2   an investment loss, while the Government asserts it is embezzlement, then evidence that Fabric
3   classified the $35,000,000 as an investment loss rather than embezzlement is something
4   Mr. Shetty has a right to raise at trial. Disallowing this evidence would certainly infringe on Mr.
5   Shetty's right to put on a defense.
6   Therefore, the Court DENIES the Government's motion to exclude Fabric's tax records.

### IV. CONCLUSION

Accordingly, the Court orders as follows:

(1) The Court GRANTS the Government's motion to exclude certain evidence related to two of its witnesses (Dkt. No. 181).

(2) The Court GRANTS IN PART and DENIES IN PART the Government's motion (Dkt. No. 184 § I) to admit testimony by Mr. Lathia about certain statements allegedly made to him by Mr. Shetty, as follows:

(a) Mr. Lathia **may** testify about statements that Mr. Shetty planned to plead guilty.

(b) Mr. Lathia **may not** testify about statements that Mr. Shetty believed he would be sentenced to a term that was half of what he might otherwise have received because judges are lenient on financial crimes.

(c) Mr. Lathia **may not** testify about statements that Mr. Shetty believed he would be released from prison early for good behavior.

(d) Mr. Lathia **may not** testify about statements that Mr. Shetty expected to serve his sentence in a minimum-security facility and write a memoir about his experience.

   (e) Mr. Lathia **may** testify about statements that Mr. Shetty stole from Fabric because he believed that Fabric was corrupt, and he suspected others at Fabric were stealing money too.

   (f) Mr. Lathia **may** testify about statements that Mr. Shetty's plan with HighTower had been to make money for himself by investing Fabric's money, and then to give some return to Fabric, but that TerraUSD and Luna crashed before he could cash out for himself.

  (3) The Court RESERVES on the Government's motion (Dkt. No. 184 § II) to admit the transcripts from Mr. Shetty's meetings with representatives from Meow, Compound Treasury, Katana, and Origin Dollar.

  (4) The Court GRANTS the Government's motion to exclude alternative civil remedies (Dkt. No. 184 § III).

  (5) The Court GRANTS the Government's motion to exclude evidence of or reference to misconduct by other Fabric employees (Dkt. No. 184 § IV).

  (6) The Court DENIES the Government's motion to exclude Fabric's tax records (Dkt. No. 184 § V).

Dated this 16th day of October, 2025.

*[signature]*

Tana Lin
United States District Judge