The Honorable Tana Lin

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    UNITED STATES OF AMERICA,

10                    Plaintiff,

11              v.

12    NEVIN SHETTY,

13                    Defendant.

14

15

NO. CR23-084 TL

**MOTION FOR PROTECTIVE ORDER
RE: MEDICAL INCIDENT**

**FILED UNDER SEAL**

Note on Motion Calendar:
November 14, 2025

16

### I.    INTRODUCTION

17

18      On Thursday, October 30, a Seattle FBI agent ("Agent 1") suffered ███

19 ████████████████████████████████████████████████████████

20 ██████████████ The agent did not testify in this trial but performed some work on

21 the case.

22      During ██████████████, Agent 1 made certain statements that the

23 government has disclosed to the defense, and that are attached to this motion. Agent 1

24 made most of the statements in his home in the presence of officers who responded to the

25 emergency, and these statements were recorded on body cameras. Because the statements

26 and camera footage  arise out of a highly sensitive and personal ██████████████,

27 the government is seeking a protective order that prevents the public disclosure of

Motion for Protective Order - 1
*U.S. v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

information relating to ████████, including all statements that Agent 1 made during that ███. The defense has indicated that it will agree not to publicly disclose Agent 1's identity, but will not agree to file under seal other information relating to the incident.

## II.    BACKGROUND

**A.    Agent 1's ████████ Incident**

Special Agent Krista Beckly is the case agent for this investigation. Between April and August 2025, ████████████████, and Agent 1 was assigned to assist with the case. In addition, Agent 1 also assisted with some witness interviews and other tasks during trial.

On Thursday, October 30, Agent 1 reported that ████████ and would not be able to assist with the trial that day. Agent 1 reported to his supervisor that he had a chain of custody document that needed to be delivered to Special Agent Beckley, and provided it to the supervisor. Agent 1 said that Special Agent Beckley had asked him to change the time on the form. The chain of custody form is attached as Exhibit 1.

Later on October 30, Agent 1's supervisor and another FBI supervisor visited Agent 1 at his home to check on his well-being. King County Sheriff's Deputies, some of whom were wearing body-worn cameras, reported to the scene.  During that visit, Agent 1 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Agent 1 also made statements relevant this case. Specifically, he said that SA Beckley "has to lied in her trial . . . because I had that freak out and I couldn't testify in my case and [unintelligible] my case." He later said that he told his supervisor "that Krista had to lie today."

Motion for Protective Order - 2
*U.S. v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    The Government's Efforts to Disclose Relevant Information**

FBI reported Agent 1's ███████████ incident to United States Attorney's Office management on the evening of October 30. The USAO asked FBI to obtain the body camera footage from King County. The USAO asked FBI to prepare two reports: one report disclosing the statements that were not recorded on body camera footage, and one report, based on a forthcoming review of the camera footage, that documented the statements relevant to the case that were recorded on camera.

On the morning of October 31, the AUSAs notified defense counsel that Agent 1 had experienced a ███████████ incident. The AUSAs explained that the office was gathering additional information about the incident. They also provided counsel with a list of the interviews that Agent 1 participated in.

Later that day, FBI provided the report documenting the unrecorded statements to the USAO. *See* Exhibit 2 The government produced that report to the defense later that day. On the afternoon of Saturday, November 1, defense counsel requested a telephone conference to ask the government questions about the incident. The government requested that counsel list the questions in an email.  At 12:50am on November 2, counsel sent the government a list of 150 questions about the incident.

On the morning of November 2, the government asked defense counsel to agree to a protective order providing that, until further order of the Court, any material the government discloses relating this incident must be filed under seal. Counsel would not agree to these terms, but stated he would agree not to disclose Agent 1's identity, along with certain other limitations.  *See* Exhibit 4.

Also on November 2, the FBI provided the USAO with the second report requested by the USAO, which contains Agent 1's verbatim statements relating to this case as drawn from the body camera footage. *See* Exhibit 5. Later on November 2, Special Agent Beckley wrote and produced a report describing her interactions with Agent 1 surrounding the chain of custody issue.  *See* Exhibit 6.

### III.    DISCUSSION

The materials at issue describe a tragic and highly sensitive ███████████ of a federal agent whose life and career could be severely impacted by any disclosure of the incident. The government therefore requests that the Court enter the requested protective order, which provides that, at least for the time being, all filings relating to this issue be made under seal. The order would also prohibit defense counsel from further disclosure of information relating to this incident.

The defense maintains that it should be able to publicly reveal Agent 1's statements, and specifically the statements he made about Special Agent Beckley's testimony. However, those statements, if made public, would be incredibly misleading if they were not placed in the context that they were made during a ███████████. The government cannot provide that context without disclosing that the █████ occurred. Therefore, allowing the defense to publicly recite the statements would present the government with the impossible choice between leaving the highly prejudicial statements unexplained, or itself disclosing the ███████████.

The proposed protective order will allow the government to produce information relating to this incident while respecting Agent 1's privacy. Shetty will not be prejudiced because he will receive the information and may make his arguments to the Court under seal. In addition, once Shetty has the information, he can request relief from the protective order to the extent appropriate.

In this case, the public's interest in disclosure is outweighed, at least for the time being, by the privacy interests of Agent 1 and fairness to the government and Special Agent Beckley. For these reasons, the government respectfully requests that the Court enter the proposed protective order.

Motion for Protective Order - 4
*U.S. v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

DATED:  November 2, 2025

2

Respectfully submitted,

3

CHARLES NEIL FLOYD

4

United States Attorney

5

*s/ Seth Wilkinson*

6

SETH WILKINSON

Assistant United States Attorney

7

700 Stewart Street, Suite 5220

Seattle, WA 98101-1271

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Motion for Protective Order - 5
*U.S. v. Shetty* / CR23-084 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970