The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEVIN SHETTY,<br><br>Defendant. | No. 2:23-cr-00084-TL<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR ORDER OF FORFEITURE** |

Defendant Nevin Shetty respectfully asks that this Court deny the government's motion for order of forfeiture, Dkt. 310.

## INTRODUCTION

Three different Circuit Courts of Appeal have held that courts cannot order forfeiture for funds that a defendant never received or possessed, even when (as here) the defendant had a financial interest in the company involved in the crime and that company received proceeds of fraud. Because Shetty himself never received or possessed any profits or proceeds of the crime, the government's attempt to obtain forfeiture of those proceeds from him must fail.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 1
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# BACKGROUND

The government convicted Shetty for his role transferring $35 million from the company where he worked as CFO, Fabric Commerce, to a company in which he had a minority ownership interest, HighTower Treasury. Adam Brazg was the majority owner of HighTower, holding 67% of the company's shares;[1] Shetty owned 33% of those shares. (Gov't Exh. 39.) Brazg was HighTower's CEO, Shetty was its CFO, and their silent partner, Ross Dzikovsky, was its CTO. (Trial Tr. Nov. 4, 2025, at 54:15–54-22.)

HighTower was a legitimate corporation, incorporated with the Delaware Secretary of State and registered with the IRS, FINCEN, and the SEC. (Gov't Exh. 171, 174; Def. Exh. 130, 131.) It was a young investment company that aspired to become a successful corporate treasury platform. HighTower's first customers were connected to its founders: Fabric, Shetty's employer; Bilberrry, Brazg's company; and Chrono, a hedge fund managed by Shetty. Shetty and Brazg stood to gain from their respective ownership shares of HighTower.[2] (Gov't Exh. 36, Trial Tr. Nov. 4, 2025, at 121:15–123:18.) And, as the government elicited at trial from Brazg—its witness—

---

[1] Brazg intended to share half of any profits he received from his HighTower ownership share with Ross Dzikovsky. But no profits ever materialized. As the 67% owner of HighTower on corporate documents, Brazg was its majority owner.

[2] As discussed above, Brazg intended to split any profits he received from his 67% ownership share with Dzikovsky.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 2
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the duo collaborated on just about every aspect of HighTower's business.

Shetty, as Fabric's CFO, invested $35,100,000 of its money into a HighTower account bearing Fabric's name. (Gov't Exh. 4.) HighTower, on Fabric's behalf, invested the money into UST, a stablecoin. (Gov't Exh. 208.) HighTower then invested Fabric's UST on the Anchor Protocol, and the Mirror Protocol, via Aperture Finance. Fabric was to retain 6% interest on its investment, while HighTower would keep any excess interest above 6%. (*Id.*)

For the first month, Fabric's HighTower/UST investment was extremely profitable, tallying thousands of dollars in interest every day. (Def. Exh. 93.) HighTower and its three owners stood to gain from Fabric's profitable investment. Shetty messaged Brazg that HighTower had earned $133,000 in revenue in its first month. (Gov't Exh. 200C at 2.) But, in the end, neither Fabric, HighTower, Shetty, Brazg, nor Dzikovsky ever received a return on the investment. (Gov't Exh. 208.)

In early May 2022, the UST market crashed due to the actions of Do Kwon. Kwon pleaded guilty in the Southern District of New York to masterminding the $40 billion+ fraud that extinguished Fabric's HighTower/UST investment. (Def. Exh. 113.) Kwon was sentenced to fifteen years of imprisonment, and the government sought a $19,286,774.86 forfeiture money judgment against him—close to half the amount it seeks from Shetty, even though the government alleged Kwon's fraud was over one thousand times larger than Shetty's. *United States v. Do Hyeong Kwon*, No. 1:23-CR-151 (PAE) (S.D.N.Y. 2025), at Dkts. 47, 63.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 3
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Fabric retained all of the UST purchased on its behalf (though it had lost the majority of its value in the crash), which was transferred from HighTower's cryptocurrency wallet to Fabric's cryptocurrency wallet. (Gov't. Exh. 208.) Shetty was charged with and convicted of wire fraud. Dkt. 1, 287. Neither HighTower, Brazg,[3] nor Dzikovsky were charged with nor convicted of any crime. *See* Dkt. 1, 287.

## ARGUMENT

At least three Circuit Courts of Appeals (the Second, Sixth, and Eleventh) have recently affirmed that a defendant "cannot be ordered to forfeit profits that he never received or possessed" even when a company the defendant owned may have received or possessed the fraudulent proceeds. *United States v. McLaughlin*, 565 F. App'x. 470, 475 (6th Cir. 2014) (quoting *United States v. Contorinis*, 692 F.3d 136, 145 (2d Cir. 2012)); *United States v. Rouhani*, 598 F. App'x 626, 633 (11th Cir. 2015) (quoting *Contorinis*, 692 F.3d at 145). So far, it appears the Ninth Circuit has not addressed the issue. But there is no reason to believe it would depart from this consensus. And the government offers no principled argument otherwise. Its motion must fail.

**A. Shetty Never Received or Possessed Fabric's $35 Million.**

Shetty cannot be ordered to forfeit $35,000,100 he "never received or possessed." *McLaughlin*, 565 F. App'x. at 474 (quoting *Contorinis*, 692 F.3d at 145). While the

---

[3] Brazg was named by initials in Shetty's indictment (Dkt. 1 at 4-5, 7-8) and entered a proffer agreement with the government prior to Shetty's indictment.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 4
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

government argues that HighTower "received" Fabric's money in its Circle account and then invested it on Fabric's behalf, Shetty never personally received or possessed Fabric's money. HighTower did. Nor did Shetty ever receive or possess any interest earned on Fabric's HighTower investment. While Shetty sought to earn profits from Fabric's investment through HighTower,[4] he never received a penny—either from Fabric's $35,000,100 principal or interest on the investment before its crash.

**B. Other Circuits Reject the Forfeiture Theory the Government Promotes Here.**

Three different Circuits have rejected forfeiture money judgments in the exact same circumstances as here: where a defendant's company received the fraudulent proceeds and there was no evidence to support an alter ego claim.

    i.    Sixth Circuit: *United States v. McLaughlin.*

In *McLaughlin*, the Sixth Circuit rejected forfeiture where (as here) the fraud proceeds went to the defendant's company, not to the defendant personally. 565 F. App'x. at 471. The defendant was convicted of wire fraud, mail fraud, and identity theft for forging investors' signatures on credit applications submitted on the company's behalf, resulting in funds coming into his company. *Id*. The government nonetheless sought a forfeiture money judgment against the defendant for unpaid

---

[4] The government states that Shetty "intended to retain at least some of the interest on the funds he misappropriated from Company A within HighTower." (Dkt. 310 at 11.) But intending to retain profits that never materialized is not receipt or possession sufficient for forfeiture.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 5
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

loans tied to the forged applications. *Id.* at 473, 474-75. The district court granted forfeiture, reasoning that the company *"clearly benefited from the funds, and he benefited indirectly in that regard." Id.* at 475 (citation omitted) (emphasis in original).

The Sixth Circuit reversed. It held it was "well-established" that a defendant "cannot be ordered to forfeit profits that he never received or possessed." *Id.* (quoting *Contorinis*, 692 F.3d at 145.) And it found there was "not a strong basis to impute the company's receipts to McLaughlin based on the [government's] theory that he benefited indirectly from the company's incoming cash flow." *McLaughlin,* 565 F. App'x at 475. Two features of the record mattered: the company "was never indicted in this case," and there were "no allegations that corporate formalities were disregarded for McLaughlin's personal benefit." *Id.*

The court likewise rejected the government's effort to treat McLaughlin's role in the company as a proxy for personal receipt. It acknowledged that he created the company, was its majority owner, worked there daily, and made all managerial decisions, including hiring, firing, and disbursements of profits. *Id* at 471, 475. But it held he still did not "exert the type of control necessary to subject him to personal liability for the company's losses," emphasizing that he did not "receive a salary from [the company]" and that there was "no evidence in the record of any direct payments from [the company] to McLaughlin, besides a few unquantified meals and trips to the grocery store." *Id.* at 475. Instead, the unlawfully obtained funds were "used by the company to pay other employees' salaries, to pay back some of the individuals who

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 6
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

had initially invested in the company, and to run the company's—otherwise legitimate—operations." *Id.* (citations omitted). The Sixth Circuit thus concluded the government "failed to meet its burden of demonstrating that McLaughlin benefited from the unlawfully obtained funds, in some meaningful way, beyond a few fringe purchases." *Id.* at 476.

The Sixth Circuit also distinguished the authorities the government invoked. There, the government relied on *United States v. Peters*, where an "alter ego" theory applied because the defendant and his family owned 99% of the company. *Id.* (citing *United States v. Peters*, 257 F.R.D. 377 (W.D.N.Y. 2009)). But McLaughlin, though a majority owner, owned "no more than 45% of the shares." *McLaughlin*, 565 F. App'x. at 476. The government also invoked *United States v. Warshak*, but the *McLaughlin* Court explained that *Warshak* turned on "an underlying conspiracy between the corporation, its owner, and its main officers." *Id.* at 476-77 (citing *United States v. Warshak*, No. 1:06–CF–00111, 2008 WL 2705044, at *1 (S.D. Ohio July 8, 2008). In *McLaughlin*, "neither the corporation nor any other officers or directors were indicted." *McLaughlin*, 565 F. App'x. at 477. And because "McLaughlin alone was indicted and convicted of mail and wire fraud, so the theories of corporate and accomplice liability which justified the forfeiture order in *Warshak* do not apply." *Id.* The court further noted that *Warshak* involved a company "permeated with fraud," where income "cycled through [the company's] operations during the entire period of the Indictment." *Id.* (citing *Warshak,* 2008 WL 2705044, at *4). By contrast, in

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 7
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*McLaughlin*, the company's business "was not deemed to be fraudulent," and the fraud "involved only one aspect of [the company's] relationship with its creditors." *McLaughlin*, 565 F. App'x. at 477.

On remand, the government moved to vacate the forfeiture order and no longer sought forfeiture against McLaughlin. *United States v. Stephen McLaughlin*, No. 3:11-CR-46 (M.D. Tenn. 2014), at Dkts. 90, 91.

*McLaughlin* is instructive here. As in *McLaughlin*, HighTower was never criminally charged, nor were any other officers or directors. The theories of corporate and accomplice liability that the *McLaughlin* Court differentiated as supporting forfeiture in *Warshak* therefore are absent in Shetty's case as well. Similarly, neither McLaughlin nor Shetty received a salary from their companies. And as with McLaughlin's company, the underlying business of HighTower was not fraudulent: HighTower invested money of its customers (including Bilberrry, Brazg's company, and Chrono, Shetty's personal hedge fund with numerous investors). As in *McLaughlin*, the fraud Shetty was convicted of involved only one aspect of the business—its investment of Fabric's money—and HighTower was not an operation permeated with fraud like in *Warshak*.

If anything, *McLaughlin* presents a closer case than this one. There, McLaughlin was the majority owner with 45% of the company's shares. Here, Shetty was a minority owner with 33% of HighTower; Brazg was the majority owner with 67% ownership, though he planned to share half of his profits with Dzikovsky.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 8
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

McLaughlin created his company, worked there daily, and made all managerial decisions. By contrast, Shetty did not solely create HighTower—he did so along with Brazg and Dzikovsky. Shetty also did not work at HighTower on a daily basis as his primary employment; he worked primarily at Fabric as its CFO and worked part-time at HighTower. Nor did he make all managerial decisions; he shared them with co-officers Brazg and Dzikovsky. Finally, while McLaughlin personally benefited from use of the company's credit card stemming from the fraud, Shetty did not financially benefit from HighTower *at all*.

As the Sixth Circuit demonstrated in *McLaughlin*, this Court cannot order Shetty to forfeit profits he never received or possessed.

    ii. <u>Second Circuit: *United States v. Contorinis.*</u>

The Sixth Circuit's reversal of McLaughlin's forfeiture order rested principally on the Second Circuit's decision in *Contorinis*. In *Contorinis*, the defendant was an employee and small equity owner in an investment fund. 692 F.3d at 145. He was convicted at trial of securities fraud for a multimillion-dollar insider trading scheme. *Id.* at 141. The government sought a $12.65 million forfeiture money judgment against Contorinis, which was equal to the profits the investment fund earned from the scheme. *Id.* at 145. The district court entered the forfeiture order, and Contorinis appealed. *Id.*

The Second Circuit reversed. It agreed that Contorinis could not "be ordered to forfeit profits that he never received or possessed." *Id.* The court explained that

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 9
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"extending the scope of a forfeiture to include proceeds that have never been acquired either by a defendant or his joint actors would be at odds with the broadly accepted principle that forfeiture is calculated based on *a defendant's gains*." *Id.* at 147 (emphasis added). It therefore remanded with instructions to consider "[t]o what extent [the defendant]'s interest in salaries, bonuses, dividends, or enhanced value of equity in the Fund can be said to be money acquired by the defendant through the illegal transactions resulting in the forfeiture." *Id.* at 148 n.4 (citation and internal quotations omitted). On remand, Contorinis and the government agreed to a forfeiture amount of $427,875—a 96% reduction—equivalent to proceeds possessed and controlled by Contorinis. *United States v. Joseph Contorinis*, No. 1:9-CR-1083-RJS (S.D.N.Y. 2013), at Dkts. 111, 112.

That rule resolves this case. Shetty never personally received profits of the fraud he was convicted of from HighTower. Expanding forfeiture to include proceeds never acquired by Shetty "would be at odds with the broadly accepted principle that forfeiture is calculated based on *a defendant's gains*." *Contorinis,* 692 F.3d at 147 (emphasis added). And Shetty did not acquire *any* "salaries, bonuses, dividends, or enhanced value of equity" from HighTower at all, let alone any "through the illegal transactions resulting in the forfeiture." *Id.* at 148 n.4.

As the Second Circuit demonstrated in *Contorinis*, this Court cannot order Shetty to forfeit profits he never received or possessed.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 10
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

iii.   Eleventh Circuit: <u>*United States v. Rouhani.*</u>

The Eleventh Circuit's decision in *Rouhani* reinforces the settled point that a forfeiture money judgment requires proof that the defendant personally received or possessed the proceeds. 598 F. App'x. at 633. There, Rouhani owned and operated a company that served as a subcontractor to a defense contractor building aircraft for the US Navy. *Id.* at 628. Rouhani certified that only certified welders worked on the contract and that their work passed testing, but in fact he allowed uncertified welders to work and knew their work failed required testing. *Id.* Rouhani was convicted at trial of wire fraud. *Id.* at 629.

The government sought forfeiture in the amount the defense contractor paid to Rouhani's company. *Id.* at 628, 632-33. Rouhani objected that this was "clearly not a situation where [defense contractor] wrote the checks to Rouhani. [The checks] went to the corporation and were distributed to whatever costs the corporation may have." *Id.* at 633. The district court nonetheless entered a forfeiture order. *Id.* at 628.

The Eleventh Circuit reversed. It agreed that "there is no evidence that any of the proceeds came to Rouhani personally, and [his company], which did receive the proceeds, is neither a co-defendant nor a co-conspirator." *Id.* at 633. And it held the district court erred by ordering forfeiture "without making any findings as to whether Rouhani ever received or possessed the proceeds as a result of his wire fraud crime." *Id.*

On remand, the district court denied forfeiture, concluding Rouhani did not

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 11
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

exert "complete domination of the corporation" sufficient to support an "alter ego" theory. *United States v. Rouhani*, 106 F. Supp. 3d 1227, 1230 (M.D. Fla. 2015). That remained true even though Rouhani "was the sole shareholder and president" of the company, drew a $3,250 monthly salary, and "purchased a number of homes for his family members with distributions from [the company]." *Id.* at 1229.

*Rouhani* applies with even greater force here. As in *Rouhani*, "[t]here is no evidence that any of the proceeds came to" Shetty personally, and the entity that received the proceeds, HighTower, "is neither a co-defendant nor a co-conspirator." 598 F. App'x. at 633. But Shetty's showing is stronger still: unlike Rouhani, he was not the sole shareholder; he held only a 33% minority interest in HighTower. And unlike Rouhani—who received a salary and "purchased a number of homes" with distributions—Shetty did not receive any salary or any compensation from HighTower at all. And he did not purchase anything, let alone several homes, with distributions from HighTower. *Id.* at 1229.

As the Eleventh Circuit demonstrated in *Rouhani*, this Court cannot order Shetty to forfeit profits he never received or possessed.

**C. The Government's Forfeiture Motion Fails.**

The government's motion does not overcome the adverse holdings in *Contorinis*, *McLaughlin*, and *Rouhani* that preclude its requested relief. So, the government attempts to rely on the theory that, by conducting the transactions and opening HighTower's Circle account, Shetty exercised sufficient control and possession over

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 12
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the proceeds to warrant forfeiture. There is no legal support for this contention, either.

### A. *United States v. Prasad* is Easily Distinguishable.

The government relies on *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021), but *Prasad* addressed a materially different forfeiture theory than the one at issue here. In *Prasad*, the defendant challenged his forfeiture money judgment on the ground that it was overbroad and should be limited to his net profits. *Id.* at 318. That is, Prasad limited his forfeiture argument to how the Court should calculate the "profits" of his company's fraud after paying its expenses. *See id.* Shetty does not make this argument, and it is not the one which the *Contorinis*, *McLaughlin*, and *Rouhani* courts all considered.

That framing matters because *Prasad* involves a company that functioned as the defendant's instrumentality, not a three-person business *partnership*. Prasad owned and operated the company involved in the visa fraud. 18 F.4th at 316. He was the sole signatory on the company's bank account. *Id.* at 319. And Prasad himself controlled how much of the fraud proceeds the company paid the visa beneficiary employees who performed work for the company's employer-clients. *United States v. Abhijit Prasad*, No. 2:18-CR-368-CRB (N.D. Cal. 2019), at Dkt. 100 at 2.

Prasad's company was effectively an extension of him, making his case far more like *Peters* than what the Court confronts here. Peters is the case the government relied upon to support the forfeiture theory in *McLaughlin*. In *Peters*, the defendant and his close family members controlled 99% of the company involved in

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 13
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the fraud. 257 F.R.D. 377. As such, the district court applied the "alter ego" theory of liability, setting aside the corporate form because the defendant was effectively the company. *Id*. But this got the government nowhere in *McLaughlin*. There, the Sixth Circuit countered the type of alter ego forfeiture liability found in *Peters* with the fact that McLaughlin owned only 45%—not 99%—of the company, even though he was the majority owner. *McLaughlin*, 565 F. App'x. at 476. In contrast, Prasad's company was effectively his alter ego, thereby subjecting all fraud proceeds the company received as money subject to personal forfeiture from him.

      Shetty's circumstances are the opposite. Unlike *Prasad*, Shetty was not the sole owner and operator of HighTower—he was one of three owners and operators. As Brazg testified at trial for the government, each of the three officers played distinct but necessary roles in the company's operations. Nor, as in *Prasad*, was Shetty was the sole signatory on HighTower's Circle account. As the government itself concedes, Brazg accessed the HighTower Circle account "to conduct initial test transactions and to make personal transfers into the account." (Dkt. 310 at 9.) In fact, Shetty and Brazg shared equal access to HighTower's Circle account.

      The control facts also diverge in a way that matters for forfeiture. Prasad decided how much to pay the visa beneficiary employees from his company's fraud proceeds. Shetty did not pay *anyone*, including himself, from HighTower's account. Nor did he have the authority to do so. As a minority owner, he had the equivalent authority as his two co-owners, who could outvote him on any decision. Prasad

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 14
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

appeared to concede that he personally profited from at least the net amount of the fraud proceeds. In contrast, Shetty never personally received a penny from HighTower. There is no plausible evidence to support that HighTower was Shetty's alter-ego. Instead, there is plenty of evidence that affirms that HighTower was a legitimate business *partnership* with three co-officers.

The government's effort to read *Prasad* as controlling therefore proves too much. In its motion, the government writes: "The *Prasad* Court explained that engaging in transactions with funds in an account further establishes defendant's control over, and possession of, those funds. *See Prasad*, 18 F.4th at 319, fn. 8 (noting that the act of making payment of funds from an account establishes the defendant 'did control, and thus possess, the money.')." (Dkt. 310 at 15.) But the *Prasad* case as a whole, not just a selective quote of a footnote, makes clear that the government casts *Prasad* as closer to Shetty's case than it actually is. Prasad's forfeiture was upheld because the company was his alter ego, and he alone decided how much to pay the employees involved in the fraud scheme. These facts defeated his claim that he only had control and possession of the net profits of the fraud instead of the entire fraudulent revenue. But no similar facts are present here.

**B. The Government's Motion Also Fails on Other Grounds.**

The government attempts to maximize Shetty's role and minimize the roles of HighTower's other two officers, especially Brazg. For instance, the government states that Shetty "held authority over . . . the HighTower Circle account." (Dkt. 310 at 9.)

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 15
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The government contrasts Brazg by saying that he "did not access the HighTower Circle account, other than to conduct initial test transactions and to make personal transfers into the account." *Id.* But Brazg did access the HighTower Circle account numerous times, as the government concedes, and he had equal access to and authority over the account, which the government purposefully omits.

The government continues that Shetty "alone, obtained the proceeds of [the] fraud scheme" which he "again single-handedly . . . managed to lose . . . through his own reckless investment choices." *Id.* at 17. In reality, HighTower obtained the proceeds. And it was the *company* that invested, after significant planning and discussion between Shetty and Brazg, Fabric's money in UST, believing it was a safe investment. The government compares HighTower's investment of Fabric's money in UST to Shetty spending at the "roulette wheel" and "wine, women, and song." *Id.* at 16. But, again, HighTower invested in a cryptocurrency stablecoin that its officers (like many individuals across the world) thought was a safe and stable investment. The distinctions between a company and an individual defendant are not mere semantics; they were dispositive to the inquiries that at least three Circuits have taken to reverse forfeiture money judgments.

The Supreme Court's decision in *Honeycutt v. United States* further hurts the government's case. 581 U.S. 443, 445 (2017). In its motion, the government recognizes that the Supreme Court "forbade joint and several liability . . . 'for property that [a] co-conspirator derived from the crime *but that the defendant himself did not acquire.*"

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 16
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Id.* at 17 (quoting 581 U.S. at 445). But it attempts to explain the import of the holding away, arguing that *Honeycutt* only applies to "a case with multiple co-conspirators." (Dkt. 310 at 17.) And that much is true; joint and several liability can only arise when there are multiple co-conspirators. But the point is that, in *Honeycutt*, the defendant "never obtained tainted property as a result of the crime" and, thus, could not be subject to forfeiture of tainted property. 581 U.S. at 454. This holding comports with *Contorinis*, *McLaughlin*, and *Rouhani*. It reinforces the basic principle that the defendant himself must obtain the property before the government can forfeit that property from him. As the Supreme Court explained, "[n]either the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else." *Id.* at 450. HighTower is the "someone else" in this case.

The government also cites *United States v. Fujinaga*, 2022 WL 671018 (9th Cir. Mar. 7, 2022), for the proposition that forfeiture is proper where a defendant had "full and exclusive authority" over accounts. But, even if that were an ironclad rule, it does nothing to help the government's case here. Shetty did not have full and exclusive authority over HighTower's Circle account—he shared authority with Brazg at least.

The government also attempts to dirty up Shetty by accusing him of comingling Fabric's money with his personal funds. *Id.* at 5, 16. But the government neglects to mention that Fabric received all of its UST after the market crash, and there was no comingling of the assets between Fabric, Bilberrry, or Chrono.

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 17
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# CONCLUSION

For all these reasons, the Court should deny the government's motion.

DATED this 29th day of January, 2026. I certify that this response contains 4,168 words, in compliance with the Local Criminal Rules.

CORR CRONIN LLP

*/s/ J. Alex Little*

Jeffrey B. Coopersmith, WSBA No. 30954
Kristin E. Bateman, WSBA No. 54681
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600 | Fax: (206) 625-0900
jcoopersmith@corrcronin.com
kbateman@corrcronin.com

LITSON PLLC

J. Alex Little, *admitted pro hac*
Zachary C. Lawson, *admitted pro hac*
54 Music Square East, Suite 300
Nashville, TN 37203
alex@litson.co
zack@litson.co

*Attorneys for Defendant*

SHETTY'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER OF FORFEITURE - 18
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900